UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
DINO ANTOLINI,                                              :    Case No.: 1:19-cv-09674

                              Plaintiff,

  - against -

HAROLD THURMAN, BRAD THURMAN and
33 BRE INC.,

                            Defendants.
----------------------------------------X

                                      **Hon. Kevin Nathaniel Fox**

## MEMORANDUM IN OPPOSITION
## TO DEFENDANTS MOTION TO COMPEL

                              Stuart H. Finkelstein. Esq.
                              Finkelstein Law Group, PLLC
                              Attorney for Plaintiff
                              338 Jericho Turnpike
                              Syosset, New York 11791
                              Telephone: (718) 261-4900
                              sf@finkelsteinlawgroup.com

## I.   IT IS DEFENDANTS REQUESTS THAT ARE IMPROPER, *NOT* PLAINTIFF'S OBJECTIONS.

It is not Plaintiff's objections that are improper; rather it is defendants very requests that are wholly out of bounds and absurd. Counsel's requests concerning the extraordinary breath of materials that he mistakenly believes he is entitled to need be put to rest. Counsel has centered the crux of his motion on a litany of information regarding Plaintiff and his personal life. Defendants document 'demands' include, inter alia, his home life, deed(s) to his home, all information about people close to him, employment records and financial records, among others. *See* ([DE 69] pg. 4-6). Defendants' counsel also seeks all currently available documents related to any expert's reports analysis of the subject facility. *See id* at 5, 6. Counsel also attempts to mistakenly burden shift his client's responsibility to show why ADA compliance is not readily achievable onto Plaintiff. *See* [DE 69] pg. 5, 8.

Fed. R. Civ. P. 26(b)(1) *Discovery Scope* limits discovery to "nonprivileged matter that is *relevant* to party's claim or defense and *proportional*… considering importance of the issues, relative *access* to relevant information, resources, *importance of the discovery in resolving the issues*, and potential burden/ expense weighed against its likely benefit. The party seeking discovery {compel} over their adversary's preliminary objection bears the burden of showing that the discovery requested is relevant. Zanowic v. Reno, 2000 WL 1376251 (S.D.N.Y. Sep. 25, 2000); movant must actually demonstrate relevance Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase., 297 F.R.D. 99 (S.D.N.Y. 2013) citing Trilegiant Corp. v. Sitel Corp., (2010). Not once in his multitude of letters and motion practice to the Court or in his numerous conversations with Plaintiff's counsel has defense counsel stated his basis for asking for such outrageous materials (other than to "ascertain the extent of his disability). See [DE 61, 69].

Defendants demanded production of Plaintiff's federal income tax returns. Tax returns in the possession of the taxpayer are not immune from civil discovery. St. Regis Paper Co. v. United States, 368 U.S. 208, 218–19, 82 S (1961). However, civil courts generally are reluctant to order the production of personal financial documents *and* have imposed a heightened standard for discovery of tax returns. *See* Chen v. Republic Rest. Corp., 2008 WL 793686, at *2 (S.D.N.Y. Mar. 26, 2008). To compel production of tax returns in, a party must meet a two-part test: "first, the court must find that the returns are relevant to the subject matter of the action; and second, that there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable." Rosas v. Alice's Tea Cup, LLC, 127 F. Supp. 3d 4, 11 (S.D.N.Y. 2015) (citing SEC v. Cymaticolor Corp., 106 F.R.D.

545, 547 (S.D.N.Y. 1985)). Applying the two-part test, Plaintiff's tax returns (1) are not at all relevant to the subject matter of the action and (2) do not contain one iota of information that is not otherwise readily obtainable.

Defendants claim that they need Plaintiff's tax returns so that they can investigate Plaintiff's employment and income. First, Plaintiff's tax returns and any information contained therein, quite literally, have absolutely nothing to do with the issues/ controversies in the case at bar. In Chen v. Republic Rest. Corp., at *2, Judge Ellis logically denied defendants request for Plaintiff's tax returns in an FLSA action when producing the tax returns was totally irrelevant to the overtime pay monetary disputes, 'no colorable reason' to trample on Plaintiff's R. 26(c) and privacy rights. *See e.g.*, Ellis v. City of New York, 243 F.R.D. 109, (S.D.N.Y. 2007) (defendants subpoena for Plaintiff's tax returns did not meet relevancy prong and therefore quashed).

