DEFENDANT'S EXHIBIT "C"

L E A S E

-between-

PATRICK CONSALVAS

and

RONALD B. BRUDER ASSOCIATES, INC.,

"Lessor"

-and-

GOLD STREET PROPERTIES,

"Lessee"

## LEASE

THIS LEASE made this $18$ day of May, 1978 between PATRICK CONSALVAS who resides at ~~134 Glenwood Road~~, Brooklyn, New York and RONALD B. BRUDER ASSOCIATES, INC., a New Jersey Corporation with a principal place of business at 7 Ellsworth Street, Clifton, New Jersey, both operating as a joint venture under the name of 33 Gold St. Associates located at 502 Park Avenue, New York, New York (hereinafter called "Lessor") and GOLD STREET PROPERTIES, a New York Partnership having its principal place of business at 2380 Hempstead Turnpike, East Meadow, New York (hereinafter called "Lessee").

WHEREAS, Lessee desires to lease approximately      square feet from Lessor on land upon which are two existing buildings, one a 6-story and one a 7-story building, at the intersection of Gold Street and Fulton Street, in the City of New York, State of New York.

### W I T N E S S E T H:

1. Property, Lease Term. Upon and subject to the conditions and limitations set forth below, Lessor leases to Lessee, and Lessee rents from Lessor, the following property (the "Property"):

a) all the land (the "Land") described in Exhibit A hereto upon which it intends to renovate and rehabilitate the existing structure which shall be owned by Lessee;

-1-

b)   all rights of way or of use, servitudes, licenses, tenaments, hereditaments, appurtenances and easements now or hereafter belonging or pertaining to any of the foregoing.

TO HAVE AND TO HOLD FOR A TERM (the "Lease Term") commencing this / 6 day of May, 1978 and expiring at midnight thirty (30) 33 years from the date hereof (the "Commencement Date") or the date, if any, to which the Lease Term has been extended pursuant to any provisions of this lease, unless the Lease Term shall sooner terminate as hereinafter provided.

2.   Fixed Rent.

2.1   Fixed Rent.   Lessee will pay to Lessor a fixed net minimum rent ("Fixed Rent") during the term of this lease $78,000 payable in advance in equal monthly installments of $6,500.00 on the first day of each month, commencing the date hereof. The arrears 5·18·78 in the payment of Fixed Rent for a period not exceeding six months shall not be a default hereunder until December 31, 1981, at which time the Fixed Rent must be brought current and be thereafter paid in accordance with the terms of this Lease.

2.2   Fixed Rent Net; Manner of Payment.   Fixed Rent and all other sums payable to Lessor hereunder shall be paid in coin or currency (or, subject to collection, by good check payable in such coin or currency) of the United States of America as.

-2-

at the time shall be legal tender for the payment of public and private debts, at the principal office of Lessor as set forth above, or at such place and to such Person as Lessor from time to time may designate. Fixed Rent shall be absolutely net to Lessor so that this Lease shall yield to Lessor the full amount of the installments of Fixed Rent throughout the term of this Lease without deduction, other than for the effects of Federal, State or Local taxes (excluding New York City Occupancy Tax, if any) on or measured by income or gross receipts of Lessor from the Property.

3. Additional Rent.

a) Lessee will also pay as additional rent ("Additional Rent"),

(i) all other amounts and obligations which Lessee herein assumes or agrees to pay, as and when due;

(ii) interest at the rate of 8-1/2% per annum on such of the foregoing amounts and obligations as are payable to Lessor and are not paid within 15 days after the due date, (or, if a demand thereof is required by the terms of this Lease, then within 15 days after the date of such demand), from the due date or the date of such demand, as the case may be, until payment thereof;

(iii) interest at the rate of 8.5% per annum on all installments of Fixed Rent not paid within 10 days after the due date, from the due date thereof until payment:

(iv) up to $94,000 of Lessee's Net Cash Flow (as defined herein) from the operation of the premises, over the first $94,000 of Net Cash Flow proceeds;

(v) 50% of Net Cash Flow proceeds over $188,000 as provided in Subparagraph 3(c).

(vi) Any excess proceeds on refinancing, condemnation

-3-

or insurance awards payable to Lessor pursuant to ¶40.1(d) hereof.

b)   Net Cash Flow shall mean the sum computed in accordance with (x) herein minus the aggregate of the sums computed in accordance with (y) and (z) herein, as follows:

(x)   The gross income from the Property computed in accordance with sound cash basis accounting principles including all cash receipts which shall include all income earned or received from all sources whatsoever as a direct or indirect result of the ownership or operation of the Property assets such a, but without limitation, (i) the gross amount of all cash receipts; (ii) sundry income; (iii) interest on deposits; (iv) the net amount of any refund of impositions of taxes applicable to any period of this Agreement; (v) the net receipts or proceeds from the sale of any personal property including securities, notes or other obligations received in lieu of or in addition to such cash payments; (vi) the net receipts or proceeds of any sale of personal property or fixtures now or hereafter located on the Property and Improvements.

(y)   All current charges and expenses in accordance with sound cash basis accounting principles consistently applied, including insurance charges, real estate taxes, assessments, reasonable legal expenses, management fees, water, fuel, electricity, repairs and maintenance, supplies, decorating, normal fees paid to Certified Public Accountants, and any other items which are normally considered "operating expenses", plus Fixed Rent and the aggregate amount of principal and interest paid under mortgages on the property and under loans incurred in connection with the Property and made by one other than a Partner, as well as the cost of capital acquisitions,

alterations or improvements, to the extent of payments made or pro-
vided for during the fiscal year; the aggregate amount of princi-
pal and interest paid under any loans made by a Partner except that
in the event and to the extent that, capital acquisitions, altera-
tions or improvements are paid for out of borrowed funds, the
amount paid or provided during the fiscal year for interest and
amortization on mortgages or loans made for such purposes shall be
deducted from Net Cash Flow in lieu of deducting the cost of such
capital alterations and improvements.

(z) A reasonable reserve for repairs and replacements
for interest and amortization on mortgages and loans (other than those
made by a Partner) real estate taxes, assessments, water charges,
sewer rents, insurance, commissions and other expenses generally
treated on an accrual basis.

In computing Net Cash Flow, no deduction shall be made
for depreciation or amortization as such terms are used for the
purposes of the Internal Revenue Code.

c) Lessee shall keep records on a calendar year basis.
Within ninety (90) days after the end of each such calendar year,
Lessee shall deliver to Lessor a statement of Cash Flow, as herein
defined, prepared by a certified public accountant, in accordance
with generally accepted accounting principles, which shall include
the Net Cash Flow for such preceding year derived from the actual
operation of the Building. Commencing January 1, 1979 (for the
calendar year 1978), Lessee shall deliver to Lessor with such report,
as Additional Rent, a sum equal to 50% of the amount by which
the net Cash Flow exceeds $~~188,000~~ 100,000. For the purpose of computing
the Additional Rent under this Article 3, in determining the Net
Cash Flow in such report, Lessor agrees to accept the computation

of Cash Flow, as that term is defined herein.

d) The report herein provided for shall also be delivered within ninety (90) days after the end of the last year of the term of this Lease and shall cover the period from the preceding January 1, to the date of termination. Additional Rent for such year shall be prorated accordingly.

e) Lessor may, during normal business hours, upon five (5) days' written notice to Lessee, inspect the operating books and records of Lessee and all operations for the purpose of verifying any report within three (3) years after it is submitted.

f) The receipt by Lessor of Additional Rent shall not be deemed to create any partnership or joint venture between Lessor and Lessee.

4. Renewal Terms. The Lessee shall have the option to extend the term of this Lease for two successive 33-year periods under the same terms and conditions as those contained herein (except for this Article 4 provided, however, that, as to each extension period, the following conditions shall prevail:

a) Lessee shall have given to the Lessor written notice by certified mail of the exercise of its option to renew at least six months but not more than ten months prior to the expiration of the lease term, and

b) That at the time of the exercise of said option and at the time of the commencement of the extended lease period, the Lessee shall not be in default in the performance of the terms, conditions and covenants of this Lease to be performed by the Lessee, which default shall be such as would permit the Lessor to terminate this Lease under its terms.

The Lessor shall give to the Lessee written notice by
certified mail at least ten months but not more than twelve months
prior to the expiration of the term of this Lease of its right to
extend the term of this Lease as herein provided.  In the event
that the Lessor shall fail to give such notice, then the Lease
shall continue in full force and effect until six months after
the sending of such notice or until the option is sooner exercised.

