Exhibit G



REEL 2 2 7 5 PG 0 2 7 5

## LANDLORD'S CONSENT AND LEASE AMENDMENT

THIS LANDLORD'S CONSENT AND LEASE AMENDMENT (this "Amendment"), made as of December 15th, 1995, between Gold Street Properties, L.P. (f/k/a Gold Street Properties), L.P. a New York limited partnership, having an office at 2700 Grand Avenue, Bellmore, New York 11710 ("Lessee") and The Estate of Patrick Consalvas, having an office at 2700 Grand Avenue, Bellmore, New York 11710 ("Lessor").

## W I T N E S S E T H:

WHEREAS, pursuant to that certain lease, dated May 18, 1978, between Lessor and Lessee (as amended the "Lease")*, Lessor did demise and let to Lessee, and Lessee did hire and take from Lessor, those certain premises located in the County of New York, State of New York, as more particularly described on Exhibit A attached hereto and made a part hereof (the "Property"); and

WHEREAS, Lessor and Lessee desire to modify, amend and supplement the Lease to provide for the incorporation of the terms, covenants and conditions more particularly set forth herein.

NOW, THEREFORE, in consideration of the sum of TEN DOLLARS ($10.00) paid by Lessee to Lessor and of other good and valuable consideration, the mutual receipt and legal sufficiency of which are hereby acknowledged, the parties hereto agree that the Lease is hereby modified, amended and supplemented as follows:

1.     Lessee, and its successors and assigns, shall have the unrestricted right to mortgage and pledge the Lease without Lessor's consent and encumber the Lease with any Leasehold Mortgage (hereinafter defined).  The Leasehold Mortgage shall be superior in priority to any fee mortgage (whether now or hereafter existing) encumbering the Property, and Lessor agrees to cause the fee mortgagee to execute a written subordination agreement, in form and substance satisfactory to the Leasehold Mortgagee (hereinafter defined), which agreement shall provide that such fee mortgage is subordinate in all respects to the Leasehold Mortgage.  As used herein, the term "Leasehold Mortgage" shall be deemed to mean each and every recorded mortgage, deed of trust, deed to secure debt, collateral assignment of lease or other similar instrument creating a lien or other encumbrance on Lessee's interest in the Lease (regardless of the priority thereof), any assignment thereof and any modification or amendment of any of the terms thereof, including, without limitation, any extension, renewal or refinancing of any indebtedness secured thereby or an additional advance secured by any Leasehold Mortgage or any additional Leasehold Mortgage given to secure the same.

* a memo of which was recorded 6/14/78 in Reel 441 q 1395

REEL 2 2 7 5 PG 0 2 7 6

2.   If Lessee shall mortgage or pledge the Lease, then
so long as the Leasehold Mortgage shall remain unsatisfied, the
following shall apply:

(A)  Lessor, upon serving Lessee with any notice
hereunder or under the provisions of, or with respect to, the
Lease, shall also serve a copy of such notice upon the holder or
holders of the Leasehold Mortgage (such holder or holders, and
its or their successors and assigns from time to time, each a
"Leasehold Mortgagee") (in the same manner as required by the
Lease for notices to Lessee) at the address specified in the
Leasehold Mortgage, or at such other address as the Leasehold
Mortgagee shall designate in writing to Lessor.  No notice from
Lessor to Lessee shall be deemed to have been duly given unless
and until a copy thereof has been so served.

(B)  In the event that Lessee shall be in default
under the Lease or this Amendment, the Leasehold Mortgagee shall
have the right, but not the obligation, to remedy such default,
or cause the same to be remedied, within twenty (20) days after
the expiration of all applicable grace or cure periods as
provided in the Lease (as the same may be extended as provided in
this Amendment), and Lessor shall accept such performance by or
at the instance of the Leasehold Mortgagee as if the same had
been made by Lessee.

