Exhibit H

(33 BRE Inc.)

## SHAREHOLDERS' AGREEMENT

THIS SHAREHOLDERS' AGREEMENT, dated as of this 15th day of February, 2001, by and among:  (i) 33 BRE Inc. (the "Corporation"), a New York corporation with principal offices at 2700 Grand Avenue, Bellmore, New York 11710, (ii) Harold Thurman ("Thurman"), residing at ~~29 Sutton Place~~, Manhasset, New York 11030, individually, who is a 50% shareholder of the Corporation, and as initial trustee of the trust for the benefit of Catherine Consalvas ("Beneficiary") under Declaration of Trust dated September 20, 1989 (the "Trust"), Beneficiary being a 50% shareholder of the Corporation (Thurman and Beneficiary, or their respective Transferees (as hereinafter defined), are hereinafter sometimes referred to individually as a "Shareholder" and together as the "Shareholders") and (iii) Patrick J. Consalvas, residing at ~~88 Pequen Road, Cortlandt~~, New York 11725 ("Consalvas") and Nicholas J. Boncardo ("Boncardo"), residing at ~~1131 Astor Avenue~~, Bronx, New York 10469, as successor trustees of the Trust (Consalvas and Boncardo are sometimes hereinafter referred to individually a "Successor Trustee" and together as the "Successor Trustees").

WHEREAS, the parties hereto desire to provide for continuity in the management of the Corporation, which is the fee owner and ground lessor of property located at 33 Gold Street, New York, New York (the "Premises"), the improvements on which are owned by a limited partnership of which Thurman and the Successor Trustees are sole Shareholders of the General Partner, and to make certain agreements with respect to the voting of the common shares of the Corporation pursuant to Section 620 of the New York Business Corporation Law ("BCL");

$N$-16

NOW, THEREFORE, in consideration of the mutual covenants and conditions contained herein, the parties hereto agree as follows:

1.  Term.

(a)  Concurrently herewith, Thurman, individually and as initial trustee of the Trust, Beneficiary and Successor Trustees are entering into an agreement (the "Successor Trustee Agreement") pursuant to paragraph 10 of an Award in American Arbitration Association Case No. 13-115-590-97, received August 29, 2000 ("Award"). This Agreement shall only become effective subject to and in accordance with the terms and conditions set forth in Section 1 of the Successor Trustee Agreement, which are incorporated by reference as if set forth at length herein.

(b)  This Agreement shall terminate upon the earlier to occur of (i) the sale of the Premises (as hereinafter defined) and dissolution of the Corporation, or (ii) the twentieth (20th) anniversary of the date hereof.

2.  Board of Directors.

(a)  The Board of Directors of the Corporation (the "Board") shall be comprised of four directors and, subject to the provisions of Section 2 (b) below, a fifth director if required by the certificate of incorporation of the Corporation (the "Independent Director"). The number of directors on the Board may only be changed by the unanimous vote of Shareholders of the Corporation. In the election of members of the Board, each Shareholder agrees to vote all of its common shares in the Corporation ("Shares") entitled to vote, which may now or hereafter be owned or held of record by such Shareholder or as to which such Shareholder now or hereafter has voting power, for the following directors: two to be designated by Thurman and two to be designated by

2

Consalvas. Thurman hereby designates himself and Brad Thurman as initial directors, and Consalvas hereby designates himself and Boncardo as initial directors. The foregoing directors shall serve until their successors or designees are elected, appointed or qualified in accordance with Sub-sections (d) and (e) of this Section 2. The appointments provided for in this Section 2 (a) shall be effective as of the effective date of this Agreement.