In Pope v. City of New York, 2012 WL 39349 (S.D.N.Y. Jan. 5, 2012), Judge Dolinger explained that courts must hold *against* the presumption of production of tax returns. The defendants had requested Plaintiff's tax returns for the purpose of determining the 'health of his financial portfolio.' The Pope court held that vague and general requests for tax returns on probing grounds do not even come close to very high burden of persuasion; if such requests were enforced, "it would lead to tax-return disclosure in every case in which a defendant's attorney asked the plaintiff whether he had filed tax returns." *See also* Nicaj v. City of New York, 2015 WL 2152705 (S.D.N.Y. May 6, 2015) (Court specifically noted that even if it could find relevance, a 'compelling reason' is a very high burden that will rarely be met). Defendants (*incorrectly*) cite to only one case to support their nonsensical position, Kloppel v. HomeDeliveryLink, Inc., 2020 WL 38895 (Jan. 3, 2020). Magistrate Judge Pedersen DENIED the defendants motion to compel Plaintiff's tax returns, citing a lack of compelling reasons. See Id at 2. The issues in Kloppel were all about violations of the New York Labor Law, i.e., money and economic/ fiscal questions. And even then, the good Judge still would not order the production of tax returns; rather opting for depositions and limited production of a small amount of W-2's.

Defendants maintain they need Plaintiff's tax returns because it would shed light on Plaintiff's employment. As Plaintiff's counsel has told defendants counsel at least a half dozen times, Plaintiff was not employed at the time the instant action was initiated, is not currently employed, and at no time in between has he been employed. There is no cognizable reason other than obstruction and delay for these bogus inquires. Even if Plaintiff were employed and working 100 hours a week, there would *still* be

absolutely no compelling reason that the production of his Federal tax returns would be warranted. *See* Chen v. Republic Rest. Corp., at *2 (even in an action that concerned Plaintiff's financial portfolio, Court still did not order production). This is an ADA title III action; an action that has nothing to do with Plaintiff's potential work/ home life, and everything to do with the discrimination that is still ongoing to this day by the defendants at the Subject Facility in question. Fed. R. Civ. P. 26(c) authorizes courts to "make any order which justice requires to protect a party from annoyance, embarrassment, oppression, or undue burden/ expense, including that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited." Defendants should be admonished for having completely failed in meeting their burden(s) and have misused time and resources on issues that never needed to be.

    **A**. **Defendants request for Plaintiff's home information is wholly inappropriate.**

Defendants erroneously contend that they should be allowed to know the ins and outs of Plaintiff's home so that they can "ascertain the extent of [his] disability and if there are steps, at his home or place of business…there may be an issue regarding his ability to traverse steps and standing." *See* ([DE 69] pg. 5). Counsel has a fundamental misunderstanding of Rule 26 'relevancy' as well as how this type of case actually works. The ADA construes "disability" to include, inter alia, "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). It defines "walking," "standing," and "performing manual tasks" as "major life activities." Id. Courts should construe the substantial limitation standard "broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA," and it "is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i). *See* Shariff v. Beach 90th St. Realty Corp., 2013 WL 6835157, at *4 (E.D.N.Y. Dec. 20, 2013); *see also* 29 C.F.R. § 1630.2(j)(1)(iii) ("threshold issue of whether an impairment 'substantially limits' a major life activity is established through well-pleaded facts and should not demand extensive, invasive, unwarranted, or overbearing analysis.").

    Plaintiff has been a wheelchair user for the past decade. He endures great difficulties in navigating daily life and is only able to 'stand' periodically with a walker when he gets on and off the chair. He is a qualified individual under the ADA and is accurately reflected in the record, as ***defendants counsel has already gained access to Plaintiff's medicals***. The records also state that even when Plaintiff is in his own home, he cannot move around without a walker or his chair. Moreover, even if he were a cane user, he would still be a qualified individual. *See* Gordon v. District of Columbia, 480 F. Supp. 2d 112 (D.C.C. 2007). If a Plaintiff is unable to walk without the use of a mobility aid (e.g., wheelchair or cane), there is no genuine dispute that they are disabled within the meaning of the ADA. *See* 42 U.S.C. §12102(2) (A) (defining disability as a physical or mental impairment that substantially

limits a major life activity); Wilson v. Haria and Gorgi Corp., 479 F. Supp. 2d 1127 (E.D. Cal. 2007). The Wilson court went on to note that "The fact that defendant asserts that plaintiff was observed walking without the aid of a cane or wheelchair on any occasion is not sufficient to create a genuine dispute regarding this issue… does not negate that plaintiff's medical conditions that constitute "substantial limitation" on ability to walk. See Wilson Decl. ¶ 11; 29 C.F.R. § 1630.2(j) (defining substantial limitation as either total inability to perform major life activity *or* a significant restriction on same). Id; See Sharp v. Islands California Arizona LP, 900 F. Supp. 2d 1101 (S.D. Cal. 2012) (Where Court held that defendants attack on legitimacy of Plaintiff's mobility-limiting disability, [established through med. records] referencing the limited time where Plaintiff was not in his chair was *'ridiculous'* and put the Court *'at a complete loss [for words].'*).