5.  No Counterclaim, Abatement, Etc. Fixed Rent, Additional
Rent and all other sums payable by Lessee hereunder shall
be paid without notice, demand, counterclaim, setoff, deduction
or defense and without abatement, suspension, deferment,
diminution or reduction, and the obligations and liabilities
of Lessee hereunder shall in no way be released, discharged
or otherwise affected (except as expressly provided herein)
by reason of:  (a) any damage to or destruction of or any
taking of the Property or any part thereof; (b) any restriction
or prevention of or interference with any use of the Property
or any part thereof except resulting from establishment of title
paramount; (c) any bankruptcy, insolvency, reorganization,
composition, adjustment, dissolution, liquidation or other like
proceeding relating to Lessor, or any action taken with respect
to this lease by any trustee or receiver of Lessor, or by any
court, in any such proceeding provided, however, that no trus-

tee or receiver of Lessor shall have the power or right to
reject this lease or any rights of Lessee hereunder to extend
the term of this lease; (d) any claim which Lessee has or might
have against Lessor; and (e) any failure on the part of Lessor to
perform or comply with any of the terms hereof or of any other
agreement with Lessee.  Except as expressly provided herein,
Lessee waives all rights now or hereafter conferred by statute
or otherwise to quit, terminate, or surrender this lease or the
Property or any part thereof, or to any abatement, suspension,
deferment, diminution or reduction of Fixed Rent, Additional
Rental or any other sum payable by Lessee hereunder.

  6.  Condition and Use of Property.  Lessee is fully familiar
with the physical condition of the Property and has received
the same in good order and condition, and agrees that the
Property complies in all respects with all requirements of
this Lease.  Lessee shall use said Property for any lawful purpose
in conformity with zoning and use restrictions affecting the
Property.

7. _Major Construction and Alterations_. Any major construction and alterations after completion of construction work contemplated by ¶7.9 herein shall be subject to the following conditions:

7.1 _Compliance by Lessee_. Except as provided in §8 hereof, in any instance when Lessee shall desire or be required to demolish any Improvement on the Property or construct a new Improvement within the Property, or to carry out any alterations at the Property, Lessee shall comply with the provisions of this §7 before commencing any such demoli- tion, construction, alteration or repair work; provided, however, that any such demolition, construction, alteration or repair work, the cost of which is less than $10,000 shall be exempt from the requirements and conditions of this §7 and shall be governed by §8.

7.2 _Submission of Plans and Specifications_. Lessee shall submit to Lessor, for Lessor's approval, complete plans and specifications which shall be signed by an architect or engineer selected by Lessee with Lessor's approval, and shall also submit to Lessor for Lessor's approval the architect's or engineer's signed estimate of the entire cost of completing the work specified by the plans and specifications.

-9-

7.3 Approval by Lessor. Lessee shall not commence any of such work unless and until Lessee shall have received Lessor's written approval of the plans and specifications for such work and the cost estimate, submitted in accordance with §7.2 hereof, which approval shall not be unreasonably withheld. Lessor shall have fifteen days following submission of plans to approve or disapprove the proposed work. Failure of Lessor to disapprove such plans within said period shall constitute approval by Lessor of such plans.

7.4 Permits and Approvals. Lessee shall furnish to Lessor all permits and approvals required by law in connection with the commencement and conduct of such work, or certified copies thereof.

7.5 Performance by Lessee; Lessor's Right Upon Failure of Lessee to Perform. After Lessee shall commence any of such work, Lessee shall carry out such work, at Lessee's sole cost and expense, diligently and in good faith in substantial conformity with the plans and specifications referred to in §7.2 hereof. If Lessee shall fail to prosecute such work with reasonable diligence in substantial conformity with said plans and specifications for 30 days after written notice from Lessor, then Lessor may enter upon the Property and carry out such work. All costs and expenses incurred by Lessor shall be borne by Lessee and shall be payable by Lessee to Lessor from time to time as such costs and expenses are incurred, and in addition Lessor shall have full recourse to any bonds, guarantees,

-10-

security and/or other assurance, if any, which may be applicable to the Project.

7.6 <u>Timely Completion</u>. In the event all such work is not completed within a reasonable time after commencement thereof pursuant to this §7, an Event of Default as defined in §24 shall be deemed to have occurred and Lessor shall have the right to all remedies as provided herein.

7.7 <u>Compliance with Laws</u>. All of such work shall be carried out in full compliance with all Legal Requirements. Upon completion of any such work, Lessee shall furnish to Lessor all approvals, permits and certificates which shall then be required from any government, municipality or any agency thereof having jurisdiction, for the completion and/or use of the Improvements so constructed.

7.8 <u>Liens</u>. Except as provided herein, Lessee shall not create, or permit to be created or exist, any lien or encumbrance which might be or become a lien or encumbrance having priority over or ranking on a parity with Lessor's interest in the Property or rights under this Lease.

-11-

7.9.   <u>Construction Work by Lessee</u>.   Lessee and Lessor have prepared plans and specifications for the proposed construction. Lessor has reviewed said plans and specifications and has approved same in their present form.

Lessee shall commence or cause to be commenced and thereafter cause to be diligently prosecuted to completion such construction in a good and workmanlike manner, and in accordance with such final working drawings and specifications and in accordance with all zoning and building code requirements and all applicable rules and regulations and all federal, state, county, and municipal governments then obtaining; and shall fully complete such construction as expeditiously as possible.

8.   <u>Alterations and Additions</u>.   If not at the time in default under this Lease, Lessee at its expense may make reasonable alterations of and additions to the Property or any part thereof, provided that any alteration or addition (a) shall not change the general character of the Property or reduce the fair market value thereof below its value immediately before such alteration or addition, or impair its usefulness;

-11a-

(b) is effected with due diligence, in a good and workmanlike manner and in compliance with all Legal Requirements and Insurance Requirements; (c) is promptly and fully paid for by Lessee, and (d) is exempt from § 7 hereof.

9.  Impositions.  Subject to §11 relating to contests, Lessee will pay all Impositions before any interest, penalty, fine, or cost may be added for non-payment, and will furnish to Lessor for inspection within 30 days after written request, official receipts of the appropriate taxing authority or other proof satisfactory to Lessor evidencing such payment.  If by law any Imposition may be paid in installments, Lessee shall be obligated to pay only those installments as they become due from time to time before any interest, penalty, fine or cost may be added thereto; and any Imposition relating to the fiscal period of the taxing authority, part of which is included within the term of this lease and a part of which extends beyond such term shall, if Lessee shall not be in default under this Lease, be apportioned between Lessor and Lessee as of the expiration of the term of this Lease.  Any excise, transactions, sales or use tax now or hereafter imposed by any government or governmental agency upon Lessor on account of or attribute to, or measured by rent or other charges payable by Lessee (unless such tax impositions are in lieu of a tax on gross receipts or income of Lessor) shall be paid by Lessee to Lessor in addition to and along with rent and other charges otherwise payable hereunder.

10. Compliance, Etc.

10.1 Compliance with Requirements, Etc. Subject to §11 relating to contests, Lessee, at its expense, will promptly and diligently (a) comply with all Legal Requirements and Insurance Requirements, whether or not compliance therewith shall require structural changes in or construction of Improvements or interfere with the use and enjoyment of the Property or any part thereof, (b) procure, maintain and comply with all permits, licenses, franchises and other authorizations required for any use of the Property or any part thereof then being made and for the proper erection, installation, operation and maintenance of the Improvements or any part thereof, and (c) comply with any instruments of record at the time in force affecting the Property or any part thereof, which are disclosed in the title insurance policy to be provided by Lessor under paragraph 37 hereof or are recorded by or at the direction of Lessee.

10.2 Recording. From time to time at the request of Lessor, Lessee at its expense will record such documents, file such continuation statements, pay such fees and comply with such laws and regulations as are necessary to preserve and protect the rights of Lessor under the Lease. A memorandum of this lease shall be executed by Lessor and Lessee and recorded in the County Clerk's office, New York County, New York.

11. Permitted Contests. Lessee, at its expense, may contest, after prior written notice to Lessor, by appropriate legal proceedings conducted in good faith and with due diligence,

the amount or validity or application, in whole or in part, of any Imposition or any Legal Requirement or the application of any instrument of record referred to in §10, provided that (a) Lessee shall first make all contested payments, under protest if it desires, or Lessee shall furnish adequate bond or other security for such payment; (b) neither the Property nor any part thereof or interest therein nor any such Rents or other sums would be in danger of being sold, forfeited, lost or interfered with; (v) in the case of a Legal Requirement, Lessor would not be in any danger of any additional civil or any liability for failure to comply therewith and the Property would not be subject to the imposition of any lien as a result of such failure, and (d) Lessee shall have furnished such security, if any, as may be required in the proceedings or reasonably requested by Lessor.

12. **Mortgages, Liens, etc.** Except as otherwise provided in this lease, Lessee will not directly or indirectly create or permit to be created and/or to remain a lien upon the premises except those liens expressly permitted by this Lease. In the event said liens have been created by or permitted by Lessee in violation of this provision, Lessee will discharge any such mortgage, lien, security interest, encumbrance or charge on, pledge of or conditional sale or other title retention agreement with respect to the Property or any part thereof, or on Lessee's interest therein, the Leasehold

Estate, or the Fixed Rent, Additional Rent or any other sum payable under this Lease or any equipment, fixtures or personalty on the Property.