(C)  Notwithstanding anything in this Amendment or
in the Lease to the contrary, no default or event of default
shall be deemed to exist under the Lease or this Amendment if
steps to remedy such default or event of default shall have been
commenced in good faith and such remedy is being prosecuted with
diligence and continuity.

(D)  Notwithstanding anything in this Amendment or
in the Lease to the contrary, if, pursuant to the provisions of
the Lease or as a matter of law, Lessor shall have the right to
terminate the Lease, then Lessor shall take no action to
terminate the Lease without first giving to the Leasehold
Mortgagee written notice of such right and a reasonable time
thereafter (a) to obtain possession of the Property (including
possession by a receiver) and, in the case of a default or event
of default susceptible of being cured by the Leasehold Mortgagee,
to cure such default after obtaining possession or (b) in the
case of a default or event of default not so susceptible of being
cured, to institute, prosecute and complete foreclosure
proceedings or otherwise acquire Lessee's interest under the
Lease; provided, however, the Leasehold Mortgagee shall not be
obligated to continue such possession or to continue such
foreclosure proceedings after such default shall have been cured.
Any default by Lessee not susceptible of being cured by the
Leasehold Mortgagee shall be deemed to have been waived (and all
rights of Lessee under the Lease and this Amendment reinstated)
by Lessor upon completion of such foreclosure proceedings or upon
such acquisition of Lessee's interest in the Lease and this

0047419.02

2



REEL2 2 7 5 PG 0 2 7 7

Amendment, it being understood and agreed that the Leasehold
Mortgagee, or its designee, or any purchaser in foreclosure
proceedings (including, without limitation, a corporation formed
by the Leasehold Mortgagee) may become the legal owner and holder
of Lessee's interest under the Lease and this Amendment through
such foreclosure proceedings or by assignment of Lessee's
interest under the Lease and this Amendment in lieu of
foreclosure.

        (E) (i)   In addition to the delivery of notices
to the Leasehold Mortgagee as described in paragraph 3(D) above,
in the event of the termination of the Lease prior to the
expiration of the term as provided therein, whether by summary
proceedings to dispossess, service of notice to terminate, or
otherwise, Lessor shall serve upon the Leasehold Mortgagee
written notice that the Lease has been terminated, together with
a statement of any and all sums due under the Lease and of all
defaults by Lessee under the Lease, if any, then known to Lessor.
The Leasehold Mortgagee thereupon, shall have the option, which
option must be exercised by the Leasehold Mortgagee delivering
notice to Lessor within forty-five (45) days after the Leasehold
Mortgagee's receipt of notice from Lessor that the Lease has been
terminated, or within forty-five (45) days after the acquisition
of Lessee's interest under the Lease, to cure any such defaults
(and any default by Lessee not susceptible of being cured by the
Leasehold Mortgagee shall be deemed to have been waived).

        (ii)   Upon the cure by the Leasehold
Mortgagee of such defaults that are susceptible of being cured
subsequent to the termination of the Lease in accordance with
subparagraph (i) above, or otherwise upon any acquisition by the
Leasehold Mortgagee of Lessee's interest in the Lease prior to
the termination of the Lease in accordance with this Amendment,
the Leasehold Mortgagee shall have the right at any time
thereafter to terminate the Lease (if not already terminated) and
enter into a new lease (the "New Lease") of the Property with
Lessor.  The New Lease shall be:  effective as of the date of
termination of the Lease, for the remainder what otherwise would
have been the term of the Lease but for such termination, at the
rent and upon all the agreements, terms, covenants and conditions
of the Lease and this Amendment, including any applicable rights
of renewal or purchase (collectively, the "New Lease Terms").