(b)    The Independent Director will be designated solely for the reason that, pursuant to the certificate of incorporation and by-laws of the Corporation and the agreement (the "Bank Agreement") with the Corporation's institutional lender (the "Bank"), the Corporation is required to have an Independent Director. If the Bank Agreement or a subsequent mortgage lender does not now or hereafter require an Independent Director or the Bank Agreement is terminated for any reason, then the Shareholders agree to amend the certificate of incorporation and by-laws so as to eliminate any requirement of an Independent Director. The parties hereto hereby confirm that William Walzer, Esq. ("Walzer") will be designated, if necessary, and shall remain as the Independent Director, subject to the provisions of this Section 2(b) and Section 2(f) below.

(c)    If no Independent Director is needed, as provided in Section 2(b), this shall not affect the agreements herein with respect to the remaining members of the Board and any reference herein to an Independent Director shall be without any force and effect.

(d)    Thurman and, in the event Thurman dies or an Inability (as said term is defined in Section 2 (i) below) exists with respect to Thurman, Brad Thurman

3

521511.4

shall have the right, at any time or from time to time, to: (i) remove and replace any director designated by Thurman or Brad Thurman, with or without cause, and/or (ii) designate a replacement director in the event a director designated by Thurman or Brad Thurman resigns, is removed, dies or otherwise ceases to act as a director.

(e)     Consalvas and, in the event Consalvas dies or an Inability exists with respect to Consalvas, Beneficiary shall have the right, at any time or from time to time, to (i) remove and replace any director designated by Consalvas or Beneficiary, with or without cause, and/or (ii) designate a replacement director in the event a director designated by Consalvas or Beneficiary resigns, is removed, dies or otherwise ceases to act as a director, provided, however, that neither Beneficiary nor Catherine L. Consalvas shall be designated as a director.

(f)     A majority of the entire Board shall have the right, at any time or from time to time, subject to the certificate of incorporation and by-laws of the Corporation and any applicable provisions of the Bank Agreement, to (i) remove and replace the Independent Director, with or without cause, and/or (ii) designate a replacement Independent Director in the event the Independent Director resigns, dies, or otherwise ceases to act as the Independent Director.

(g)     The Shareholders hereto agree to cause the Board to adopt a resolution providing for annual regular meetings of the Board, to be held at 10:00 a.m. on the first Monday of August of each calendar year (or, if such day is not a day on which banks are open for business in New York, on the next day on which banks are open for business in New York), at the offices of the Corporation at 2700 Grand Avenue, Bellmore, New York or such other place in the New York Metropolitan area as the

521511.4

President of the Corporation may designate.   Such resolution shall provide for the following materials to be sent by mail to each of the directors at his or her home address by the Secretary of the Corporation at least ten days prior to the meeting:

      (i)    notice of the meeting;

      (ii)    an agenda for the meeting;

      (iii)    financial statements of the Corporation and the Limited Partnership for the preceding calendar year, which shall be in the form normally prepared for the entity in question (*i.e.*, either compilation, review or audit), and shall include the following:  balance sheet as of the preceding December 31, and statements of income and changes in shareholders' equity and statements of cash flow;

      (iv)    internally generated cash receipt and disbursement statements for the first six months of the calendar year in which such meeting is held.

      The parties agree that, in addition to the regularly scheduled annual meetings of the Board, a meeting of the Board may be called by any director (other than the Independent Director) upon no less than fourteen (14) days' prior written notice to each of the directors except in the case of an emergency (in the reasonable judgment of the director calling the meeting), in which case a meeting of the Board may be called upon such shorter notice as the director calling such meeting shall determine in his or her reasonable judgment. The parties hereto agree to cause the President of the Corporation to report to the Board at all meetings of the Board on all material developments in connection with the management of the Corporation and the Premises and to answer questions from the Board.

S215·

(h)     The parties hereto agree that each shall be afforded reasonable access, during normal business hours and upon reasonable notice as often as such party reasonably desires, to the books and records of the Corporation and the Premises, and that each shall be furnished with such information relating to the business and affairs of the Corporation and the Premises as such party reasonably requests.