If defendants counsel does not believe the certified medical records or has any reservations about Plaintiff's disability, counsel has always had the options to discuss same with Plaintiff's counsel (not once has he ever mentioned this), hold depositions of Plaintiff/ his doctors, (has not even inquired about doing this), and even serve interrogatories regarding Plaintiff's disability and its impact on his life (nothing). Instead, defendants want to invade Plaintiff's private life for information that is not relevant, not important, and not logical. Counsel's position is not only wholly incorrect on the law, but when viewed through a lens of common sense/ logic, their positions are truly bewildering. It boils down to "we need to see the financial records and lease/ deed to Plaintiff's private home because that will tell us if there are any ADA violations at or near his home/ work. It is a perverted argument. If we are to logically play out defendants' reasoning, they would have this Court believe that if a disabled ADA Plaintiff encounters any barriers at her/ his home or place of employment, then somehow that would moot the substantive discrimination incurred at a Title III Public accommodations facility? What an insulting, unserious, absurd, frivolous, and bad faith proposition.

### B. Defendants counsel's requests for expert materials and 'readily achievable' information is incorrect and inappropriate

Defendants counsel requests "reports, analyses or communications related to inspections of the property and existence of ADA violations and documents in Plaintiffs possession related to remediation and readily achievable, **if existing**," as well as all information related to Plaintiff's expert. See ([DE 69] pg. 5). He also requests "statements of how and why the alterations are readily achievable. Supra at 6. Counsel's arguments concerning same are purely disingenuous. As Plaintiff has told defendants' counsel numerous times, an expert has not yet been retained and no complete readily achievable analysis is available *because of defendant's own conduct*! Counsel still refuses to grant Plaintiff's expert access to

5

the subject facility. (*See* [DE 65], motion pending concerning counsel's bewildering obstruction/ disruption of this litigation). Plaintiff also has produced everything he has concerning readily achievable modifications.

Counsel is also incorrect in his portrayal of the law concerning the appropriate burdens of proof for the standard of architectural repairs in Title III cases. The case is currently in the discovery phase and as such, the following burdens are not yet in play until the time of trial. *See* Borkowski v. Valley Central School District, 63 F. 3d 131 (2d Cir. 1995); Roberts v. Royal Atlantic Corp., 542 F. 3d 363 (2d Cir. 2008); Kreisler v. Second Ave. Diner Corp., 2012 WL 3961304 (S.D.N.Y. Sep. 11, 2012) (aff'd 731 F.3d 184 (2d Cir. 2013)). Even once trial commences, Plaintiff's initial burden is simply to put forth his logic concerning those repairs he believes are readily achievable and/or mandated provisions of Title III. Roberts v. Royal Atlantic Corp., at 363. In Roberts, the Second Circuit confirmed that "Plaintiff's **minimal** burden **[at trial]** does not require him or her to furnish exact or detailed cost estimates…. "defendants possess superior access to information regarding their own facilities, such as architectural plans and historical and projected costs of repairs… typically in a position far more easily to refute plaintiff's proposal as unreasonable than is plaintiff to prove otherwise.' Borlowski, 63 F. 3d at 131. The burden of persuasion then switches to the defendants to make their claims about all readily achievable modifications. *See* Kreisler 2012 WL 3961304 ("well settled principle" in affirming that defendants' burden is significantly heavier than Plaintiff's after it shifts).

The one case defendants cite on the issue Pascuiti v. New York Yankees, (2d Cir. 1999) is from the previous century and is misrepresented by counsel. The 2nd Circuit has been steadfast over the past 20 years holding that a Title III Plaintiff's initial burden *at trial* is minimal in a readily achievable analysis while the defendants shoulder a significant burden. The two main provisions of Title III that mandate facility repairs are (1) fundamental alterations and/ or (2) the readily achievable standard. The 2nd Circuit has codified that "regulations adopted pursuant to the ADA impose access requirements on (1) **alterations made to public accommodations after January 26, 1992.** *See* 28 C.F.R. §36.402(a) and… (2) "the ADA requires removal of barriers, regardless of whether alterations have been made, **"where such removal is readily achievable**." 42 U.S.C. § 12182(b)(2)(A)(iv). Plaintiff has made defendants counsel aware of his position regarding all repairs dating back many months; that the repairs are readily achievable based on defendants' counsel's own mind-boggling stipulation that finances, no matter any extreme cost of repairs, are not at issue. Additionally, Plaintiff has submitted to defendants

documents showing that there has been post-enactment 'material alterations.' As such, Plaintiff has made more than the requisite showing to fulfill not just one, but both available avenues to compel repairs. See Roberts at 367. To make matters worse, defendants will not even let Plaintiff's expert into the subject facility to perform an inspection but yet demand all expert materials related to the question of readily achievable. He has misrepresented the legal standards and served discovery demands for invasive, irrelevant, and unattainable materials. Plaintiff requests that your Honor see counsel's bad faith behavior for what it is, deny his instant motion, and grant Plaintiff any other relief that the Court may deem just and proper.

Dated: September 17th, 2020
      Syosset, New York

Respectfully submitted,

By:_____
Stuart H. Finkelstein, Esq.
Finkelstein Law Group, PLLC
338 Jericho Turnpike
Syosset, New York 11791
Telephone: (718) 261-4900