13. No Claims Against Lessor, Etc. Nothing contained in this lease shall constitute any consent or request by Lessor, express or implied, for the performance of any labor or services or the furnishing of any materials or other property in respect of the Property or any part thereof, nor as giving Lessee any right, power or authority to contract for or permit the performance of any labor or services or the furnishing of any materials or other property in such fashion as would permit the making of any claim against Lessor. Lessee shall be solely and wholly responsible to contractors, laborers and materialmen furnishing and performing such labor and material.

14. Indemnification by Lessee. Lessee will protect, indemnify and save harmless Lessor from and against all liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses (including, without limitation, attorneys' fees and expenses), imposed upon or incurred by or asserted against Lessor or the Property by reason of the occurrence or existence of any of the following unless caused by acts or omissions of Lessor or its agents or assigns.

a) any accident, injury to or death of persons (including workmen) or loss of or damages to property occurring on or about the Property or any part thereof or the adjoining

sidewalks, curbs, vaults and vault space, if any, streets or ways which have been installed by or at the direction of Lessee.

b) any use, non-use or condition of the Property or any part thereof or the adjoining sidewalks, curbs, vaults and vault space, if any streets or ways which have been installed by or at the direction of Lessee.

c) any failure on the part of Lessee to perform or comply with any of the terms of this Lease; or

d) performance of any labor or services or the furnishing of any materials or other property in respect of the Property or any part thereof.

In case an action, suit or proceeding is brought against Lessor by reason of any such occurrence, Lessee, upon Lessor's request, will at Lessee's expense resist and defend such action, suit or proceeding, or cause the same to be resisted and defended by counsel designated by Lessee and approved by Lessor. The obligations of Lessee under this section shall survive any termination of this Lease and any conveyance of the Property.

15. Utility Services. Lessee will pay or cause to be paid all charges for all public or private utility services and all protective services, contracted for by Lessee and rendered to or in connection with the Property or any part thereof, will comply with all contracts relating to any such services, and will do all other things required for the maintenance and continuance of all such services.

16. Quiet Enjoyment. a) Lessor covenants that Lessee, upon paying the Fixed Rent, Additional Rent and other charges herein provided for and upon performing and complying with all covenants, agreements, terms and conditions of this Lease on its part to be performed or complied with, shall quietly have and enjoy the Property during the term of this lease without hinderance or molestation by anyone claiming paramount title or claiming by, through or under Lessor.

b) Lessor represents and warrants to Lessee that it has fee simple title to the Property and the power and authority to execute and deliver this lease. Lessor further represents and warrants to Lessee that:

i) the Property is free from all encumbrances, liens, defects in title, violations of law, leases, tenancies, easements, restrictions and agreements, other than those permitted hereunder set forth in Exhibit B hereto.

ii) at the time of the commencement of the term, sole and undisturbed physical possession of the entire Property will be delivered to Lessee free and clear of all liens (other than the lien of current taxes not delinquent), defects in title, encumbrances, restrictions, agreements, easements, tenancies and violations of law except as set forth in Exhibit B hereto.

c) If Lessor shall be in default under this paragraph 16, Lessee, in addition to any and all remedies it may have in law and/or equity, may terminate this lease upon written notice to Lessor.

17.   Insurance.

17.1   Risks to be Insured.   Lessee, at its expense, will maintain with insurers approved by Lessor: (a) insurance with respect to the Property and Improvements against loss and damage by fire, lightning, windstorm, hail, explosion, riot, riot attending a strike, civil commotion, aircraft, vehicles, smoke, loss of rent and other risks from time to time included under "extended coverage" policies, in an amount equal to 80% of the full replacement value of the Improvements and in any event in an amount sufficient to prevent Lessor or Lessee from becoming a coinsurer of any partial loss under the applicable policies which policies shall be written on a replacement cost basis; (b) public liability and property damage insurance applicable to the Property in reasonable amounts approved from time to time by Lessor (which amounts at the date hereof shall be in the case of public liability $1,000,000 per person and $3,000,000 per accident with an additional umbrella of liability insurance coverage of one million dollars, and, in the case of property damage $100,000); (c) explosion insurance in respect to any steam and pressure boilers and similar apparatus located on the Property in reasonable amounts approved by Lessor (which amount at the date hereof shall be $25,000,000; (c) appropriate workmen's compensation or other insurance against liability arising from claims of workmen in respect of and during the period of any work on or about the Property; (d) rent insurance; and (e) insurance against such other hazards and in such amounts as is customarily carried.

-18-

by owners and operators of similar properties, and as Lessor
may reasonably require for its protection.  Lessee will comply
with such other requirements as any Mortgagee may from time to
time reasonably request for the protection by insurance of its
interest.

17.2  Policy Provisions.  All insurance maintained by
Lessee pursuant to §17.1 shall:  (a) except for workmen's
compensation insurance, name Lessor, Lessee and any Mortgagee
as insureds, as their respective interests may appear, and shall
include an effective waiver by the issuer of all rights of
subrogation against any named insured or such insured's interest
in the Property or any income derived therefrom as long as
no extra charge is imposed, or if extra charge the Lessor shall
pay said extra charge; (b) provide that all insurance proceeds
for losses shall be adjusted by Lessee subject to the approval
of Lessor and any Mortgagee; (c) provide that, except in the
case of public liability and workmen's compensation insurance
(or liability insurance obtained in lieu of workmen's compen-
sation insurance), insurance proceeds shall be payable to
Lessee or if there is then a mortgagee to such mortgagee
for the benefit of Lessor, Lessee and any Mortgagee, as their
respective interests may appear; (d) provide that any losses
shall be payable notwithstanding any act or failure to act
or negligence of Lessor or Lessee or any other person; (e)
provide that no cancellation, reduction in amount of material
change in coverage thereof shall be effective until at least

10 days after receipt by Lessor, Lessee and Morgagee of written notice thereof; and (f) be reasonably satisfactory to Lessor and any Mortgagee in all other respects. Any such insurance may, at Lessee's option, be provided through a blanket policy or policies.

17.3. Delivery of Policies. Upon the execution of this Lease and thereafter not less than 90 days prior to the expiration date of any policy delivered pursuant to this § 17, Lessee will deliver to Lessor the original of any policy or renewal policy, as the case may be, required by this Lease, bearing notations evidencing the payment of premiums, except that, in lieu of any such policy, Lessee may deliver a certificate of the insurer, satisfactory to Lessor in substance and in form, as to the issuance and effectiveness of such policy and the amount of coverage afforded thereby accompanied by a copy of such policy.

18. Damage To or Destruction of Property.

18.1 Lessee to Give Notice. In case of any material damage to or destruction of the Property or any part thereof, Lessee will give written notice thereof to Lessor and any Mortgagee, generally describing the nature and extent of such damage or destruction.

18.2 Restoration. In case of any damage to or destruction of the Property or any part thereof, as a result of an occurrence covered by insurance required to be carried by Lessee hereunder, Lessee whether or not the insurance proceeds

-20-

on account of such damage or destruction shall be sufficient
for the purpose, at its expense, shall promptly commence and
complete (subject to Unavoidable Delays) the restoration,
replacement or rebuilding of the Property as nearly as possible
to its value, condition and character immediately prior to such
damage or destruction with such alterations and additions as
may be made at Lessee's election pursuant to and subject to
the terms of Sections 7 and 8, (such restoration, replace-
ment, rebuilding, alterations and additions, together with any
temporary repairs and property protection pending completion
of the work, being herein called "Restoration");

   18.3   Application of Insurance Proceeds.  Insurance pro-
ceeds received by Lessee on account of any damage to or des-
truction of the Property or any part thereof (less the costs,
fees and expenses incurred by Lessor, Lessee and any Mortgagee
in the collection thereof, including without limitation,
adjuster's fees and expenses and attorneys' fees and expenses)
shall be applied as follows:

   a)   Net insurance proceeds received on account of any
damage to or destruction of the Property or any part thereof
shall, unless Lessee is in default hereunder or under the
Mortgage, be paid to Lessee or as Lessee may direct, from time
to time as Restoration progresses, to pay (or reimburse Lessee
for) the cost of Restoration, upon written request of Lessee
with a copy to Lessor accompanied by evidence, satisfactory to
any Mortgagee, that the amount requested has been paid or is

then due and payable and is properly a part of such cost, and that the balance of said proceeds after making the payment requested will be sufficient to pay the balance of the cost of Restoration. Upon receipt by Mortgagee of evidence satisfactory to it that Restoration has been completed and the cost thereof paid in full, or adequate security for such payment shall exist in form reasonably satisfactory to Mortgagee and that there are no mechanics' or similar liens for labor or materials supplied in connection therewith, the balance, if any, of such proceeds shall, unless Lessee is in default hereunder or under the Mortgage, be paid to Lessee or as Lessee may direct.

b) Any insurance proceeds not required to be paid to Lessee pursuant to this §18 for Restoration shall be paid to and retained by Lessee.