        (F)   If, by reason of Lessee's rejection of its
right to exercise any renewal option under the Lease without the
Leasehold Mortgagee's express written consent or Lessee's failure
to exercise in a timely fashion any renewal option under the
Lease, Lessee shall not be entitled to renew the Lease for any
renewal term, then Lessor shall deliver written notice thereof to
the Leasehold Mortgagee.  The Leasehold Mortgagee shall thereupon
have the option, which option must be exercised by the Leasehold
Mortgagee delivering notice to Lessor within forty-five (45) days
after the Leasehold Mortgagee's receipt of notice from Lessor
that Lessee has failed to exercise a renewal option under the

0047419.02

3



REEL 2 2 7 5 PG 0 2 7 8

Lease, either to exercise any such renewal option on Lessee's behalf, or to enter into a New Lease of the Property upon the New Lease Terms.

(G)  (i)  Any notice or other communication which Lessor shall desire or is required to give to or serve upon the Leasehold Mortgagee shall be in writing and shall be served in the same manner as required by the Lease for any notices to Lessee, except that such notice shall be delivered to the Leasehold Mortgagee at the address for notices set forth in the Leasehold Mortgage, or at such other address as the Leasehold Mortgagee shall designate in writing to Lessor.

(ii)  Any notice or other communication which the Leasehold Mortgagee shall desire or is required to give to or serve upon Lessor shall be deemed to have been duly given or served if sent to Lessor in accordance with the provisions of the Lease at the address set forth therein.

(H)  No union of the interests of Lessor and Lessee shall result in a merger of the Lease into any superior leasehold interest or the fee interest in the Property.

(I)  A Leasehold Mortgagee may enforce its rights under its Leasehold Mortgage and acquire title to Lessee's interest in the Property in any lawful way, and pending foreclosure of such Leasehold Mortgage, take possession of the Property.  If the Leasehold Mortgagee shall acquire title to Lessee's interest in the Lease by any means whatsoever, including, without limitation, by foreclosure, by assignment in lieu of foreclosure, by an assignment from a designee or wholly owned subsidiary corporation of the Leasehold Mortgagee, or under a New Lease pursuant to this Amendment, then the Leasehold Mortgagee may freely assign the Lease and this Amendment and thereupon shall be released from all liability for performance or observance of the covenants and conditions in the Lease and this Amendment from and after the date of such assignment.

(J)  Lessee and Lessor shall not enter into any Amendment providing for the surrender, cancellation, amendment or modification of the Lease or this Amendment, and Lessor shall not accept a surrender of the Lease from Lessee, without the prior written consent of each Leasehold Mortgagee, and no such surrender, cancellation, amendment or modification shall be binding on the Leasehold Mortgagee or Lessee without the prior written consent of the Leasehold Mortgagee.

(K)  Concurrently with the execution and delivery of any New Lease, Lessor shall assign to the tenant named therein all of its right, title and interest in and to moneys (including insurance proceeds and condemnation awards), if any, then held by or payable to Lessor which Lessee would have been entitled to receive but for the termination of the Lease.  Upon the execution of any New Lease, the tenant named therein shall be entitled to

0047419.02

4

REEL 2275 PG 0279

any rent received under any sublease in effect during the period from the date of termination of the Lease to the date of execution of such New Lease. Effective upon the commencement of the term of any New Lease, all subleases shall be assigned and transferred to the tenant under the New Lease.

(L)  Upon the Leasehold Mortgagee's request, the name of such Leasehold Mortgagee may be added to the "Loss Payable Endorsement" of any and all insurance policies required to be carried by the Lessee under the Lease.

(M)  Lessor agrees promptly to execute, acknowledge and deliver any modifications to the Lease reasonably requested by any Leasehold Mortgagee, provided that such modification does not reduce the rent, change the duration of the term, diminish the Lessee's obligations, or in any way materially impair or reduce Lessor's rights under the Lease.