(i)     For the purposes of this Agreement, an "Inability" shall be deemed to exist if a condition or set of circumstances prevents Thurman or Consalvas, as the case may be, for a period of ninety (90) days out of any three hundred sixty (360) day period, from performing his duties as a director of the Corporation, which, in the case of Thurman, requires, among other things, supervising the management of the Corporation and participating in those decisions which may have a material impact on the Corporation, but notwithstanding anything in Section 4 to the contrary, does not require involvement in the day-to-day management of the Corporation or the Premises. Notwithstanding anything contained in this Agreement to the contrary, an Inability shall not be deemed to exist with respect to Thurman nor shall Thurman be in breach of this Agreement solely because of the occurrence of any or all of the following:  (i) Thurman's relocation from the State of New York to any other state; (ii) Thurman's retirement as an officer of the Corporation, provided Thurman continues to perform his duties as a director of the Corporation; or (iii) Thurman's delegation of day-to-day management responsibilities to another officer or director of the Corporation.

3.     Officers.  The Shareholders shall cause the Directors to duly elect the following persons as officers of the Corporation to serve, in accordance with the by-laws of the Corporation, in the offices opposite their respective names:

6

521511.4

| President and Treasurer: | Harold Thurman |
| Vice-President: | Brad Thurman |
| Vice President: | Scott Thurman |
| Vice President: | Patrick J. Consalvas |
| Secretary: | Brad Thurman |
| Assistant Secretary: | Michelle Fusco |

Said individuals shall serve until their successors are elected, appointed or qualified. In the event any of the foregoing individuals resigns, dies or otherwise ceases to serve as an officer, with or without cause, the Shareholders shall agree on his or her replacement and cause the Board to elect such replacement.

4.     Management of the Corporation.   The Shareholders acknowledge and agree that Thurman, in his capacity as President and Chief Executive Officer of the Corporation, may exercise, in his sole discretion, full power and authority to manage the day-to-day affairs of the Corporation in the ordinary conduct of its business, subject to and in accordance with the certificate of incorporation and by-laws of the Corporation and applicable New York law.

5.     Matters Requiring Special Vote of the Board.

(a)     In addition to any items provided for in the certificate of incorporation and/or the by-laws of the Corporation, the following acts shall require the vote of no less than the majority of the entire Board (excluding the Independent Director, if any): (i) any payments (including loans and/or salary) made to any individual in his capacity as a director or officer of the Corporation, or (ii) any new contract or lease or amendment to an existing contract or lease between the Corporation and a person or entity affiliated with Thurman, Consalvas or the Corporation, provided that reasonable extensions of existing contracts or leases shall not be deemed new or amended contracts or leases or (iii) dissolution of the Corporation, or (iv) any sale, financing, refinancing or

7

encumbrance of the Premises or any portion thereof or interest therein (other than a Sale consented to in accordance with Section 6 below), or (v) the determination of the amount of any reserves in excess of 6% of gross monthly ordinary income to be established or maintained the Corporation, or (vi) to the extent not made at least quarterly, the timing of distributions by the Corporation, or (vii) the issuance of any Shares by the Corporation, or (viii) any modification of the certificate of incorporation, by-laws or other governance documents of the Corporation. For purposes of this Agreement, the "entire Board" shall mean the total number of directors the Corporation would have (exclusive of the Independent Director, if any), if there were no vacancies.

(b)   In connection with any proposed financing or refinancing of the Premises, the President shall be entitled to request that the Board pre-approve a range of material financing terms ("material terms") within which he shall be authorized to proceed with negotiating and finalizing such financing or refinancing.

6.   Consent to Sale.

(a)   Subject to the fulfillment of all of the terms and conditions set forth in Section 6(b), the Shareholders hereby agree that they will consent to any contract of sale ("Sale") for the Premises which is executed on or before January 31, 2002, provided that the Sale is part of a sale of not less than eleven (11) of the following properties: (i) 298 Mulberry Street, (ii) 210 East 22nd Street, (iii) 7-9 East 32nd Street, (iv) 220 East 22nd Street, (v) 304 Mulberry Street, (vi) 1438 Third Avenue, (vii) 1430 Third Avenue, (viii) 33 Gold Street, (ix) 254 Park Avenue South, (x) 321 East 22nd Street, (xi) 184 Thompson Street and (xii) 123 West 44th Street (individually a "Property"

8

and collectively the "Properties"). Nothing contained herein shall constitute an obligation of Thurman and/or the Corporation to sell any or all of the Properties at any time.