19. Taking.

19.1 Lessee to Give Notice, Etc. In case of a Taking of all or any part of the Property, or the commencement of any proceedings or negotiations which might result in such Taking, Lessee will promptly give written notice thereof to Lessor and any Mortgagee, generally describing the nature and extent of such Taking or the nature of such proceedings and negotiations and the nature and extent of the Taking which might result therefrom, as the case may be. Lessor and Lessee may each file and prosecute their respective claims for an award, but all awards and other payments on account of a Taking shall be paid as hereinafter provided.

19.2 <u>Total Taking</u>. In case of a Taking (other than for temporary use) of the fee of the entire Property, this Lease shall terminate as of the date of such Taking. In case of a Taking (other than for temporary use) of (a) such perpetual easement on the entire Property, or (b) such a substantial part of the Property, as shall result, in the good faith judgment of Lessee, in the Property remaining after such Taking (even if Restoration were made) being unsuitable for the use contemplated in § 6, Lessee may, at its option, terminate this lease by written notice to Lessor given within 60 days after such Taking, as of a date specified in such notice within 90 days after such Taking. Any Taking of the Property of the character referred to in this § 19 which results in the termination of this Lease, is referred to as a "Total Taking."

19.3 <u>Partial Taking</u>. In case of a Taking of the Property other than a Total Taking, (a) this Lease shall remain in full force and effect as to the portion of the Property remaining immediately after such Taking, without any abatement or reduction of Fixed Rent, Additional Rent, or any other sum payable, hereunder except as provided in § 19.6, and (b) that in case of a Taking for temporary use, Lessee shall not be required to effect Restoration until such Taking is terminated.

19.4 <u>Application of Awards and Other Payments</u>. Awards and other payments on account of a Taking (less costs, fees and expenses incurred by Lessor, Lessee and any Mortgagee is the collection thereof) shall be applied as follows:

19.2  Total Taking.  In case of a Taking (other than for temporary use) of the fee of the entire Property, this Lease shall terminate as of the date of such Taking.  In case of a Taking (other than for temporary use) of (a) such perpetual easement on the entire Property, or (b) such a substantial part of the Property, as shall result, in the good faith judgment of Lessee, in the Property remaining after such Taking (even if Restoration were made) being unsuitable for the use contemplated in § 6, Lessee may, at its option, terminate this lease by written notice to Lessor given within 60 days after such Taking, as of a date specified in such notice within 90 days after such Taking.  Any Taking of the Property of the character referred to in this § 19. which results in the termination of this Lease, is referred to as a "Total Taking."

19.3  Partial Taking.  In case of a Taking of the Property other than a Total Taking, (a) this Lease shall remain in full force and effect as to the portion of the Property remaining immediately after such Taking, without any abatement or reduction of Fixed Rent, Additional Rent, or any other sum payable, hereunder except as provided in § 19.6, and (b) that in case of a Taking for temporary use, Lessee shall not be required to effect Restoration until such Taking is terminated.

19.4  Application of Awards and Other Payments.  Awards and other payments on account of a Taking (less costs, fees and expenses incurred by Lessor, Lessee and any Mortgagee is the collection thereof) shall be applied as follows:

a)  Net awards and payments received on account of a
Taking other than a Taking for temporary use or a Total Taking
shall be held and applied to pay the cost of Restoration of the
Property, such application to be made substantially as provided
in the first sentence of paragraph (a) of section 18.3, with
respect to insurance proceeds.  The balance, if any, shall be
divided between Lessor and Lessee first to the value of the
Lessor's interest in the land as though said land were unen-
cumbered by a lease and vacant and unimproved, allowing the
development of said property to its highest and best use,
(provided, however, that in no event shall Lessor's share
be in excess of an amount determined by multiplying the amount
that would be payable to Lessor under paragraph (c) of this
§19.4  by a fraction, the numerator of which shall be the
square footage of the property so taken and the denominator
of which shall be the total square footage of the Property)
and, second, the balance to Lessee.

b)  Net awards and payments received on account of a
Taking for temporary use shall be distributed to Lessee without
participation by Lessor, until such taking for temporary use
is terminated and Lessee shall, at its own cost and expense,
make all repairs to the buildings and improvements on the Pro-
perty affected by such Taking to the extent necessary to restore
the same to a complete architectural unit (to the extent per-
mitted, however, taking into consideration the amount of land
remaining after said Taking).  If any portion of any such

award or payment is made by reason of any damage to or destruc-
tion of the Property, such portion shall be held and applied as
provided in the first sentence of paragraph (a) of this § 19.4.
The balance, if any, of such awards and payments shall, unless
Lessee is in default hereunder, be paid to Lessee.

c)  Net awards and payments received on account of
a Total Taking shall be allocated and paid as follows if the
fee interest is subordinated pursuant to Section 40.

First:  There shall be paid to Lessee an amount equal
to the sum of any unpaid principal amount of the indebtedness
secured by a Mortgage, if any, and any interest accrued thereon,
all as of the date on which such payment is made.

Second:  There shall be allocated to Lessor an amount
equal to the balance of Lessor's interest in the land as though
said land were unencumbered by the Lease and vacant and unim-
proved allowing development of said Property to its highest
and best use.

Third:  There shall be paid to Lessee an amount equal
to the remaining balance of the net award.

19.5  Award if Lessee in Default.  Notwithstanding
the foregoing, if at the time of any Taking or at any time there-
after, Lessee shall be in default under this Lease and such
default shall be continuing, Lessor is hereby authorized and
empowered, in the name and on behalf of Lessee and otherwise,
to file and prosecute Lessee's claim, if any, for an award on
account of any Taking and to collect such award and apply the

same, after deducting all costs, fees, and expenses incident
to the collection thereof, to the curing of such default and
any other then existing default under this lease.

19.6   Reduction of Fixed Rent Upon Payment to Lessor.  In
the event that any portion of award or other payment received
on account of a Taking shall be paid to Lessor pursuant to the
second sentence of paragraph (a) of §19.4 , each monthly install-
ment of Fixed Rent hereunder shall be reduced, commencing with
the first Rent Payment Date following the date of such payment,
by an amount to be computed by multiplying such monthly install-
ment in effect prior to such date by a fraction the numerator
of which is the amount of the award or payment made to Lessor
in connection with such Taking and the denominator of which is
the amount which would be payable to the Lessor under paragraph
(c) of Section 19.4(as reduced by the amount of any other such
awards or payment previously made to Lessor pursuant to the
second sentence of paragraph (a) of §19.4).

20.  Utility Easements.  Lessee shall have the right to
enter into reasonable agreements with utility companies creating
easements in favor of such companies as are required in order
to service the Property and any improvements thereon, and Lessor
covenants and agrees to consent thereto and to execute any
and all documents, agreements, and instruments in order to
effectuate the same, all at Lessee's cost and expense.

21.  Assignment of Subrents, Etc.  Subject to any subse-
quent assignment of rents to any mortgagee of Lessee, Lessee

hereby irrevocably assigns to Lessor all rents due or to become due from any assignee of Lessee's interest hereunder and any sublessee or any tenant or occupant of the Property or any part thereof, together with the right to collect and receive such rents, provided that, so long as Lessee is not in default under this Lease, Lessee shall have the right to collect such rents for its own use and purposes. Upon any default by Lessee under this Lease, Lessor shall have absolute title to such rents and the absolute right to collect the same, subject to any rights which may hereafter be granted to any Mortgagee of Lessee. Lessor shall apply to the Fixed Rent and Additional Rent due under this Lease the net amount (after deducting all costs and expenses incident to the collection thereof and the operation and maintenance, including repairs, of the Property) of any rents so collected and received by it. Lessee will not demand or accept from any sublessee, tenant or occupant of the Property, or any part thereof, any payment, prepayment or advance payment in respect of more than one rental period under the applicable sublease and in no event shall Lessee demand or accept any payment, prepayment or advance payment for a period exceeding one (1) month. All rights of Lessor hereunder shall be junior and subordinate to any comparable assignment of rents which may hereafter be made by Lessee to any Mortgagee to which assignment Lessor hereby consents.

    22.  Forebearance, etc.; Right to Perform Lessee's Covenants.

22.1  Notices.  In the event that Lessee's interest under this Lease is subject to any Mortgage, Lessor will give to Mortgagee a copy of each notice or other communication from Lessor to Lessee hereunder at the time of giving such notice or communication to Lessee, and Lessor will give to Mortgagee a copy of each notice of any rejection of this Lease by any trustee in bankruptcy of Lessee.  Lessor will not exercise any right, power or remedy with respect to any default hereunder, and no notice to Lessee of any such default and no termination of this Lease in connection therewith shall be effective, unless Lessor has given to Mortgagee written notice or a copy of its notice to Lessee of such default or any such termination, as the case may be.