(N)  Lessee may sublet or assign its interest in the Lease and this Amendment to any Leasehold Mortgagee (or its designee) without Lessor's consent, and such Leasehold Mortgagee (and its, or its designee's, successors and assigns) shall have the right subsequently to sublet or assign such interest in the Lease and this Amendment without Lessor's consent. Upon any such assignment, the Leasehold Mortgagee (and its, or its designee's, successors and assigns) shall have no further obligations or liability under the Lease or this Amendment. If at any time the Leasehold Mortgagee, its designee or any purchaser at foreclosure shall acquire Lessee's interest in the Lease by any means whatsoever, then notwithstanding anything contained in the Lease to the contrary, from and after the effective date of such acquisition the Property may be used for any lawful purpose.

(O)  In any circumstances where arbitration is provided for under the Lease, Lessor shall give to each Leasehold Mortgagee notice of any demand for any arbitration at the same time and in the same manner as such notice was given to Lessee, and Lessor shall recognize each Leasehold Mortgagee as a proper party to participate in such arbitration.

3.  Lessor and Lessee acknowledge and agree that for so long as the Lease or any New Lease shall be in effect, Lessee (or the holder of Lessee's interest in the Lease or any New Lease) shall own any and all improvements, buildings and equipment on or about the Property.

4.  Nothing contained in this Amendment shall enlarge or increase the rights or remedies available to Lessor to terminate the Lease prior to the expiration of its term as provided therein. The provisions of this Amendment are intended by the parties to benefit only the holders of any Leasehold Mortgage.

0047419.02

5



REEL2275 PG0280

5.      Lessor hereby consents to Lessee's grant, if any, to each Leasehold Mortgagee of a security interest in the personal property owned by Lessee and located at the Property and a collateral assignment of subleases by Lessee of all or any portion of the Property and the rents, issues and profits therefrom, if any.  Lessor agrees that any interest that Lessor may have in such personal property or subleases, as the case may be, whether granted pursuant to the Lease or by statute, shall be subordinate to the interest of any such Leasehold Mortgagee.

6.      Notwithstanding anything in this Amendment or in the Lease to the contrary, in the event of any casualty to or condemnation of the Property or any portion thereof during such time as any Leasehold Mortgage shall remain unsatisfied, the Leasehold Mortgagee shall be entitled to receive all insurance proceeds and/or condemnation awards (up to the amount of the indebtedness secured by the Leasehold Mortgage) otherwise payable to Lessee or Lessor or both and shall have the right, but not the obligation, to restore the Property.

7.      (A)  Lessor hereby represents and warrants that, as set forth in paragraph 4 of the Lease of the date hereof, (i) the term of the Lease commenced on May 18, 1978, and expires on May 17, 2008; (ii) there are no options to renew the term of the Lease , except as set forth in paragraph 4 of the Lease, (iii) the current fixed rent under the Lease is $78,000.00 per annum, payable in monthly installments, and has been paid in full through November 30, 1995; (iv) no additional rent or charge (including, without limitation, as applicable, taxes, maintenance, operating expenses or otherwise) that has been billed to Lessee by Lessor is overdue; (v) there are no provisions for, and Lessor has no rights with respect to, terminating the Lease or increasing the rent payable thereunder, except as expressly set forth in the Lease; (vi) the amount of the security deposit presently held by Lessor under the Lease is $-0-; (vii) the Lease is in full force and effect and has not been assigned, modified, supplemented or amended in any way whatsoever, except, if at all, as described on **Exhibit B** annexed hereto and made a part hereof; (viii) there are no agreements, whether oral or written, between Lessee and Lessor concerning the Property other than the Lease; (ix) a true, correct and complete description of the documents constituting the Lease is set forth on **Exhibit B**; (x) Lessor has not delivered or received any notices of default under the Lease; (xi) to the best knowledge of Lessor, there is no default by Lessee or Lessor under the Lease, nor has any event or omission occurred which, with the giving of notice or the lapse of time, or both, would constitute a default thereunder; (xii) any improvements required by the terms of the Lease to be made by Lessee have been completed to the satisfaction of Lessor, and Lessee's current use and operation of the Property complies with any use covenants or operating requirements contained in the Lease; (xiii) Lessor is the record and beneficial owner of the Property, and the Lease is not subordinate, and has not been subordinated by Lessor, to any

0047419.02

6



REEL2275 PG 0281

mortgage, lien or other encumbrance; (xiv) neither Lessee nor any affiliate of Lessee has any direct or indirect ownership interest in Lessor or any affiliate of Lessor; and (xv) Lessor has obtained all of the consents or approvals of any party necessary or desirable to effectuate the terms of this Amendment.