(b)    The agreement of the Shareholders to grant the consent that is provided for in Section 6(a) is subject to all of the following terms and conditions: (i) the aggregate gross purchase price for the Properties must equal or exceed Two Hundred Fifty-three Million ($253,000,000) Dollars ($253,000,000 being hereinafter referred to as the "Gross Purchase Price") (not including any payments under clause (ii) below); if fewer than all of the Properties are sold the aggregate gross purchase price must equal or exceed the "Adjusted Gross Purchase Price" (as defined in subsection (iv) below); (ii) Thurman and/or Thurcon Properties Ltd. and/or their affiliates shall receive payment in connection with such Sale (other than such person's or entity's share, if any, of the purchase price as a shareholder of the Corporation) of not more than Three Million ($3,000,000) Dollars, exclusive of any payments for services to be rendered following the closing of the Sale as managing agent under any management agreement with the buyer or its affiliates; (iii) any management, leasing, or third-party services agreement between Thurman, Thurcon Properties, Ltd. or any of their affiliates and the buyer or its affiliates with respect to the Properties shall not change the formula for computing the fees of the managing agent which was in effect under the management agreement for such Property immediately prior to the Sale; (iv) in the event only eleven (11) Properties are included in the Sale, the "Adjusted Gross Purchase Price" shall be the Gross Purchase Price less the price at which the particular Property not included in the Sale was offered for sale or, if not so offered, the fair market value of such property as determined by an independent appraiser acceptable to Shareholders; and (v) all other material terms and conditions of

9

the Sale are acceptable to Shareholders and their counsel in their good faith reasonable judgment. Any objections to material terms shall be made in a timely manner.

7.  Conformity.

(a)  Promptly following the effectiveness of this Agreement, the Shareholders agree to amend the certificate of incorporation and by-laws of the Corporation to conform to and reflect the provisions of this Agreement including, without limitation, the provisions of Section 2 hereof with respect to the size and composition of the Board of Directors.

(b)  In the event any provision of the certificate of incorporation or by-laws or other governance document of the Corporation contradicts, or prevents the implementation of or impairs enforceability of any term or provision of this Agreement or of the Successor Trustee Agreement, the Shareholders agree to cause such documents to be amended to conform to and reflect the provisions of this Agreement.  Without limiting the foregoing, promptly following the effective date hereof, the parties agree to modify the by-laws to, among other things, delete the last sentence of Paragraph 3 of Article III thereof.

(c)  In the event the amendments provided for in Sections 7(a) and 7(b) above are prohibited by the Bank Agreement or would require the Bank's prior approval, Thurman, as President of the Corporation agrees to use good faith reasonable efforts to obtain the Bank's reasonable approval of such amendments and the parties agree to cooperate in such efforts.  The parties hereby waive any right to assert the unenforceability of any provision hereof by reason of the fact that such provision has not

521511.4

been incorporated into the certificate of incorporation or the by-laws, as the case may be, or by reason of the Bank's refusal to give its approval to such provisions.

(d)   No party hereto shall take any action or omit to take any action in any capacity or status, including, without limitation, as a Shareholder of the Corporation, that is in contravention of this Agreement.

8.   Binding Effect.

(a)   This Agreement shall be binding upon and inure to the benefit of transferees (by any means whatsoever) of shares of the Corporation and the parties' respective heirs, executors, administrators, transferees, successors and assigns (collectively "Transferees").