22.2  Forebearance by Lessor.  Lessor will not exercise any right, power or remedy with respect to any default hereunder if:

a)  in the case of a default in the payment of rent or other sums due hereunder, or any other default then susceptible of being cured by Mortgagee, Mortgagee shall, within 10 days after the giving by Lessor of notice of such default, pay such rent or other sum, or cure such default; or

b)  in the case of any other default, i) mortgagee, within 30 days after the giving by Lessor of notice of such default, gives written notice to the Lessor of Mortgagee's intention to foreclose its Mortgage, and (ii) Mortgagee thereafter promptly commences to cure such default, provided that

after notice from Mortgagee under (i) above, Lessor may (but shall be under no obligation to) by notice to Mortgagee and Lessee, require Lessee to assign its interest in this Lease in Mortgagee or its nominee and upon receipt of such notice, Lessee will so assign its interest without expense to Lessor or Mortgagee: provided, further that Lessor shall in no event be required to forbear hereunder unless mortgagee shall promptly pay all rent and other sums due hereunder in respect of which there exists a default.

22.3  Performance on Behalf of Lessee.  In the event that Lessee shall fail to make any payment or perform any act required hereunder to be made or performed by Lessee, then Lessor or Mortgagee may, but shall be under no obligation to, with such notice to Lessee, as may be reasonable under the circumstances, make such payment or perform such act with the same effect as if made or performed by Lessee.  Entry by Lessor or Mortgagee upon the Property for such purpose shall not waive or release Lessee from any obligation or default hereunder (except in the case of any obligation or default which shall have been fully performed or cured by Mortgagee).  Lessee shall reimburse Lessor and Mortgagee for all sums so paid by Lessor or Mortgagee and all costs and expenses incurred by Lessor and Mortgagee in connection with the performance of any such act and in addition, Lessee shall pay Lessor and Mortgagee 8 1/2% interest on all sums, costs and expenses so paid or incurred by Lessor and Mortgagee.

22.4 New Lease.  In case (a) Lessee's interest hereunder
shall be sold, assigned (other than for security purposes)
or otherwise transferred pursuant to the exercise of any right,
power or remedy by Mortgagee or pursuant to judicial proceedings,
and satisfactory provision for indemnification of Lessor against
any adverse claims arising out of or with respect to this Lease
shall have been made, (b) no Fixed Rent, Additional Rent or
other sums payable hereunder shall then be due and payable to
Lessor, (c) Mortgagee or any other purchaser of Lessee's
interest hereunder shall have arranged for the correction of
any default susceptible of being corrected by the Lessee under
the new lease referred to herein, and (d) this Lease shall not
have been terminated pursuant to the terms hereof by reason of
a default, then Lessor, within 30 days after receiving written
request therefor and upon payment of all expenses, including
without limitation, attorneys' fees and expenses, incident there-
to, will execute and deliver a new lease of the Property to
Mortgagee or its nominee, purchaser, assignee or transferee,
as the case may be, for the remainder of the Lease term, and,
except for charges or encumbrances caused or suffered by Lessee,
with the same terms as  are contained herein and with priority
equal to that hereof.  Upon the execution and delivery of such
new lease, Lessor, at the expense of the new Lessee, shall take
such steps as shall be necessary to cancel and discharge this
Lease of record and remove Lessee from the Property and the
new lessee shall be deemed to be the landlord under any Occupancy
Leases.

22.5  Mortgagee's Liability.  Even if Lessor's interest
in the Property has not been subordinated to the interest
of a Mortgagee, no Mortgagee or holder of indebtedness under
any Mortgage, or purchaser at foreclosure sale thereunder,
shall incur or be required to assume liability for the payment
of rental under this Lease, or for the performance of any of
Lessee's covenants and agreements contained herein; unless and
until such Mortgagee or holder of indebtedness shall have become
the owner of the Leasehold Estate hereunder by foreclosure or
by assignment in lieu of foreclosure.

23.  Assignments, Subleases, Etc.  If no default shall have
occurred and be continuing under this Lease, Lessee may with
Lessor's written consent (which shall not be unreasonably with-
held) assign or sublease all or substantially all of its inter-
est in this Lease to any other Person pursuant to a written
undertaking by such Person (satisfactory in substance and form
to Lessor and Mortgagee) to perform all of the obligations
hereunder.  Upon any assignment pursuant to this § 23, the assignor
shall remain liable in accordance with the terms of this Lease
as if no assignment or subletting has taken place.

In the event a mortgagee succeeds to the interest of Lessee
hereunder by virtue of foreclosure of its mortgage, a subse-
quent assignment by said Mortgagee will fully release the
Mortgagee from any further liability hereunder.

Nothing contained in this paragraph shall be deemed to
prevent Lessee from subleasing any part or parts of the demised

premises for occupancy by the sublessee without the consent of Lessor.

24.  Events of Default; Termination.  If any one or more of the following events ("Events of Default") shall occur:

a)  Lessee shall fail to pay any Fixed Rent when and as the same becomes due and payable; however, prior to December 31, 1981, a default by Lessee in payments of Fixed Rent aggregating 6 months in arrears shall not be deemed to be a default entitling the Lessor to terminate this Lease provided that all rent arrears shall have been paid in full together with interest on or before December 31, 1981;

b)  Lessee shall fail to pay any Additional Rent when and as the same becomes due and payable and such failure shall continue for more than 10 days; or

c)  Lessee shall fail to perform or comply with any other term hereof; such failure shall continue for more than 30 days after notice thereof from Lessor, and Lessee shall not, subject to Unavoidable Delays, within such period commence with due diligence and dispatch the curing of such default, or, having so commenced, shall thereafter fail or neglect, for reasons other than Unavoidable Delays, to prosecute or complete with due diligence and dispatch the curing of such default or shall vacate or abandon the Property; or

-32-

d)   There shall be a default in the payment of any
indebtedness for borrowed money secured by any lien on the
Leasehold Estate (whether or not Lessee is personally liable for
such indebtedness), or shall fail to perform or comply with any
of the terms of such indebtedness, or of any instruments
relating thereto, beyond any grace period provided with respect
thereto, and such default shall not have been waived; or

e)   Lessee shall commit any act of insolvency such as
but not limited to an assignment for the benefit of creditors
or the filing of a petition in bankruptcy provided, however, that same
shall not be an act of default if all the other terms, covenants,
and conditions of the Lease have been complied with; or

f).   A final judgment for the payment of money shall be
rendered against Lessee and, within 60 days after the entry
thereof, such judgment shall not have been discharged or
execution thereof stayed pending appeal, or if, within 60 days
after the expiration of any such stay, such judgment shall
not have been discharged,

-33-

then, and in any such event (regardless of the pen-
dency of any proceeding which has or might have the effect of
preventing Lessee from complying with the terms of this Lease),
Lessor, subject to § 22, at any time thereafter may give a
written termination notice to Lessee, and on the date specified
in such notice this Lease shall terminate and, subject to § 30,
the Lease Term shall expire and terminate by limitation, and
all rights of Lessee shall cease, unless before such date (i) all
arrears of Fixed Rent, Additional Rent and all other sums payable
by Lessee under this Lease (together with interest thereon
at the rate of 8-1/2% per annum) and all costs and expenses
(including, without limitation, attorneys' fees and expenses)
incurred by or on behalf of Lessor hereunder, shall have been
paid by Lessee, and (ii) all other defaults at the time existing
under this Lease shall have been fully cured. Lessee shall
reimburse Lessor for all costs and expenses incurred by or on
behalf of Lessor (including, without limitation, attorneys'
fees and expenses) occasioned by any default by Lessee under
this Lease.

25. Entry by Lessor. Lessor and its authorized repre-
sentatives shall have the right to enter the Property at all
business hours (a) for the purpose of inspecting the same or
for the purpose of doing any work under § 22.3, and to take all
such action thereon as may be necessary or appropriate for any
such purpose of doing any work under § 22.3, and to take all
such action thereon as may be necessary or appropriate for any

-34-

such purpose (but nothing contained in this Lease shall create
or imply any duty on the part of Lessor to make any such inspec-
tion or do any such work), (b) for the purpose of showing the
Property to prospective purchasers or mortgagees, and at any
time during the six month period preceeding the expiration of
the Lease Term for the purpose of showing the same to prospec-
tive tenants, and within such six month period to display on
the Property advertisements for sale or letter if such adver-
tisements do not interfere with the business then conducted on
the Property and (c) for the purpose of making any necessary
repairs to the Property and performing any work therein that may
be necessary to comply with any laws, ordinances, rules, regula-
tions or requirements of any public authority or of the Board
of Fire Underwriters or any similar body or that may be neces-
sary to prevent waste or deterioration in connection with the
Property. Lessor may during the progress of any work in the
Property keep and store upon the Property all necessary materials,
tools and equipment so long as the same do not interfere with
the operation of the Building. Lessor shall not in any event
be liable for inconvenience, annoyance, disturbance, loss of
business or other damage of the Lessee by reason of making
repairs or the performance of any work in the Property, or
on account of bringing materials, supplies and equipment into
or through the Property during the course thereof, and the
obligations of the Lessee under this Lease shall not thereby
be affected in any manner whatsoever. Lessor agrees, however,

in connection with the doing of any work to cause as little inconvenience, annoyance, disturbance, loss of business or other damage to the Lessee, as may reasonably be possible in the circumstances.  No such entry shall constitute an eviction of Lessee.