(B)  Lessor acknowledges and agrees that any Leasehold Mortgagee may rely upon the truth and accuracy of the certifications contained in the foregoing subparagraph (A), which shall inure to the benefit of each Leasehold Mortgagee and its successors and assigns.

(C)  Upon Lessee's or any Leasehold Mortgagee's written request from time to time, Lessor shall deliver to Lessee, such Leasehold Mortgagee or their respective designees a written instrument, signed and acknowledged by Lessor, which shall set forth the information contained in subparagraph (A) above on a current basis and any other information reasonably requested by Lessee or any Leasehold Mortgagee.

8.  Lessor and Lessee agree promptly to execute, acknowledge, deliver and cause this Amendment and a short form memorandum of the Lease to be recorded in the appropriate public records.

9.  Lessor's recourse against any Leasehold Mortgagee shall be expressly limited to the Leasehold Mortgagee's interest in the Lease.

10.  Lessor represents that Lessor has the necessary power and authority to execute this Amendment and has obtained all the consents or approvals of any party necessary to effectuate the terms of this Amendment.

11.  This Amendment, the covenants, terms and conditions hereof and the rights and obligations created hereby shall run with the land and be binding upon and inure to the benefit of Lessor, Lessee, any Leasehold Mortgagee and their respective successors and assigns.

12.  This Amendment may be executed in any number of separate counterparts, each of which, when so executed and delivered, shall be deemed an original, but all of which, collectively and separately, shall constitute one and the same agreement.  All signatures need not be on the same counterpart.

13.  This Amendment shall be deemed an amendment to the Lease.  In the event of any conflict between the terms and provisions of this Amendment and the terms and provisions of the Lease, the terms and provisions of this Amendment shall govern. Except as expressly modified, amended and supplemented by this Amendment, all of the terms, covenants and conditions of the Lease shall remain in full force and effect.

0047419.02

7

REEL 2275 PG 0282

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be executed as of the day and year first above written.

LESSOR:

THE ESTATE OF PATRICK CONSALVAS

Witness:

By: _____

Name: _____

By: _____
Catherine L. Consalvas, The
Executor of the last will
and testament of Patrick
Consalvas

LESSEE:

GOLD STREET PROPERTIES, L.P.,
a New York limited partnership

Witness:

By: _____

Name: _____

By: 33 CGP Inc., a New York
corporation, its general
partner

By: _____
Name: Harold Thurman
Title: President

0047419.02

8

REEL 2 2 7 5 PG 0 2 8 3 

[Gold Street]

### EXHIBIT "A"

**PARCEL I**

All that lot of land in the Borough of Manhattan, City, County and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the southerly side of Fulton Street and the westerly side of Gold Street;

RUNNING THENCE southerly along the westerly side of Gold Street, ninety-four feet three and one-half inches to a point opposite the center line of a party wall standing one-half on the premises hereby described and one-half on the premises adjoining on the south;

THENCE westerly and through the center of said wall, ninety-nine feet eleven and one-half inches to the end of said wall;

THENCE northerly along the westerly face of westerly wall of the building on the premises hereby described, thirty-eight feet three and one-half inches;

THENCE still northerly along the westerly face of said wall thirty-nine feet to the southerly side of Fulton Street; and

THENCE still easterly along the southerly side of Fulton Street one hundred and two feet to the corner aforesaid at the point or place of BEGINNING.