(b)   The certificates representing Shares issued or to be issued to the Shareholders shall bear thereon a legend reading substantially as follows:

> "The common shares represented by this certificate are subject to the terms and conditions of a Shareholders' Agreement dated as of February ___, 2001 by and among the Corporation, and its shareholders, Harold Thurman individually and as initial trustee of the trust created under Declaration of Trust dated September 20, 1989 ("Trust"), and Patrick J. Consalvas and Nicholas J. Boncardo, as successor trustees under the Trust, as well as Catherine Consalvas. A copy of the Shareholders' Agreement is on file at the principal office of the Corporation. The sale, transfer, distribution or other disposition of the shares represented by this certificate or any alienation or encumbrance by any means shall be subject to the terms of the Shareholders' Agreement, which shall bind any holder of the shares with the same force and effect as if such holder was a signatory hereto."

9.   Representations and Warranties.   Each party hereto represents and warrants to the other parties that it has full power and authority to enter into this Agreement and that it constitutes a valid and binding obligation of such party enforceable against such party in accordance with its terms.

11

10.   <u>Arbitration</u>.  Any controversy or claim arising out of or relating to this Agreement, or the breach or termination hereof, shall be finally settled by arbitration administered by the American Arbitration Association, in the City and State of New York, under its Commercial Arbitration Rules, by a single arbitrator.  Judgment upon the award rendered may be entered in any court of competent jurisdiction.

11.   <u>Entire Agreement</u>.  This Agreement contains the entire agreement of the parties concerning the subject matter hereof.  This Agreement may not be changed, modified, amended, discharged, abandoned or terminated orally, but only by an agreement in writing signed by the parties hereto.

12.   <u>Severability of Clauses</u>.  If any provision of this Agreement is held or determined by any court of competent jurisdiction or a duly appointed arbitrator to be invalid, illegal or unenforceable, the remainder of this Agreement and the application of such provision to other persons or circumstances shall not be affected thereby, unless such invalidity, illegality or unenforceability materially diminishes the rights and obligations, taken as a whole, of any party hereto or materially violates the intent of the parties hereto. It is the intention and agreement of the parties that any provision which is held or determined to be unenforceable as written, nonetheless shall be in full force and binding as though such provision had been written in such a manner as to be enforceable to the fullest extent permitted by law.

13.   <u>Notices</u>.   Any and all notices, requests, demands or other communications hereunder shall be in writing and shall be deemed given if sent by certified or registered mail, postage prepaid, or by recognized overnight delivery service, to each of the parties at the addresses set forth above or to such addresses as may from

521511.4

time to time be designated by any of them in writing by notice similarly given to all parties in accordance with this Section. Copies of all notices shall simultaneously be given in one or both of the above manners to the following attorneys. Copies of notices to the Corporation or to Thurman shall be delivered to: Cox Padmore Skolnik & Shakarchy LLP, 630 Third Ave., New York, New York 10017, Attn: Steven D. Skolnik, Esq.; copies of notices to Beneficiary, Trust or to Successor Trustees shall be delivered to Dewey Ballantine LLP, 1301 Avenue of the Americas, New York, New York 10019, Attn: Maureen R. Healy, Esq. Notices under this Agreement shall be deemed delivered one (1) business day after sent by overnight delivery service or five (5) days after the date postmarked by the United States Post Office, as the case may be.

14. No Waiver. Waiver by any party of any breach of this Agreement or failure to exercise any right hereunder shall not be deemed to be a waiver of any other breach or right. The failure of any party to take action by reason of any such breach or to exercise any such right shall not deprive such party of the right to take any action at any time thereafter.

15. Construction of Pronouns. As used in this Agreement, the neuter or masculine pronouns shall refer to male or female persons or corporate entities where such construction is required to give meaning to a provision contained herein.

16. Headings. The headings, titles and subtitles in this Agreement have been inserted only for convenient reference and shall be ignored in its construction.

17. Further Instruments and Actions. Each of the parties hereto shall execute and deliver all such further agreements or i..struments and take all such further

521511.4

actions as may be necessary or desirable to implement the intent and purposes of this Agreement and the transactions contemplated hereby.