26.  Repossession, Etc.  Subject to § 22, and the last paragraph of § 23, if an Event of Default shall have occurred and be continuing, Lessor, whether or not the Lease Term shall have been terminated pursuant to § 24 may enter upon and repossess the Property or any part thereof by force, summary proceedings, ejectment or otherwise, and may remove Lessee and all other persons and any and all property therefrom.  Lessor shall be under no liability for or by reason of any such entry, repossession or removal.

27.  Reletting.  Subject to § 22, and the last paragraph of § 23, at any time or from time to time after the repossession of the Property or any part thereof pursuant to § 26, whether or not the Lease Term shall have terminated pursuant to § 22, Lessor may (but shall be under no obligation to) relet the Property or any part thereof for the account of Lessee, in the name of Lessee or Lessor or otherwise, without notice to Lessee, for such term or terms (which may be greater or less than the period which would otherwise have constituted the balance of the Lease Term) and on such conditions (which may include concessions or free rent) and for such uses as Lessor, in its reasonable discretion, may determine, and may collect and receive the rents

therefor.  Lessor shall not be responsible or liable for any
failure to relet the Property or any part thereof or for any
failure to collect any rent due upon any such reletting.

28. <u>Survival of Lessee's Obligations; Damages</u>.

28.1 <u>Termination of Lease Not to Relieve Lessee of
Obligation</u>.  No expiration or termination of the Lease Term
pursuant to § 24 or by operation of law, or otherwise (except
as expressly provided herein), and no repossession of the Pro-
perty or any part thereof pursuant to § 26, or otherwise, shall
relieve Lessee of its liabilities and obligations hereunder,
all of which shall survive such expiration, termination or
repossession.

28.2 <u>Damages</u>.  In the event of any such expiration,
termination or repossession, Lessee will pay to Lessor all
Fixed Rent, Additional Rent and other sums required to be paid
by Lessee up to the time of such expiration, termination or
repossession, and thereafter Lessee, until the end of what would
have been the Fixed Term or the then current Renewal Term
in the absence of such expiration, termination or repossession,
and whether or not the Property or any part thereof shall have
been relet, shall be liable to Lessor for, and shall pay to
Lessor, as liquidated and agreed damages for Lessee's default,
(a) all Fixed Rent, Additional Rent and other sums which would
be payable under this Lease by Lessee in the absence of such
expiration, termination or repossession for the balance of the
Lease, less (b) all net rents collected by Lessor from Occupancy

Tenants plus the net proceeds, if any, of any reletting effected
for the account of Lessee pursuant to § 28, after deducting
from such proceeds all Lessor's expenses in connection with such
reletting (including, without limitation, all repossession
costs, brokerage commissions, legal and accounting expenses,
attorney's fees and expenses, employees' expenses, promotional
expenses, reasonable alteration costs, and expenses of prepara-
tion for such reletting).  Lessee will pay such damages on
demand upon termination of the Lease herein.  The damage
will be measured by taking the present value of paragraph a)
herein less paragraph b) herein for the balance of the term
at the rate of 8 1/2%.

29. Lessee's Waiver of Statutory Rights.  In the event of
any termination of the Lease Term pursuant to § 24 or any repos-
session of the Property pursuant to § 27, Lessee, so far as
permitted by law, waives (a) any notice of re-entry or of the
institution of legal proceedings to that end, (b) any right of
redemption, re-entry or repossession, (c) any right to a trial
by jury in any proceeding or in any matter in any way connected
with this Lease, and (d) the benefits of any laws now or
hereafter in force exempting property from liability for rent
or for debt.

30. No Waiver, Etc., by Lessor or Lessee.  No failure by
Lessor or Lessee to insist upon the strict performance of any term
hereof or to exercise any right, power or remedy consequent upon
a breach thereof, and no submission by Lessee or acceptance by
Lessor of full or partial rent during the continuance of any

such breach, shall constitute a waiver of any such breach or of any such term. No waiver of any breach shall affect or alter this Lease, which shall continue in full force and effect, or the respective rights of Lessor or Lessee with respect to any other then existing or subsequent breach. No foreclosure, sale or other proceeding under any Mortgage or any other mortgage with respect to the Property shall discharge or otherwise affect the obligations of Lessee hereunder.

31. Lessor's Remedies, Etc., Cumulative. Each right, power and remedy of Lessor provided for in this Lease or now or hereafter existing at law or in equity or by statute or otherwise shall be cumulative and concurrent and shall be in addition to every other right, power or remedy provided for in this Lease or now or hereafter existing at law or in equity or by statute or otherwise shall not preclude the simultaneous or later exercise by Lessor of any or all such other rights, powers or remedies.

32. Acceptance of Surrender. No modification, termination or surrender of this Lease or surrender of the Property or any part thereof or of any interest therein by Lessee shall be valid or effective unless agreed to and accepted in writing by Lessor and Mortgagee, if any, and no act by any representative or agent of Lessor or any Mortgagee, other than such a written agreement and acceptance by Lessor and any Mortgagee, shall constitute an acceptance thereof.

33. No Merger of Title. There shall be no merger of the Leasehold Estate created by this Lease with the fee estate in the

Property by reason of the fact that the same person may own or
hold (a) the Leasehold Estate created by this Lease or any
Interest in such Leasehold Estate, and (b) the fee estate in
the Property or any interest in such fee estate; and no such merger
shall occur unless and until all persons, including any
Mortgagee, having any interest in (i) the Leasehold Estate
created by this Lease, and (ii) the fee estate in the Property,
shall join in a written instrument effecting such merger and
shall duly record the same. Nothing herein contained shall
impair the automatic vesting of title to the Improvements
in the Lessor upon termination of the Lease as set forth
in paragraph 38 hereof.

34. Estoppel Certificate by Lessee. Lessee will execute,
acknowledge and deliver to Lessor, promptly upon request, a
certificate certifying that (a) this Lease is unmodified and
in full force and effect (or, if there have been modifications,
that the Lease is in full force and effect, as modified, and
stating the modifications), (b) the dates, if any, to which
Fixed Rent, Additional Rent and other sums payable hereunder
have been paid, and (c) no notice has been received by Lessee
of any default which has not been cured, except as to defaults
specified in said certificate. Any such certificate may be
relied upon by any prospective purchaser or mortgagee of the
Property or any part thereof.

-40-

35.   Estoppel Certificate by Lessor.   Lessor will execute,
acknowledge and deliver to Lessee or any Mortgagee, promptly
upon request, a certificate certifying (a) that this Lease is
unmodified and in full force and effect (or, if there have
been modifications, that this Lease is in full force and effect
as modified, and stating the modifications), (b) that the dates,
if any, to which Fixed Rent, Additional Rent and other sums
payable hereunder have been paid, and (c) whether or not, to the
knowledge of Lessor, there are then existing any defaults under
this Lease (and if so, specifying the same).   Any such certifi-
cate may be relied upon by any prospective transferee or
mortgagee of Lessee's interest under this Lease.

36.   Conveyance by Lessor.   In case the original or any
successor Lessor shall convey or otherwise dispose of the Pro-
perty, it shall thereupon be released from all liabilities and
obligations shall be binding solely on the then owner of the
Property.

37.   Title Insurance.   Lessor agrees to obtain a title
insurance policy from a reputable insurance company in an amount
of at lease $1,550,000, which policy shall insure the
Lessee's possession and enjoyment under this Lease subject
to the Permitted Encumbrances set forth as Exhibit B hereto.

38.   Title to Improvements and Depreciation.   Title to all
Improvements, heating and air conditioning equipment situated
on the Land, and all changes, additions, and alterations therein,

-41-

and all renewals and replacements thereof, when made, erected,
constructed installed or placed upon the Property, shall be and
remain in Lessee until the expiration of the term of this
Lease, unless sooner terminated as herein provided.  Upon the
expiration or sooner termination of this Lease, title to all
such property shall automatically pass to, vest in and belong
to Lessor without further action on the part of either party
and without cost or charge to Lessor.  During the term of this
Lease, Lessee alone shall be entitled to claim depreciation
on the improvements, heating and air conditioning equipment
in or appurtenant thereto, and all changes, additional and
alterations therein, and all renewals and replacements thereof,
for all taxation purposes.  Lessee shall have the right at any time
during the term of the Lease or any renewal thereof to reconstruct
a new building or renovate the existing building so long as Lessee
complies with §7 and §8 hereof.

    39.  <u>Maintenance and Repairs</u>.  Lessee, at all times and at
its expense, will keep the Property and the adjoining sidewalks,
curbs, if any, streets and ways, installed by Lessee and not
dedicated to a public authority in good and clean order and con-
dition and will promptly make all necessary or appropriate
repairs, replacements and renewals thereof, whether interior
or exterior, structural or nonstructural, ordinary or extraor-
dinary, foreseen or unforeseen, ordinary wear and tear excepted.
All repairs, replacements and renewals shall be made promptly
and be equal in quality and class to the original work.
Lessee waives any right created by any law now or hereafter
in force to make repairs to the Property at Lessor's expense.
Lessee, at its expense, will do or cause others to do every act

-42-

necessary or appropriate for the preservation and safety of the
Property by reason of or in connection with any excavation or
other building operation upon the Property or any adjoining
property owned or leased by Lessee, including without limita-
tion, all shoring of foundations and walls of the Improvements
or of the ground adjacent thereto.