0047419.02

10



REEL 2275 PG 0284

## EXHIBIT "A" CONTINUED

**PARCEL II**

ALL that certain lot, piece of parcel of land, situate, lying and being in the Borough of Manhattan, County of New York, and City and State of New York, on the northwesterly side of Gold Street between John and Fulton Streets, formerly known as The First Baptist Church property, and occupied by said church corporation, and bounded and described as follows:

BEGINNING in front at a point on the northwesterly side of Gold Street, distant 94 feet southwesterly from the westerly corner of Fulton Street;

RUNNING THENCE southwesterly, along the said northwesterly line of Gold Street, 125 feet 7 inches more or less, to land now or late belonging to Robert Hoe, and to a point distant about 151 feet 8 inches, from the northerly corner of John and Gold Streets;

THENCE northwesterly, in the rear, 124 feet 10 inches more or less to the northerly corner of the premises hereby described, and

THENCE southwesterly, along land now or late of William Hager, 99 feet 11 inches more or less to the said northwestarly side of Gold Street, to the place of BEGINNING.

Be the same dimensions more or less.

0047419.02

11

REEL2 2 7 5 PG 0 2 8 5

## EXHIBIT B

### Description of the Lease

Lease dated May 18, 1978 between Patrick Consalvas, Ronald B. Ruder Associates, Inc., collectively Lessor, and Gold Street Properties, *Inc.*, Lessee, as amended by Amendment of Lease dated April 15, 1980 between Patrick Consalvas and Gold Street Properties, *Inc.*, *unrecorded*.

0047419.02

12

REEL 2 2 7 5 PG 0 2 8 6

STATE OF NEW YORK     )
                      : ss:
COUNTY OF NEW YORK    )

On this 15th day of December, 1995, before me personally came Harold Thurman, to me known, who being by me duly sworn, did depose             that         he         resides          at ~~N Y SUTTON PLACE MANHASSET, NY~~      ; that he is the President of 33 CGP Inc., a New York corporation, the corporation named in the foregoing instrument as the General Partner of Gold Street Properties, L.P., a New York limited partnership; that he knows the seal of said corporation; that he signed his name thereto by order of the Board of Directors of said corporation; and that he, as such President of the General Partner, being authorized to do so, executed the foregoing instrument in the name of such Limited Partnership by himself as President of the General Partner, on behalf of said Limited Partnership.

_Reese M. Heitner_
Notary Public

REESE M. HEITNER
Notary Public, State of New York
No. 01HE5031478
Qualified in New York County
Commission Expires Aug. 1, 1996

STATE OF NEW YORK     )
                      : ss:
COUNTY OF NEW YORK    )

On this 15th day of December, 1995, before me personally came Catherine L. Consalvas, the Executor of the last will and testament of Patrick Consalvas, to me known and known to me to be the individual described in and who executed the foregoing instrument, and she duly acknowledged to me that she executed the same.

Notary Public

HUGH C. HUMPHREYS, JR.
Notary Public, State of New York
No. 01HU5034543
Qualified in Kings County
Certificate filed in New York County
Commission Expires Oct. 17, 1996

0047419.02

9

REEL 2 2 7 5 PG 0 2 8 7



*B - 82*

RECORDED IN NEW YORK COUNTY

55 DEC 26 AH 9: 43

CITY REGISTER

THIS INSTRUMENT AFFECTS REAL AND PERSONAL PROPERTY SITUATED IN THE
STATE OF NEW YORK, COUNTY OF NEW YORK, SECTION ___, BLOCK 77, LOT 24,
KNOWN BY THE STREET ADDRESS OF 33-43 GOLD STREET.

Record and Return to:

Willkie Farr & Gallagher
One Citicorp Center
153 East 53rd Street
New York, New York 10022
Attention: Monty Davis, Esq. (TMS)

0047974.02