18.    <u>Governing Law</u>.   This Agreement shall be governed and construed in accordance with the laws of the State of New York for contracts made and to be performed wholly in such state.

19.    <u>Counterparts</u>.   This Agreement may be executed in counterparts, each of which shall be deemed an original.

20.    <u>Counsel</u>.

(a)    Each of the parties hereto hereby acknowledge that they have each been represented by independent legal counsel in connection with the negotiation and preparation of this Agreement and with the advice and guidance of such legal counsel each of the parties has executed and delivered this Agreement.

(b)    In connection with interpretation or construction of this Agreement there will be no presumption against any party on the ground that such party and/or its legal counsel was responsible for preparing this Agreement or any part of it.

21.    <u>Successor Trustee Agreement</u>.    As contemplated under the Successor Trustee Agreement, Successor Trustees and Beneficiary hereby ratify, adopt and approve this Agreement, effective upon the commencement of the term of this Agreement.

14

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement on the _15ᵗʰ_ day of February, 2001.

33 BRE INC.

By_____
    Harold Thurman, President


_____
HAROLD THURMAN, individually


_____
HAROLD THURMAN, as Trustee under
Declaration of Trust 9/20/89


_____
PATRICK J. CONSALVAS, as Successor
Trustee under Declaration of Trust 9/20/89


_____
NICHOLAS J. BONCARDO, as Successor
Trustee under Declaration of Trust 9/20/89


RATIFIED AND APPROVED PURSUANT
TO SECTION 21 OF THE ABOVE
AGREEMENT

_____
CATHERINE CONSALVAS

15

521511.4

STATE OF NEW YORK          )
                           ) ss.:
COUNTY OF _NEW YORK_       )


       On the _14th_ day of February in the year 2001 before me, the undersigned, a notary public in and for said state, personally appeared Harold Thurman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

           _____

        Notary Public

                     2003

S21511.4

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF _New York_     )


       On the __14th__ day of February in the year 2001 before me, the undersigned, a notary public in and for said state, personally appeared Harold Thurman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity as President of 33 BRE Inc., and that by his signature on the instrument, the individual, or the entity upon behalf of which the individual acted, 33 BRE Inc., executed the instrument.

                    Notary Public

                                    2003

STATE OF NEW YORK )
) ss.:
COUNTY OF _New York_ )

On the _14th_ day of February in the year 2001 before me, the undersigned, a notary public in and for said state, personally appeared Harold Thurman, as Trustee under Declaration of Trust dated September 20, 1989, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

...2003

§21511.4

STATE OF NEW YORK     )
                              ) ss.:
COUNTY OF _SuFFOLK_ )

           On the _15_ day of February in the year 2001 before me, the undersigned, a notary public in and for said state, personally appeared Patrick J. Consalvas as Successor Trustee under Declaration of Trust dated September 20, 1989, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

MAUREEN R HEALY
Notary Public, State of New York
No. 02HE6020124
Qualified in Nassau County
Commission Expires November 8, 2001

521511.4

STATE OF NEW YORK        )
                         )  ss.:
COUNTY OF _SUFFOLK_       )

        On the _15th_ day of February in the year 2001 before me, the undersigned, a notary public in and for said state, personally appeared Nicholas J. Boncardo as Successor Trustee under Declaration of Trust dated September 20, 1989, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

MAUREEN R. HEALY
Notary Public, State of New York
No. 02HE5020144
Qualified in Nassau County
Commission Expires November 8, 2001

STATE OF NEW YORK          )
                           ) ss.:
COUNTY OF _SUFFOLK_  )

   On the _15th_ day of February in the year 2001 before me, the undersigned, a notary public in and for said state, personally appeared Catherine Consalvas, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_Maureen R. Healy_
Notary Public

MAUREEN R HEALY
Notary Public, State of New York
NO 02HE5020124
Qualified in Nassau County
Commission Expires November 8, 2001

521511.4