40.  Subordination: Escrow Provision: Refinancing.

40.1  (a)  Simultaneously with the execution of this Lease,
the Property will be subject to and encumbered by a purchase money
mortgage in the principal amount of $7,800,000 of which $2,200,000
will then constitute a lien.  Consalvas has agreed to attempt to
obtain $5,600,000 in construction loan and/or mortgage financing
(the "Underlying Mortgage") proceeds, which mortgage will encumber
the fee interest and the leasehold.  Consalvas will advance those
sums if he obtains the mortgage to the Lessee on the same basis
that he obtains them in order to permit Lessee to pay its Contractor
for the construction of the Premises.  After the final advance
pursuant to the Underlying Mortgage in accordance with its terms,
there will be encumbering the Property an Underlying Mortgage of at
least $5,600,000 and a $7,800,000 Wraparound Mortgage.

(b)  During the term of this lease Lessor shall have
the right or power to mortgage the fee interest and the Leasehold
Interest for construction financing, for permanent financing, and to
renew, modify, replace, extend, or refinance the Underlying Mortgage
(all of which are "permanent mortgages" herein) subject, however,
to the following:

(i)  The debt service pursuant to any permanent
mortgage loan hereunder shall not exceed 95% (98% in the case of the
1st permanent mortgage) of debt service imposed by the Wraparound
Mortgage presently encumbering the Property;

-43-

(ii)  The principal amount of any such mortgage shall not exceed $7,800,000;

(iii)  Any such mortgage shall provide that the holder of such mortgage, upon serving the Lessor with any notice under such mortgage will simultaneously serve a copy of such notice upon the Lessee;

(iv)  Lessor shall, upon request, execute, acknowledge and deliver to Lessee, an agreement, prepared at the sole cost and expense of Lessee in form satisfactory to Lessee between Lessor, Lessee, and the holder of such mortgage, agreeing to all of the provisions of this §40.1(b).

(c) · Lessee agrees to pay all debt service required to be paid upon mortgage loan permitted to be secured by a mortgage on the fee interest except for the Underlying Mortgage herein described.

(d)  In the event of a Refinancing of any permanent mortgage loan permitted hereunder larger than the balance of the underlying mortgage then encumbering the property, the difference, after deducting all expenses in obtaining that mortgage including but not limited to brokerage fees, taxes, points, etc. shall be divided in the following manner: (1) during the time the Wraparound Mortgage encumbers the Property, 50% to the Wraparound Mortgagee in reduction of the Principal Balance thereof and 50% to the Lessee; (2) after the Wraparound Mortgage has been paid off, 50% to the Lessor herein and 50% to the Lessee.  Lessor hereby directs the aforesaid

-44-

Lending Institution to pay over said sum as provided herein for such purpose. If nevertheless, the aforesaid Lending Institution shall refuse to pay the proceeds of such Permitted Mortgage to a party other than as provided herein, then Lessor, if it receives same, agrees to hold all checks (or other orders for the payment of money) or cash proceeds received by it from the said Lending Institution, in trust, and to forthwith endorse (if necessary) and disburse same in accordance with this Agreement.

(e)  This Lease is and will remain subject and subordinate to any Underlying Mortgage or Mortgages which will encumber the premises as follows:

(i)  A construction mortgage loan having a term of not less than 12 months with the Mortgagor under the construction mortgage having the right to extend the mortgage term for further periods up to 30 months in total by payment of money only; said construction loan mortgage shall not exceed $5,600,000 in amount;

(ii)  A permanent mortgage loan which may replace the construction loan mortgage aforesaid having a minimum term of 10 years, requiring debt service (interest and amortization) not exceeding $688,000 per annum, and made by an Institutional Lender defined herein.  73v,000

(iii)  A permanent loan made to refinance the permanent loan described in (b) above, by an Institutional Lender in an amount not exceeding $7,800,000 (exclusive of interest and other charges accrued or any advances which Mortgagee may make in order to further protect its lien) less the sum of any payments of principal made on the Mortgage Note secured by this Mortgage in reduction thereof.  The permanent loan herein described may not, however, require payment of debt service (principal and interest)

in excess of 95% of the mortgage note secured by this mortgage.

(f)   A mortgage loan which may be made by Consalvas, the mortgagee herein, pursuant to a guarantee made by him to the mortgagor (of even date herewith) to loan to the mortgagor a sum which, when added to the permanent mortgage loan described in (b) above, will total no more than $5,600,000.

(g)   Lessor and Lessee agree this lease and the fee interest of Lessor and the interest of any mortgagee of Lessor, as provided in § 40.1(a) in the Property shall be, and hereby are made, subject and subordinate at all times to the lien of any modification or extension thereof and to any new or consolidated mortgage which may be placed on the premises which may at any time, and from time to time, hereinafter affect all or any part of the fee of the Property, including all rights and easements appurtenant thereto and the buildings and improvements thereon at any time and from time to time, and to any and all Refinancing thereof, obtained from a Lending Institution, (as hereinafter defined).  For the purposes of this Lease the term "Lending Institution" shall mean any insurance company, bank or trust company, savings bank, state or federal savings and loan accounts, federal credit union, college, university, charitable institution or union; pension, profit or retirement funds or trust; governmental agency or fund; or other financial or lending institution whose loans on real estate or with respect thereto are regulated by state or federal law and are authorized to do business in the State of New York with a surplus in excess of $50,000,000.

(h)   Lessor and Lessee each covenant to execute, whenever required by the other, a proper instrument or subordination evidencing the provisions of this § 40.1 and each and their respective successors and assigns, is hereby irrevocably appointed attorney-in-fact for and on behalf of the other to execute any instrument of subordination in accordance with the provisions of this § 40.1.

(i)   Each Permitted Mortgage except the construction mortgage shall contain the following provisions, among others, in form satisfactory to the Lending Institution.

(1)   A provision, unless waived by Lessee, obligating the Lending Institution to release insurance and condemnation proceeds to Lessee or any sublessee authorized by Lessee (in a manner satisfactory to the Lending Institution) for repairs, rebuilding, replacements and/or restoration, or permit the Mortgage to be prepaid without prepayment penalty of any kind if it elects not to release the same.

(2)   A provision exculpating Lessee and Lessor and all of their respective partners from personal liability for any

-46-

(h)  Lessor and Lessee each covenant to execute, whenever
required by the other, a proper instrument or subordination
evidencing the provisions of this § 40.1 and each and their
respective successors and assigns, is hereby irrevocably appointed
attorney-in-fact for and on behalf of the other to execute any
instrument of subordination in accordance with the provisions
of this § 40.1.

(i)  Each Permitted Mortgagee shall contain the following
provisions, among others, in form satisfactory to the Lending
Institution:

(1)  A provision, unless waived by Lessee, obligating
the Lending Institution to release insurance and condemnation
proceeds to Lessee or any sublessee authorized by Lessee (in
a manner satisfactory to the Lending Institution) for repairs,
rebuilding, replacements and/or restoration, or permit the
Mortgage to be prepaid without prepayment penalty of any kind
if it elects not to release the same.

(2)  A provision exculpating Lessee and Lessor and all
of their respective partners from personal liability for any

-46-

default under the Mortgage, beyond their respective leasehold
and fee interests in the Property or any part thereof, and that
the Lending Institution shall look solely to such interests
for the satisfaction of any and all remedies it may have upon
any default under the Mortgage and shall not seek or enforce
any deficiency or other personal judgment against either Lessee
or Lessor or any of their respective partners.  In the event the
Lending Institution shall not be able or willing to have such
a provision with respect to Lessor, or with respect to Lessee,
unless waived by Lessee, in the Permitted Mortgage, the
Property shall be conveyed (subject to this lease as subordinated
as herein provided) to either an individual or corporate (as the
Lessee shall desire) so-called "nominee" or "dummy" for the pur-
pose of executing the Mortgage and note and immediately there-
after reconveyed (subject to this Lease as subordinated as herein
provided) to Lessor, all at the sole cost and expense of Lessee.

        (3)  A provision, unless waived by Lessee, in form
satisfactory to the Lending Institution, pursuant to which the
Lending Institution shall grant the non-disturbance assurances
and attornments required by any sublease(s) of the Property.

        (4)  A provision in form satisfactory to the Lending
Institution, that both Lessor and Lessee shall receive all notices
required or desired to be given by the Lending Institution and that,
if any default is not cured by Lessee, within the period of time
permitted under the Permitted Mortgage, the Lending Institution
shall accept performance of the covenant in default by Lessor

if the same is performed within a reasonable specified time thereafter.

(j)  The terms "Mortgage" and "Permitted Mortgage" as used herein, shall include only so-called permanent financing and any and all advances thereunder as provided in subparagraph (h).

(k)  Any Permitted Mortgage may also contain, at Lessee's option so called open end provisions for further advances thereunder.  All provisions of this § 40.1 shall apply to such subsequent advances as fully and with the same force and effect as with respect to the original advance and loan. The term "Mortgage" wherever used herein, shall include whatever security instruments are used in the locale of the Property, such as, without limitation, deeds of trust, security deeds and conditional deeds, as well as financing statements, security agreements and other documentation required pursuant to the Uniform Commercial Code.  The term "Mortgage" whenever used herein, shall also include any instruments required in connection with a sale leaseback transaction with a Lending Institution.

(l)  Lessor and Lessee agree to execute and deliver to each Lending Institution such instruments of assignment and consent, and in such form, as shall be desired or required by

such Lending Institution, as additional collateral and security,
of its right, title and interest in, to and under this lease
and any sublease(s) affecting the Property, including, without
limitation, the rents and additional rents payable hereunder and
thereunder.

(m)   Lessor and Lessee further agree to execute & delive
to any Lending Institution requiring same, an Amendment of Lease
incorporating such modifications of the terms and provisions of
this lease as such Lending Institution shall require as a con-
dition precedent to their granting of a loan or a commitment
secured by a Permitted Mortgage.  Notwithstanding the foregoing,
neither Lessor or Lessee shall be required to execute any Amend-
ment of Lease which shall modify the provisions of this lease
relating to the amount of basic rent reserved, the obligation of
Lessee's part to make payment of Additional Rent, the size and
location of the Property and the duration of Rent Commencement
Date of the term.

41.   Option to Purchase Interest of Bruder.   The parties
acknowledge that Bruder has an interest in the Wraparound Mortgage
encumbering the Property at the time of the execution of the Lease.
Bruder hereby grants to Consalvas the right to purchase its interest
in the Lease for $1,000 if, as and when Bruder has received
$550,000 in net refinancing benefits, net condemnation benefits or
net casualty proceeds benefits pursuant to that Mortgage.  Those
benefits may be evidenced by closing statements of counsel for

the Mortgagee indicating said amounts have been paid to Bruder.
Further, Bruder has agreed that he shall not participate in any
renewal of the Lease by Lessee.

42. End of Lease Term.  Upon the expiration or other
termination of the term of this Lease, Lessee shall quit and sur-
render to Lessor the Property broomswept, in good repair,
ordinary wear and tear excepted replacements, changes, additions
and Improvements constructed, erected, added or placed by Lessee
thereon, with all equipment in or appurtenant thereto.

43. Provisions Subject to Applicable Law.  All rights,
powers, and remedies provided herein may be exercised only to the
extent that the exercise thereof does not violate any applicable
law, and are intended to be limited to the extent necessary so
that they will not render this Lease invalid, unenforceable or not
entitled to be recorded under any applicable law.  If any term
of this Lease shall be held to be invalid, illegal or unenforce-
able, the validity of the other terms of this Lease shall in
no way be affected thereby.

44. Definitions.  As used in this Lease the following
terms have the following respective meanings:

Event of Default:  as defined in § 24.

Fixed Rent:  as defined in § 2.1.

Fixed Term:  as defined in Section 1.

Impositions:  all taxes, assessments (including, without
limitation, all assessments for public improvements or benefits,
whether or not commenced or completed prior to the date hereof
and whether or not to be completed within the term hereof),
water, sewer or similar rents, rates and charges, excises, levies,

license fees, permit fees, inspection fees and other authori-
zation fees and other charges in each case, whether general or
special, ordinary, or extraordinary, foreseen or unforeseen,
of every character (including all interest and penalties thereon),
which at any time during or in respect of the term hereof may
be assessed, levied, confirmed or imposed on or in respect of
or be a lien upon (a) the Property or any rent therefrom or any
estate, right or interest therein, or (b) any occupancy, use or
possession of or activity conducted on the Property or any part
thereof, other than any income or excess profits or franchise
taxes of Lessor determined on the basis of general income or
revenue or any interest or penalties in respect thereof.

Improvements: all buildings, structures, fixtures
and other improvements now or hereafter located on the Land.

Insurance Requirements: all terms of an insurance
policy covering or applicable to the Property or any part thereof,
all requirements of the issuer of any such policy, and all orders,
rules, regulations and other requirements of the National Board
of Fire Underwriters (or any other body exercising similar
functions) applicable to or affecting the Property or any part
thereof or any use or condition of the Property or any part
thereof.

Land: as defined in paragraph (a) § 1.

Lease: this Lease, as at the time amended, modified
or supplemented.

Leasehold Estate: Lessee's interest in Property created
by this Lease and any Improvements thereon.

Legal Requirements: all laws, statutes, codes, acts, ordinances, orders, judgments, decrees, injunctions, rules, regulations, permits, licenses, authorizations, directions and requirements of all governments, departments, commissions, boards, courts, authorities, agencies, officials and officers, foreseen or unforeseen, ordinary or extraordinary which now or at any time hereafter may be applicable to the Property or any part thereof, or any use or condition of the Property or any part thereof.

Permitted Mortgage: as defined in Section 40.1

Permitted Exceptions: as defined in paragraph (a) of § 1 and § 37.

Person: an individual, a corporation, an association, a partnership, a joint venture, an organization, or other business entity, or a governmental or political unit or agency.

Property: as defined in § 1.

Renewal Term: as defined in § 4.

Rent Payment Date: as defined in § 2.1.

Restoration: As defined in §18.2.

Taking: a taking during the term hereof of all or part of the Property, or any leasehold or other interest therein or right accruing thereto, as the result of, or in lieu of, or in anticipation of the exercise of the right of condemnation of eminent domain, or a change of grade affecting the Property or any part thereof.

-52-

Total Taking: as defined in section 19.2.

Unavoidable Delays: delays due to strikes, acts of God, governmental restrictions, enemy action, riot, civil commotion, fire, unavoidable casualty or other causes beyond the control of Lessee, provided that no delay shall be deemed an Unavoidable Delay if the Property or any part thereof or interest therein, the Fixed Rent, Additional Rent or any other sum r the Lease would be in any danger of being sold, lated, lost or interfered with, or if Lessor, Lessee or any Occupancy Tenant would be in danger of incurring any civil or criminal liability for failure to perform the required act. Lack of funds shall not be deemed a cause beyond the control of Lessee.

45. Notices, Etc. All notices and other communications hereunder shall be in writing and shall be deemed to have been given when mailed by first class registered or certified mail, postage prepaid, or delivered addressed (a) if to Lessee, at 2380 Hempstead Turnpike, East Meadow, New York, or at such other address as Lessee shall have furnished in writing to Lessor (b) if to Lessor at ~~502 Park Avenue~~ Clifton N.J., New York, New York, or at such other address as Lessor shall have furnished in writing to Lessee.

46. Miscellaneous. This Lease may be changed, waived, discharged or terminated only by an instrument in writing signed by the party against which enforcement of such change, waiver, discharge or termination is sought. This Lease shall be binding upon and inure to the benefit of and be enforceable by the

respective successors and assigns of the parties hereto. ·The
headings in this Lease are for the purposes of reference only
and shall not limit·or define the meaning hereof. This
lease ·may be executed·in.any number.of counterparts, each of·which
is an original,'but all of which constitutes ohe instrument.

· 47. Applicable Law. This Lease shall be construed under
and enforced in accordance with the laws of the State of
New York.

. IN WITNESS WHEREOF, the parties hereto have caused this
·Lease to be executed and their respective seals to be hereunto
.. affixed..

RONALD B. BRUDER ASSOCIATES, INC., Lessor

By _____
Ronald B. Bruder, President

_____
PATRICK CONSALVAS, Lessor

GOLD STREET PROPERTIES, Lessee

By _____

STATE OF New York  }
COUNTY OF N. Y.    }  SS.:

On the 18 day of May      , 1978, before me personally
came Ronald B. Bruder to me known, who, being by me duly
sworn, did depose and say that    he resides at No. ~~X~~
~~Ellsworth St.~~ Clifton, New Jersey
that he is the President of Ronald B. Bruder Associates Inc.
the corporation described in and which executed the foregoing
instrument; that   he knows the seal of said corporation; that
the seal affixed to said instrument is such corporate seal; that
it was so affixed by order of the Board of Directors of said
corporation and that   he signed his name thereto by like order.

_____
Notary Public

CHRISTINE BERGDAHL
Notary Public, State of New York
No. 31-4527417
Qualified in New York County
Commission Expires March 30, 1979

STATE OF NEW YORK )
                  ) SS.:
COUNTY OF NEW YORK)

On the $1.8$ day of May , 197ੌ, before me

personally came Harald Fleurman

to me known and known to me to be the individual described in

and who executed the foregoing instrument and duly acknowledged

to me that he executed same.

CHRISTINE PERSDAHL
Notary Pub'., Sta.e of New York
No. 31-4527417
Qualified in New York County
Commission Expires March 30, 197ੌ

Notary Public