EXHIBIT "P"

## STANDARD FORM OF STORE LEASE
The Real Estate Board of New York, Inc.

5/5/80 B

**Agreement of Lease,** made as of this 13th     day of November   12 2013 between

Gold Street Properties, LP

party of the first part, hereinafter referred to as OWNER, and

Affina Nail Salon, LLC

        party of the second part, hereinafter referred to as TENANT,

**Witnesseth:** Owner hereby leases to Tenant and Tenant hereby hires from Owner

Space located on mezz /corner of 88 Fulton aka 33 Gold Street as further described in Exhibit "A"

in the building known as 88 Fulton St aka 33 Gold St
in the Borough of Manhattan       , City of New York, for the term of ten (10) years
(or until such term shall sooner cease and expire as hereinafter provided) to commence on the
See Article   day of       nineteen hundred and
#42       day of       nineteen hundred and       , and to end on the
both dates inclusive, at an annual rental rate of

See Article #41

which Tenant agrees to pay in lawful money of the United States which shall be legal tender in payment of all debts and dues, public and private, at the time of payment, in equal monthly installments in advance on the first day of each month during said term, at the office of Owner or such other place as Owner may designate, without any set off or deduction whatsoever, except that Tenant shall pay the first     monthly installment(s) on the execution hereof (unless this lease be a renewal).

The parties hereto, for themselves, their heirs, distributees, executors, administrators, legal representatives, successors and assigns, hereby convenant as follows:

Rent      1.   Tenant shall pay the rent as above and as hereinafter provided.
Occupancy   2.   Tenant shall use and occupy demised premises for

        full service nail salon and related services

and for no other purpose. Tenant shall at all times conduct its business in a high grade and reputable manner, shall not violate Article 37 hereof, and shall keep show windows and signs in a neat and clean condition.

**Alterations:** 3. Tenant shall make no changes in or to the demised premises of any nature without Owner's prior written consent. Subject to the prior written consent of Owner, and to the provisions of this article, Tenant at Tenant's expense, may make alterations, installations, additions or improvements which are non-structural and which do not affect utility services or plumbing and electrical lines, in or to the interior of the demised premises by using contractors or mechanics first approved by Owner. Tenant shall, before making any alterations, additions, installations or improvements, at its expense, obtain all permits, approvals and certificates required by any governmental or quasi-governmental bodies and (upon completion) certificates of final approval thereof and shall deliver promptly duplicates of all such permits, approvals and certificates to Owner and Tenant agrees to carry and will cause Tenant's contractors and sub-contractors to carry such workman's compensation, general liability, personal and property damage insurance as Owner may require. If any mechanic's lien is filed against the demised premises, or the building of which the same forms a part, for work claimed to have done for, or materials furnished to, Tenant, whether or not done pursuant to this article, the same shall be discharged by Tenant within ten days thereafter, at Tenant's expense, by filing the bond required by law. All fixtures and all paneling, partitions, railings and like installations, installed in the premises at any time, either by Tenant or by Owner in Tenant's behalf, shall, upon installation, become the property of Owner and shall remain upon and be surrendered with the demised premises unless Owner, by notice to Tenant no later than twenty days prior to the date fixed as the termination of this lease, elects to relinquish Owner's rights thereto and to have them removed by Tenant, in which event, the same shall be removed from the premises by Tenant prior to the expiration of the lease, at Tenant's expense. Nothing in this article shall be construed to give Owner title to or to prevent Tenant's removal of trade fixtures, moveable office furniture and equipment, but upon removal of any such from the premises or upon removal of other installations as may be required by Owner, Tenant shall immediately and at its expense, repair and restore the premises to the condition existing prior to installation and repair any damage to the demised premises or the building due to such removal. All property permitted or required to be removed by Tenant at the end of the term remaining in the premises after Tenant's removal shall be deemed abandoned and may, at the election of Owner, either be retained as Owner's property or may be removed from the premises by Owner at Tenant's expense.

**Repairs:** 4. Owner shall maintain and repair the public portions of the building, both exterior and interior, except that if Owner allows Tenant to erect on the outside of the building a sign or signs, or a hoist, lift or sidewalk elevator for the exclusive use of Tenant, Tenant shall maintain such exterior installations in good appearance and shall cause the same to be operated in a good and workmanlike manner and shall make all repairs thereto necessary to keep same in good order and condition, at Tenant's own cost and expense, and shall cause the same to be covered by the insurance provided for hereafter in Article 8. Tenant shall, throughout the term of this lease, take good care of the demised premises and the fixtures and appurtenances therein, and the sidewalks adjacent thereto, and at its sole cost and expense, make all non-structural repairs thereto as and when needed to preserve them in good working order and condition, reasonable wear and tear, obsolescence and damage from the elements, fire or other casualty, excepted. If the demised premises be or become infested with vermin, Tenant shall at Tenant's expense, cause the same to be exterminated from time to time to the satisfaction of Owner. Except as specifically provided in Article 9 or elsewhere in this lease, there shall be no allowance to the Tenant for the diminution of rental value and no liability on the part of Owner by reason of inconvenience, annoyance or injury to business arising from Owner, Tenant or others making or failing to make any repairs, alterations, additions or improvements in or to any portion of the building including the erection or operation of any crane, derrick or sidewalk shed, or in or to the demised premises or the fixtures, appurtenances or equipment thereof. The provisions of this article 4 with respect to the making of repairs shall not apply in the case of fire or other casualty which are dealt with in article 9 hereof.

**Window Cleaning:** 5. Tenant will not clean nor require, permit, suffer or allow any window in the demised premises to be cleaned from the outside in violation of Section 202 of the New York State Labor Law or any other applicable law or of the Rules of the Board of Standards and Appeals, or of any other Board or body having or asserting jurisdiction.

**Requirements of Law, Fire Insurance:** 6. Prior to the commencement of the lease term, if Tenant is then in possession, and at all times thereafter, Tenant at Tenant's sole cost and expense, shall promptly comply with all present and future laws, orders and



regulations of all state, federal, municipal and local governments, departments, commissions and boards and any direction of any public officer pursuant to law, and all orders, rules and regulations of the New York Board of Fire Underwriters or the Insurance Services Office, or any similar body which shall impose any violation, order or duty upon Owner or Tenant with respect to the demised premises, and with respect to the portion of the sidewalk adjacent to the premises, if the premises are on the street level, whether or not arising out of Tenant's use or manner of use thereof, or with respect to the building if arising out of Tenant's use or manner of use of the premises or the building (including the use permitted under the lease). Except as provided in Article 29 hereof, nothing herein shall require Tenant to make structural repairs or alterations unless Tenant has by its manner of use of the demised premises or method of operation therein, violated any laws, ordinances, orders, rules, regulations or requirements with respect thereto. Tenant shall not do or permit any act or thing to be done in or to the demised premises which is contrary to law, or which will invalidate or be in conflict with public liability, fire or other policies of insurance at any time carried by or for the benefit of Owner. Tenant shall pay all costs, expenses, fines, penalties or damages, which may be imposed upon Owner by reason of Tenant's failure to comply with the provisions of this article. If the fire insurance rate shall, at the beginning of the lease or at any time thereafter, be higher than it otherwise would be, then Tenant shall reimburse Owner, as additional rent hereunder, for that portion of all fire insurance premiums thereafter paid by Owner which shall have been charged because of such failure by Tenant, to comply with the terms of this article. In any action or proceeding wherein Owner and Tenant are parties, a schedule or "make-up" of rate for the building or demised premises issued by a body making fire insurance rates applicable to said premises shall be conclusive evidence of the facts therein stated and of the several items and charges in the fire insurance rate then applicable to said premises.

Sub-ordination:  7.  This lease is subject and subordinate to all ground or underlying leases and to all mortgages which may now or hereafter affect such leases or the real property of which demised premises are a part and to all renewals, modifications, consolidations, replacements and extensions of any such underlying leases and mortgages. This clause shall be selfoperative and no further instrument of subordination shall be required by any ground or underlying lessor or by any mortgagee, affecting any lease or the real property of which the demised premises are a part. In confirmation of such subordination, Tenant shall execute promptly any certificate that Owner may request.

Tenant's  8.  Owner or its agents shall not be liable for any damage
Liability  to property of Tenant or of others entrusted to employees
Insurance  of the building, nor for loss of or damage to any property
Property  of Tenant by theft or otherwise, nor for any injury or
Loss,  damage to persons or property resulting from any cause
Damage,  of whatsoever nature, unless caused by or due to the
Indemnity:  negligence of Owner, its agents, servants or employees.
Owner or its agents will not be liable for any such damage caused by other tenants or persons in, upon or about said building or caused by operations in construction of any private, public or quasi public work. Tenant agrees, at Tenant's sole cost and expense, to maintain general public liability insurance in standard form in favor of Owner and Tenant against claims for bodily injury or death or property damage occurring in or upon the demised premises, effective from the date Tenant enters into possession and during the term of this lease. Such insurance shall be in an amount and with carriers acceptable to the Owner. Such policy or policies shall be delivered to the Owner. On Tenant's default in obtaining or delivering any such policy or policies or failure to pay the charges therefor, Owner may secure or pay the charges for any such policy or policies and charge the Tenant as additional rent therefor. Tenant shall indemnify and save harmless Owner against and from all liabilities, obligations, damages, penalties, claims, costs and expenses for which Owner shall not be reimbursed by insurance, including reasonable attorneys fees, paid, suffered or incurred as a result of any breach by Tenant, Tenant's agent, contractors, employees, invitees, or licensees, of any covenant on condition of this lease, or the carelessness, negligence or improper conduct of the Tenant, Tenant's agents, contractors, employees, invitees or licensees. Tenant's liability under this lease extends to the acts and omissions of any subtenant, and any agent, contractor, employee, invitee or licensee of any subtenant. In case any action or proceeding is brought against Owner by reason of any such claim, Tenant, upon written notice from Owner, will, at Tenant's expense, resist or defend such action or proceeding by Counsel approved by Owner in writing, such approval not to be unreasonably withheld.

Destruction,  9.  (a) If the demised premises or any part thereof shall
Fire and  be damaged by fire or other casualty, Tenant shall give
Other  immediate notice thereof to Owner and this lease shall
Casualty:  continue in full force and effect except as hereinafter set
forth. (b) If the demised premises are partially damaged or rendered partially unusable by fire or other casualty, the damages thereto shall be repaired by and at the expense of Owner and the rent, until such repair shall be substantially completed, shall be apportioned from the day following the casualty according to the part of the premises which is usable. (c) If the demised premises are totally damaged or rendered wholly unusable by fire or other casualty, then the rent shall be proportionately paid up to the time of the casualty and thenceforth shall cease until the date when the premises shall have been repaired and restored by Owner, subject to Owner's right to elect not to restore the same as hereinafter provided. (d) If the demised premises are rendered wholly unusable or (whether or not the demised premises are damaged in whole or in part) if the building shall be damaged that Owner shall decide to demolish it or to rebuild it, then, in any of such events, Owner may elect to terminate this lease by written notice to

Tenant given within 90 days after such fire and casualty specifying a date for the expiration of the lease, which date shall not be more than 60 days after the giving of such notice, and upon the date specified in such notice the term of this lease shall expire as fully and completely as if such date were the date set forth above for the termination of this lease and Tenant shall forthwith quit, surrender and vacate the premises without prejudice however, to Owner's rights and remedies against Tenant under the lease provisions in effect prior to such termination, and any rent owing shall be paid up to such date and any payments of rent made by Tenant which were on account of any period subsequent to such date shall be returned to Tenant. Unless Owner shall serve a termination notice as provided for herein, Owner shall make the repairs and restorations under the conditions of (b) and (c) hereof, with all reasonable expedition subject to delays due to adjustment of insurance claims, labor troubles and causes beyond Owner's control. After any such casualty, Tenant shall cooperate with Owner's restoration by removing from the premises as promptly as reasonably possible, all of Tenant's salvageable inventory and movable equipment, furniture, and other property. Tenant's liability for rent shall resume five (5) days after written notice from Owner that the premises are substantially ready for Tenant's occupancy. (e) Nothing contained hereinabove shall relieve Tenant from liability that may exist as a result of damage from fire or other casualty. Notwithstanding the foregoing, each party shall look first to any insurance in its favor before making any claim against the other party for recovery for loss or damage resulting from fire or other casualty, and to the extent that such insurance is in force and collectible and to the extent permitted by law, Owner and Tenant each hereby releases and waives all right of recovery against the other or any one claiming through or under each of them by way of subrogation or otherwise. The foregoing release and waiver shall be in force only if both releasors' insurance policies contain a clause providing that such a release or waiver shall not invalidate the insurance and also, provided that such a policy can be obtained without additional premiums. Tenant acknowledges that Owner will not carry insurance on Tenant's furniture and/or furnishings or any fixtures or equipment, improvements, or appurtenances removable by Tenant and agrees that Owner will not be obligated to repair any damage thereto or replace the same. (f) Tenant hereby waives the provisions of Section 227 of the Real Property Law and agrees that the provisions of this article shall govern and control in lieu thereof.

Eminent  10.  If the whole or any part of the demised premises
Domain:  shall be acquired or condemned by Eminent Domain for
any public or quasi public use or purpose, then and in that event, the term of this lease shall cease and terminate from the date of title vesting in such proceeding and Tenant shall have no claim for the value of any unexpired term of said lease.

Assignment,  11.  Tenant, for itself, its heirs, distributees, executors,
Mortgage,  administrators, legal representatives, successors and
Etc.:  assigns expressly covenants that it shall not assign, mortgage or encumber this agreement, nor underlet, or suffer or permit the demised premises or any part thereof to be used by others, without the prior written consent of Owner in each instance. If this lease be assigned, or if the demised premises or any part thereof or any part thereof be occupied by anybody other than Tenant, Owner may, after default by Tenant, collect rent from the assignee, under-tenant or occupant, and apply the net amount collected to the rent herein reserved, but no such assignment, underletting, occupancy or collection shall be deemed a waiver of the covenant, or the acceptance of the assignee, under-tenant or occupant as tenant, or a release of Tenant from the further performance by Tenant of covenants on the part of Tenant herein contained. The consent by Owner to an assignment or underletting shall not in any wise be construed to relieve Tenant from obtaining the express consent in writing of Owner to any further assignment or underletting.

Electric  12.  Rates and conditions in respect to submetering or
Current:  rent inclusion, as the case may be, to be added in RIDER
☞  attached hereto. Tenant convenants and agrees that at all times its use of electric current shall not exceed the capacity of existing feeders to the building or the risers or wiring installation and Tenant may not use any electrical equipment which, in Owner's opinion, reasonably exercised, will overload such installations or interfere with the use thereof by other tenants of the building. The change at any time of the character of electric service shall in no wise make Owner liable or responsible to Tenant, for any loss, damages or expenses which Tenant may sustain.

Access to  13.  Owner or Owner's agents shall have the right (but
Premises:  shall not be obligated) to enter the demised premises in any emergency at any time, and, at other reasonable times, to examine the same and to make such repairs, replacements and improvements as Owner may deem necessary and reasonably desirable to any portion of the building or which Owner may elect to perform, in the premises, following Tenant's failure to make repairs or perform any work which Tenant is obligated to perform under this lease, or for the purpose of complying with laws, regulations and other directions of governmental authorities. Tenant shall permit Owner to use and maintain and replace pipes and conduits in and through the demised premises and to erect new pipes and conduits therein, provided they are within the walls, Owner may, during the progress of any work in the demised premises, take all necessary materials and equipment into said premises without the same constituting an eviction nor shall the Tenant be entitled to any abatement of rent while such work is in progress nor to any damages by reason of loss or interruption of business or otherwise. Throughout the term hereof Owner shall have the

☞  Rider to be added if necessary.

*Tenant is not responsible for any existing violations and delays caused by such violations.

right to enter the demised premises at reasonable hours for the purpose of showing the same to prospective purchasers or mortgages of the building, and during the last six months of the term for the purpose of showing the same to prospective tenants and may, during said six months period, place upon the premises the usual notices "To Let" and "For Sale" which notices Tenant shall permit to remain thereon without molestation. If Tenant is not present to open and permit an entry into the premises, Owner or Owner's agents may enter the same whenever such entry may be necessary or permissible by master key or forcibly and provided reasonable care is exercised to safeguard Tenant's property and such entry shall not render Owner or its agents liable therefor, nor in any event shall the obligations of Tenant hereunder be affected. If during the last month of term Tenant shall have removed all or substantially all of Tenant's property therefrom, Owner may immediately enter, alter, renovate or redecorate the demised premises without limitation or abatement of rent, or incurring liability to Tenant for any compensation and such act shall have no effect on this lease or Tenant's obligations hereunder. Owner shall have the right at any time, without the same constituting an eviction and without incurring liability to Tenant therefor to change the arrangement and/or location of public entrances, passageways, doors, doorways, corridors, elevators, stairs, toilets, or other public parts of the building and to change the name, number or designation by which the building may be known.

**Vault,**
**Vault Space,**
**Area:**
14. No vaults, vault space or area, whether or not enclosed or covered, not within the property line of the building is leased hereunder, anything contained in or indicated on any sketch, blue print or plan, or anything contained elsewhere in this lease to the contrary notwithstanding. Owner makes no representation as to the location of the property line of the building. All vaults and vault space and all such areas not within the property line of the building, which Tenant may be permitted to use and/or occupy, is to be used and/or occupied under a revocable license, and if any such license be revoked, or if the amount of such space or area be diminished or required by any federal, state or municipal authority or public utility, Owner shall not be subject to any liability nor shall Tenant be entitled to any compensation or diminution or abatement of rent, nor shall such revocation, diminution or requisition be deemed constructive or actual eviction. Any tax, fee or charge of municipal authorities for such vault or area shall be paid by Tenant.

**Occupancy:**
15. Tenant will not at any time use or occupy the demised premises in violation of, Articles 2 or 37 hereof, or of, the certificate of occupancy issued for the building of which the demised premises are a part. Tenant has inspected the premises and accepts them as is, subject to the riders annexed hereto with respect to Owner's work, if any. In any event, Owner makes no representation as to the condition of the premises and Tenant agrees to accept the same subject to violations whether or not of record.

**Bankruptcy:**
16. (a) Anything elsewhere in this lease to the contrary notwithstanding, this lease may be cancelled by Landlord by the sending of a written notice to Tenant within a reasonable time after the happening of any one or more of the following events: (1) the commencement of a case in bankruptcy or under the laws of any state naming Tenant as the debtor; or (2) the making by Tenant of an assignment or any other arrangement for the benefit of creditors under any state law. Neither Tenant nor any person claiming through or under Tenant, or by reason of any statute or order of court, shall thereafter be entitled to possession of the premises demised but shall forthwith quit and surrender the premises. If this lease shall be assigned in accordance with its terms, the provisions of this Article 16 shall be applicable only to the party then owning Tenant's interest in this lease.

(b) It is stipulated and agreed that in the event of the termination of this lease pursuant to (a) hereof, Owner shall forthwith, notwithstanding any other provisions of this lease to the contrary, be entitled to recover from Tenant as and for liquidated damages an amount equal to the difference between the rent reserved hereunder for the unexpired portion of the term demised and the fair and reasonable rental value of the demise premises for the same period. In the computation of such damages the difference between each installment of rent becoming due hereunder after the date of termination and the fair and reasonable rental value of the demised premises for the period for which such installment was payable shall be discounted to the date of termination at the rate of four per cent (4%) per annum. If such premises or any part thereof be re-let by the Owner for the unexpired term of said lease, or any part thereof, before presentation of proof of such liquidated damages to any court, commission or tribunal, the amount of rent reserved upon such reletting shall be deemed to be the fair and. reasonable rental value for the part or the whole of the premises so re-let during the term of the re-letting. Nothing herein contained shall limit or prejudice the right of the Owner to prove for and obtain as liquidated damages by reason of such termination, an amount equal to the maximum allowed by any statute or rule of law in effect at the time when, and governing the proceedings in which, such damages are to be proved, whether or not such amount be greater, equal to, or less than the amount of the difference referred to above.

**Default:**
17. (1) If Tenant defaults in fulfilling any of the covenants of this lease other than the covenants for the payment of rent or additional rent; or if the demised premises become vacant or deserted; or if any execution or attachment shall be issued against Tenant or any of Tenant's property whereupon the demised premises shall be taken or occupied by someone other than Tenant; or if this lease be rejected under Section 365 of Title 11 of the U.S. Code (Bankruptcy Code); or if Tenant shall fail to move into or take possession of the premises within fifteen (15) days after the commencement of the term of this lease, of which fact Owner shall be the sole judge; then, in any one or more of such events, upon Owner serving a written five (5) days notice upon Tenant specifying the nature of said default and upon the expiration of said five (5) days, if Tenant shall have failed to comply with or remedy such default, or if the said default or omission complained of shall be of a nature that the same cannot be completely cured or remedied within said five (5) day period, and if Tenant shall not have diligently commenced curing such default within such five (5) day period, and shall not thereafter with reasonable diligence and in good faith proceed to remedy or cure such default, then Owner may serve a written three (3) days notice of cancellation of this lease upon Tenant, and upon the expiration of said three (3) days, this lease and the term thereunder shall end and expire as fully and completely as if the expiration of such three (3) day period were the day herein definitely fixed for the end and expiration of this lease and the term thereof and Tenant shall then quit and surrender the demised premises to Owner but Tenant shall remain liable as hereinafter provided.

(2) If the notice provided for in (1) hereof shall have been given, and the term shall expire as aforesaid; or if Tenant shall make default in the payment of the rent reserved herein or any item of additional rent herein mentioned or any part of either or in making any other payment herein required; then and in any of such events Owner may without notice, re-enter the demised premises either by force or otherwise, and dispossess Tenant by summary proceedings or otherwise, and the legal representative of Tenant or other occupant of demised premises and remove their effects and hold the premises as if this lease had not been made, and Tenant hereby waives the service of notice of intention to re-enter or to institute legal proceedings to that end.

**Remedies of**
**Owner and**
**Waiver of**
**Redemption:**
18. In case of any such default, re-entry, expiration and/or dispossess by summary proceedings or otherwise, (a) the rent, and additional rent, shall become due thereupon and be paid up to the time of such reentry, dispossess and/or expiration. (b) Owner may re-let the premises or any part or parts thereof, either in the name of Owner or otherwise, for a term or terms, which may at Owner's option be less than or exceed the period which would otherwise have constituted the balance of the term of this lease and may grant concessions or free rent or charge a higher rental than that in this lease, and/or (c) Tenant or the legal representatives of Tenant shall also pay Owner as liquidated damages for the failure of Tenant to observe and perform said Tenant's covenants herein contained, any deficiency between the rent hereby reserved and/or convenanted to be paid and the net amount, if any, of the rents collected on account of the subsequent lease or leases of the demised premises for each month of the period which would otherwise have constituted the balance of the term of this lease. The failure of Owner to re-let the premises or any part or parts thereof shall not release or affect Tenant's liability for damages. In computing such liquidated damages there shall be added to the said deficiency such expenses as Owner may incur in connection with re-letting, such as legal expenses, attorneys' fees, brokerage, advertising and for keeping the demised premises in good order or for preparing the same for re-letting. Any such liquidated damages shall be paid in monthly installments by Tenant on the rent day specified in this lease. Owner, in putting the demised premises in good order or preparing the same for re-rental may, at Owner's option, make such alterations, repairs, replacements, and/or decorations in the demised premises as Owner, in Owner's sole judgement, considers advisable and necessary for the purpose of re-letting the demised premises, and the making of such alterations, repairs, replacements, and/or decorations shall not operate or be construed to release Tenant from liability. Owner shall in no event be liable in any way whatsoever for failure to re-let the demised premises, or in the event that the demised premises are re-let, for failure to collect the rent thereof under such re-letting, and in no event shall Tenant be entitled to receive any excess, if any, of such net rent collected over the sums payable by Tenant to Owner hereunder. In the event of a breach or threatened breach by Tenant or any of the covenants or provisions hereof, Owner shall have the right of injunction and the right to invoke any remedy allowed at law or in equity as if re-entry, summary proceedings and other remedies were not herein provided for. Mention in this lease of any particular remedy, shall not preclude Owner from any other remedy, in law or in equity. Tenant hereby expressly waives any and all rights of redemption granted by or under any present or future laws.

**Fees and**
**Expenses:**
19. If Tenant shall default in the observance or performance of any term or covenant on Tenant's part to be observed or performed under or by virtue of any of the terms or provisions in any article of this lease, then, unless otherwise provided elsewhere in this lease, Owner may immediately or at any time thereafter and without notice perform the obligation of Tenant thereunder, and if Owner, in connection therewith or in connection with any default by Tenant in the covenant to pay rent hereunder, makes any expenditures or incurs any obligations for the payment of money, including but not limited to attorney's fees, in instituting, prosecuting or defending any actions or proceeding, such sums so paid or obligations incurred with interest and costs shall be deemed to be additional rent hereunder and shall be paid by Tenant to Owner within five (5) days of rendition of any bill or statement to Tenant therefor, and if Tenant's lease term shall have expired at the time of making of such expenditures or incurring of such obligations, such sums shall be recoverable by Owner as damages.

**No Repre-**
**sentations by**
**Owner:**
20. Neither Owner nor Owner's agents have made any representations or promises with respect to the physical condition of the building, the land upon which it is erected or the demised premises, the rents, leases, expenses of operation, or any other matter or thing affecting or related to the premises except as herein expressly set forth and no rights, easements or licenses are

acquired by Tenant by implication or otherwise except as expressly set forth in the provisions of this lease. Tenant has inspected the building and the demised premises and is thoroughly acquainted with their condition, and agrees to take the same "as is" and acknowledges that the taking of possession of the demised premises by Tenant shall be conclusive evidence that the said premises and the building of which the same form a part were in good and satisfactory condition at the time such possession was so taken, except as to latent defects. All understandings and agreements heretofore made between the parties hereto are merged in this contract, which alone fully and completely expresses the agreement between Owner and Tenant and any executory agreement hereafter made shall be ineffective to change, modify, discharge or effect an abandonment of it in whole or in part, unless such executory agreement is in writing and signed by the party against whom enforcement of the change, modification, discharge or abandonment is sought.

**End of Term:** 21.  Upon the expiration or other termination of the term of this lease, Tenant shall quit and surrender to Owner the demised premises, broom clean, in good order and condition, ordinary wear excepted, and Tenant shall remove all its property. Tenant's obligation to observe or perform this covenant shall survive the expiration or other termination of this lease. If the last day of the term of this lease or any renewal thereof, falls on Sunday, this lease shall expire at noon on the preceding Saturday unless it be a legal holiday in which case it shall expire at noon on the preceding business day.

**Quiet Enjoyment:** 22.  Owner covenants and agrees with Tenant that upon Tenant paying the rent and additional rent and observing and performing all the terms, covenants and conditions, on Tenant's part to be observed and performed, Tenant may peaceably and quietly enjoy the premises hereby demised, subject, nevertheless, to the terms and conditions of this lease including, but not limited to, Article 33 hereof and to the ground leases, underlying leases and mortgages hereinbefore mentioned.

**Failure to Give Possession:** 23.  If Owner is unable to give possession of the demised premises on the date of the commencement of the term hereof, because of the holding-over or retention of possession of any tenant, undertenant or occupants, or if the premises are located in a building being constructed, because such building has not been sufficiently completed to make the premises ready for occupancy or because of the fact that a certificate of occupancy has not been procured or for any other reason, Owner shall not be subject to any liability for failure to give possession on said date and the validity of the lease shall not be impaired under such circumstances, nor shall the same be construed in any wise to extend the term of this lease, but the rent payable hereunder shall be abated (provided Tenant is not responsible for the inability to obtain possession) until after Owner shall have given Tenant written notice that the premises are substantially ready for Tenant's occupancy. If permission is given to Tenant to enter into the possession of the demised premises or to occupy premises other than the demised premises prior to the date specified as the commencement of the term of this lease, Tenant covenants and agrees that such occupancy shall be deemed to be under all the terms, covenants, conditions and provisions of this lease, except as to the covenant to pay rent. The provisions of this article are intended to constitute "an express provision to the contrary" within the meaning of Section 223-a of the New York Real Property Law.

**No Waiver:** 24.  The failure of Owner to seek redress for violation of, or to insist upon the strict performance of any covenant or condition of this lease or of any of the Rules or Regulations set forth or hereafter adopted by Owner, shall not prevent a subsequent act which would have originally constituted a violation from having all the force and effect of an original violation. The receipt by owner of rent with knowledge of the breach of any covenant of this lease shall not be deemed a waiver of such breach and no provision of this lease shall be deemed to have been waived by Owner unless such waiver be in writing signed by Owner. No payment by Tenant or receipt by Owner of a lesser amount than the monthly rent herein stipulated shall be deemed to be other than on account of the earliest stipulated rent, nor shall any endorsement or statement of any check or any letter accompanying any check or payment as rent be deemed an accord and satisfaction, and Owner may accept such check or payment without prejudice to Owner's right to recover the balance of such rent or pursue any other remedy in this lease provided. No act or thing done by Owner or Owner's agents during the term hereby demised shall be deemed an acceptance of a surrender of said premises and no agreement to accept such surrender shall be valid unless in writing signed by Owner. No employee of Owner or Owner's agent shall have any power to accept the keys of said premises prior to the termination of the lease and the delivery of keys to any such agent or employee shall not operate as a termination of the lease or a surrender of the premises.

**Waiver of Trial by Jury:** 25.  It is mutually agreed by and between Owner and Tenant that the respective parties hereto shall and they hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other (except for personal injury or property damage) on any matters whatsoever arising out of or in any way connected with this lease, the relationship of Owner and Tenant, Tenant's use of or occupancy of said premises, and any emergency statutory or any other statutory remedy. It is further mutually agreed that in the event Owner commences any summary proceeding for possession of the premises, Tenant will not interpose any counterclaim of whatever nature or description in any such proceeding.

**Inability to Perform:** 26.  This lease and the obligation of Tenant to pay rent hereunder and perform all of the other covenants and agreements hereunder on part of Tenant to be performed shall in no wise be affected, impaired or excused because Owner is unable to fulfill any of its obligations under this lease or to supply or is delayed in supplying any service expressly or impliedly to be supplied or is unable to make, or is delayed in making any repair, additions, alterations or decorations or is unable to supply or is delayed in supplying any equipment or fixtures if Owner is prevented or delayed from so doing by reason of strike or labor troubles, government preemption in connection with a National Emergency or by reason of any rule, order or regulation of any department or subdivision thereof of any government agency or by reason of the conditions of supply and demand which have been or are affected by war or other emergency, or when, in the judgement of Owner, temporary interruption of such services is necessary by reason of accident, mechanical breakdown, or to make repairs, alterations or improvements.

**Bills and Notices:** 27.  Except as otherwise in this lease provided, a bill, statement, notice or communication which Owner may desire or be required to give to Tenant, shall be deemed sufficiently given or rendered if, in writing, delivered to Tenant personally or sent by registered or certified mail addressed to Tenant at the building of which the demised premises form a part or at the last known residence address or business address of Tenant or left at any of the aforesaid premises addressed to Tenant, and the time of the rendition of such bill or statement and of the giving of such notice or communication shall be deemed to be the time when the same is delivered to Tenant, mailed, or left at the premises as herein provided. Any notice by Tenant to Owner must be served by registered or certified mail addressed to Owner at the address first hereinabove given or at such other address as Owner shall designate by written notice.

**Water Charges:** 28.  If Tenant requires, uses or consumes water for any purpose in addition to ordinary lavatory purposes (of which fact Tenant constitutes Owner to be the sole judge) Owner may install a water meter and thereby measure Tenant's water consumption for all purposes. Tenant shall pay Owner for the cost of the meter and the cost of the installation thereof and throughout the duration of Tenant's occupancy Tenant shall keep said meter and installation equipment in good working order and repair at Tenant's own cost and expense. Tenant agrees to pay for water consumed, as shown on said meter as and when bills are rendered. Tenant covenants and agrees to pay the sewer rent, charge or any other tax, rent, levy or charge which now or hereafter is assessed, imposed or a lien upon the demised premises or the realty of which they are part pursuant to law, order or regulation made or issued in connection with the use, consumption, maintenance or supply of water, water system or sewage or sewage connection or system. The bill rendered by Owner shall be payable by Tenant as additional rent. If the building or the demised premises or any part thereof be supplied with water through a meter through which water is also supplied to other premises Tenant shall pay to Owner as additional rent, on the first day of each month, ( ) %
($          ) of the total meter charge, as scientifically determined.  Independently of and in addition to any of the remedies reserved to Owner hereinabove or elsewhere in this lease, Owner may sue for and collect any monies to be paid by Tenant or paid by Owner for any of the reasons or purposes hereinabove set forth.

**Sprinklers:** 29.  Anything elsewhere in this lease to the contrary notwithstanding, if the New York Board of Fire Underwriters or the Insurance Services Office or any bureau, department or official of the federal, state or city government require or recommend the installation of a sprinkler system or that any changes, modifications, alterations, or additional sprinkler heads or other equipment be made or supplied in an existing sprinkler system by reason of Tenant's business, or the location of partitions, trade fixtures, or other contents of the demised premises, or for any other reason, or if any such sprinkler system installations, changes, modifications, alterations, additional sprinkler heads or other such equipment, become necessary to prevent the imposition of a penalty or charge against the full allowance for a sprinkler system in the fire insurance rate set by any said Exchange or by any fire insurance company. Tenant shall, at Tenant's expense, promptly make such sprinkler system installations, changes, modifications, alterations, and supply additional sprinkler heads or other equipment as required whether the work involved shall be structural or non-structural in nature. Tenant shall pay to Owner as additional rent the sum of $          , on the first day of each month during the term of this lease, as Tenant's portion of the contract price for sprinkler supervisory service.

**Heat, Cleaning:** 30.  As long as Tenant is not in default under any of the covenants of this lease Owner shall, if and insofar as existing facilities permit furnish heat to the demised premises, when and as required by law, on business days from 8:00 a.m. to 6:00 p.m. and on Saturdays from 8:00 a.m. to 1:00 p.m. Tenant shall at Tenant's expense, keep demised premises clean and in order, to the satisfaction to Owner, and if demised premises are situated on the street floor, Tenant shall, at Tenant's own expense, make all repairs and replacements to the sidewalks and curbs adjacent thereto, and keep said sidewalks and curbs free from snow, ice, dirt and rubbish. Tenant shall pay to Owner the cost of removal of any of Tenant's refuse and rubbish from the building. Bills for the same shall be rendered by Owner to Tenant at such times as Owner may elect and shall be due and payable when

☞ Space to be filled in or deleted.

## ACKNOWLEDGMENTS

**CORPORATE OWNER**
**STATE OF NEW YORK,** ss.:
County of

On this _____ day of _____ , 19__ , before me

personally came
to me known, who being by me duly sworn, did depose and say that he resides

in

that he is the _____ of

the corporation described in and which executed the foregoing instrument, as
OWNER; that he knows the seal of said corporation; that the seal affixed to said in-
strument is such corporate seal; that it was so affixed by order of the Board of Direc-
tors of said corporation, and that he signed his name thereto by like order.

.................................................

**INDIVIDUAL OWNER**
**STATE OF NEW YORK,** ss.:
County of

On this _____ day of _____ , 19__ , before me

personally came

to me known and known to me to be the individual
described in and who, as OWNER, executed the foregoing instrument and
acknowledged to me that _____ he executed the same.

.................................................

**CORPORATE TENANT**
**STATE OF NEW YORK,** ss.:
County of

On this _____ day of _____ , 19__ , before me

personally came
to me known, who being by me duly sworn, did depose and say that he resides

in

that he is the _____ of

the corporation described in and which executed the foregoing instrument, as TEN-
ANT; that he knows the seal of said corporation; that the seal affixed to said instru-
ment is such corporate seal; that it was so affixed by order of the Board of Directors
of said corporation, and that he signed his name thereto by like order.

.................................................

**INDIVIDUAL TENANT**
**STATE OF NEW YORK,** ss.:
County of

On this _____ day of _____ , 19__ , before me

personally came

to me known and known to me to be the individual
described in and who, as TENANT, executed the foregoing instrument and
acknowledged to me that _____ he executed the same.

.................................................

## RULES AND REGULATIONS ATTACHED TO AND MADE A PART OF THIS LEASE IN ACCORDANCE WITH ARTICLE 35.

1. The sidewalks, entrances, driveways, passages, courts, elevators, vestibules, stairways, corridors or halls shall not be obstructed or encumbered by any Tenant or used for any purpose other than for ingress to and egress from the demised premises and for delivery of merchandise and equipment in a prompt and efficient manner using elevators and passageways designated for such delivery by Owner. There shall not be used in any space, or in the public hall of the building, either by any tenant or by jobbers, or others in the delivery or receipt of merchandise, any hand trucks except those equipped with rubber tires and safeguards.

2. If the premises are situated on the ground floor of the building, Tenant thereof shall further, at Tenant's expense, keep the sidewalks and curb in front of said premises clean and free from ice, snow, etc.

3. The water and wash closets and plumbing fixtures shall not be used for any purposes other than those for which they were designed or constructed.

4. Tenant shall not use, keep or permit to be used or kept any foul or noxious gas or substance in the demised premises, or permit or suffer the demised premises to be occupied or used in a manner offensive or objectionable to Owner or other occupants of the building by reason of noise, odors and/or vibrations or interfere in any way with other Tenants or those having business therein.

5. No sign, advertisement, notice or other lettering shall be exhibited, inscribed, painted or affixed by any Tenant on any part of the outside of the demised premises or the building or on the inside of the demised premises if the same is visible from the outside of the premises without the prior written consent of Owner, except that the name of Tenant may appear on the entrance door of the premises. In the event of the violation of the foregoing by any Tenant, Owner may remove same without any liability and may charge the expense incurred by such removal to Tenant or Tenants violating this rule. Signs on interior doors and directory tablet shall be inscribed, painted or affixed for each Tenant by Owner at the expense of such Tenant, and shall be of a size, color and style acceptable to Owner.

6. No Tenant shall mark, paint, drill into, or in any way deface any part of the demised premises or the building of which they form a part. No boring, cutting or stringing of wires shall be permitted, except with the prior written consent of Owner,

and as Owner may direct. No Tenant shall lay linoleum, or other similar floor covering, so that the same shall come in direct contact with the floor of the demised premises, and, if linoleum or other similar floor covering is desired to be used an interlining of builder's deadening felt shall be first affixed to the floor, by a paste or other material, soluble in water, the use of cement or other similar adhesive material being expressly prohibited.

7. Freight, furniture, business equipment, merchandise and bulky matter of any description shall be delivered to and removed from the premises only on the freight elevators and through the service entrances and corridors, and only during hours and in a manner approved by Owner. Owner reserves the right to inspect all freight to be brought into the building and to exclude from the building all freight which violates any of these Rules and Regulations or the lease of which these Rules and Regulations are a part.

8. Owner reserves the right to exclude from the building between the hours of 6 P.M. and 8 A.M. and at all hours on Sundays, and holidays all persons who do not present a pass to the building signed by Owner. Owner will furnish passes to persons for whom any Tenant requests same in writing. Each Tenant shall be responsible for all persons for whom he requests such pass and shall be liable to Owner for all acts of such person.

9. Owner shall have the right to prohibit any advertising by any Tenant which, in Owner's opinion, tends to impair the reputation of Owner or its desirability as a building for stores or offices, and upon written notice from Owner, Tenant shall refrain from or discontinue such advertising.

10. Tenant shall not bring or permit to be brought or kept in or on the demised premises, any inflammable, combustible or explosive fluid, material, chemical or substance, or cause or permit any odors of cooking or other processes, or any unusual or other objectionable odors to permeate in or emanate from the demised premises.

11. Tenant shall not place a load on any floor of the demised premises exceeding the floor load per square foot area which it was designed to carry and which is allowed by law. Owner reserves the right to prescribe the weight and position of all safes, business machines and mechanical equipment. Such installations shall be placed and maintained by Tenant at Tenant's expense in setting sufficient in Owner's judgement to absorb and prevent vibration, noise and annoyance.

## GUARANTY

The undersigned Guarantor guarantees to Owner, Owner's successors and assigns, the full performance and observance of all the agreements to be performed and observed by Tenant in the attached Lease, including the "Rules and Regulations" as therein provided, without requiring any notice to Guarantor of nonpayment or, nonperformance, or proof, or notice of demand, to hold the undersigned responsible under this guaranty, all of which the undersigned hereby expressly waives and expressly agrees that the legality of this agreement and the agreements of the Guarantor under this agreement shall not be ended, or changed by reason of the claims to Owner against Tenant of any of the rights or remedies given to Owner as agreed in the attached Lease. The Guarantor further agrees that this guaranty shall remain and

continue in full force and effect as to any renewal, change or extension of the Lease. As a further inducement to Owner to make the Lease Owner and Guarantor agree that in any action or proceeding brought by either Owner or the Guarantor against the other on any matters concerning the Lease or of this guaranty that Owner and the undersigned shall and do waive trial by jury.

.................................................... Guarantor

.................................................................

In Real Estate Board of New York, Inc.
©Copyright 1975, All Rights Reserved.
Reproduction in whole or in part prohibited.

STANDARD FORM OF

TO

Store
Lease

19

Year

Month

Checked by .................

Approved by .................

## Article 40. ELECTRICITY

### SECTION I - GENERAL

Supplementing Article 12, electric current will be supplied to the demised premises at the commencement of the term of this lease in accordance with the provisions of this Section and the Section of this Article (Section I, "rent inclusion"; Section III, "submetering"; or Section IV, "direct electric") which has been identified as the "Electrical Section" in Article 41. As used herein the "Laws" shall mean and include all laws, rules, regulations, ordinances, codes and orders of all governmental and quasi-governmental authorities, agencies and departments, and the directions, provisions and requirements thereof and of utility companies, labor agreements and insurance boards, policies, carriers, underwriters and rating bureaus. All notices, requests, demands and consents permitted or required hereunder shall be in writing. All amounts due to Landlord from Tenant hereunder shall be due and payable as additional rent, including, but not limited to, amounts Tenant is required to pay to others if the same are paid for by Landlord or become a lien or claim against the demised premises, the Building or Landlord. Tenant shall use the electric current supplied to the demised premises for lighting, air conditioning and the operation of other machinery, equipment and appliances in the demised premises at term commencement that utilize electric current of the type, and to the extent mutually used in connection with the operation of Tenant's business ("Equipment") insofar as Landlord's facilities are not burdened thereby and applicable Laws permit. Tenant's use of electric current shall never exceed the capacity of electrical conductors and equipment in, or otherwise serving the demised premises or existing Building feeders, risers or wires. Tenant's use of electric current in the demised premises shall comply with all applicable Laws. Tenant shall not use any Equipment which, in Landlord's sole judgment, will interfere with the business operations of Landlord or other tenants of the Building. Tenant shall not make any addition or other alteration to electrical facilities or add Equipment without the prior written consent of Landlord in each instance. If, in Landlord's sole judgment, Tenant's electrical requirements necessitate addition or other alteration to electrical facilities, the same will be provided, maintained, repaired, and replaced if necessary by Landlord for, at Landlord's option, by Tenant at the sole expense of Tenant if, in Landlord's sole judgment, the same are necessary and will not cause damage or injury to the Building or the demised premises, cause or create a dangerous or hazardous condition, entail excessive or unreasonable alterations, repairs or expenses or interfere with, or disturb Landlord, other tenants or occupants of the Building. Anything contained in this lease to the contrary notwithstanding, with respect to any portion or all of any electrical services and installations permitted or required to be furnished or maintained by Tenant at Tenant's own expense, Landlord, at its option, may elect to furnish or maintain the same at Tenant's expense. Tenant shall use only rigid conduit within the demised premises. Landlord shall not be liable in any way to Tenant for any failure or defect in the supply or character of electric current furnished to the demised premises, for any requirement, act or omission of the Utility Company, or for any loss, damage or expense which Tenant may sustain or incur if either the quantity or character of electric service is changed or is no longer available or suitable for Tenant's requirements. Tenant acknowledges having had an opportunity to inspect, and represents that the existing electrical capacity is adequate for its use. Tenant shall purchase from Landlord and Landlord shall install, at Tenant's expense, all lighting tubes, lamps, bulbs and ballasts used in the demised premises. At any time, and from time to time, Landlord may elect, on at least thirty (30) days prior notice ("Electricity Notice"), to change the method by which Tenant will receive its electricity service in the demised premises. Landlord's Electricity Notice will specify the alternative form of service (i.e., "rent inclusion" under Section II, "submetering" under Section III or "direct electric" under Section IV) and the date on which the then current form of service will end and the alternative form of service will begin, subject only to delays beyond the reasonable control of the parties and the requirements of any Laws. This Section I ("General") will continue to apply along with whichever other Section of this Article is in effect. If Landlord elects to cease furnishing electricity to Tenant (requiring Tenant to obtain electric service directly from the Utility Company) or changes the manner in which electric service is furnished by Landlord (requiring submetering instead of rent inclusion or vice versa) neither such discontinuance, nor such change shall be deemed a lessening or diminution of service within the meaning of any Laws and this lease shall otherwise remain in full force and effect in accordance with its terms. If any tax is imposed in connection with the Landlord's sale or distribution of electric current to Tenant by any federal, state or local government subdivision or authority, Tenant shall pay Landlord the Tenant's Percentage of such tax, to the extent permitted by Laws.

### SECTION II - RENT INCLUSION

1. As an incident to this Lease and as part of the Annual Base Rent payable hereunder, Landlord shall furnish to Tenant electric current on a so-called "rent inclusion" basis. The portion of the Annual Base Rent attributable to electric current so furnished to Tenant, constituting the Annual Base Rent applicable during the term of this lease less the "Net Annual Base Rent" (referred to in paragraphs (4) and (5) of this Section) is hereinafter referred to as the "Base Electricity Charge". "Electric Rate" means the service classification pursuant to which Landlord purchases electricity from the Utility Company for the Building, taking into consideration of surcharges and charges for demand, energy, fuel adjustments, and "time of day", and taxes and other sums payable in connection therewith. "Base Electric Date" means September 23, 1983. If Landlord grants its consent to additions, or other alterations to existing electrical facilities, and/or Tenant's use of other, or additional Equipment at Tenant's expense as provided above, Landlord may require an increase in the Base Electricity Charge (and the Annual Base Rent) payable hereunder to reflect the value of the additional electric current to be made available to Tenant for its Equipment. If Landlord and Tenant do not agree to writing on the amount of such increase, but Landlord consents to such changes in electrical facilities or to the use of other or additional Equipment nevertheless, the amount of the increase shall be determined by the "Consultant" performing a survey as provided in the next paragraph.

2. Landlord may, at any time, retain a reputable independent electrical engineer or consultant, selected by Landlord and paid equally by both parties (the "Consultant"), to make a survey of the electrical wiring and power load of Tenant and determining the value of the electric service provided to Tenant (the "Survey"). The Electric Rate shall be applied to Tenant's usage of electricity (load and demand) to determine what the cost (i.e., value to Tenant) would be if Tenant had purchased its electricity from the Utility Company at the Electric Rate of Landlord for the Building. If the Base Electricity Charge then in effect hereunder is below such value as determined by such Consultant, the Base Electricity Charge (and the Annual Base Rent) shall be increased to fully reflect such value. The findings of such Consultant, in all such instances, shall be final, binding and conclusive upon the parties. Any increase in the amount of the Base Electricity Charge from such a survey shall be effective as of (A) the date the Survey was performed, or (B) if the survey is conducted during the first six (6) months of the term, the commencement of the term of this lease. The retroactive increase in the Base Electric Charge shall be due within ten (10) days after it is first billed. However, if and to the extent that an increase in the Base Electricity Charge determined by the Consultant is due to changes in Equipment, electrical facilities or the Electric Rate as of a particular date, the Consultant shall specify the effective date for the increase in the Base Electricity Charge. Tenant shall cooperate with the Consultant and shall promptly provide copies of records, purchase orders and the like as the Consultant, in his or her sole and absolute discretion shall request to aid in such determination.

3. If, after the Base Electric Date, the Electric Rate is increased (due to changes in, or replacement of the Utility Company's rate schedule for the Building or any increase in, or addition to any of the charges, surcharges or taxes for supplying electric current to the Building), the Base Electricity Charge shall be increased by the percentage of any increase in Landlord's cost for purchasing electricity for the Building. If Tenant disputes the amount of the increase in writing sent to Landlord within twenty (20) days after Landlord bills Tenant in writing for the increased amount, the amount of such percentage increase shall be determined by the Consultant (chosen by Landlord and paid equally by Landlord and Tenant. The Consultant shall take Landlord's average demand and consumption (as reflected in Landlord's electric bills from the Utility Company) for the twelve (12) month period that immediately precedes the date the Electric Rate changed; that average demand and consumption shall be applied to the Electric Rate in effect during such twelve (12) month period to derive an agreed cost before the change in the Electric Rate; the same average demand and consumption shall be applied to the new Electric Rate to derive an agreed cost after the change in the Electric Rate; the percentage of the increase in the annual Base Electricity Charge then in effect shall be determined by using a fraction whose numerator is the difference between the aforesaid agreed costs after and before the change and whose denominator is the agreed cost before the change. The Consultant's determination shall be final, binding and conclusive. Landlord's determination herein shall be deemed to provide for a reduction in the Base Electricity Charge unless Landlord gives its Electricity Notice to cease providing electric service on a rent inclusion basis, in which case paragraphs (4) and (5) of this Section will apply.

4. If Landlord exercises its right to cease furnishing electric service on a "rent inclusion" basis, this lease shall continue in full force and effect and shall not be affected thereby, except that, from and after the effective date of such discontinuation, Landlord shall not be obligated to furnish electric current to Tenant (except as provided in the next Section relating to submetering, if Landlord elects to furnish submetering service) and the Annual Base Rent payable hereunder from and after the date any such rent inclusion ends, shall be reduced to an applicable Net Annual Base Rent per year. Anything contained in this lease to the contrary notwithstanding, if this lease (or any subsequent written agreement between the parties amending this lease) provides for any increase in the Annual Base Rent other than due to an increase in the Base Electricity Charge, the Net Annual Base Rent shall be increased by the amount of cash and every such increase so that any reduction in the Annual Base Rent due to the termination of electric service on a rent inclusion basis as described herein shall not exceed the annual Base Electricity Charge immediately prior to the date on which such termination becomes effective.

5. If the Electrical Section identified in Article 41 is this Section II; rent inclusion was the initial form of electric service provided for in this lease; the Net Annual Base Rent was specified in Article 41; and the initial Base Electricity Charge was included in the Annual Base Rent at the inception of the term. If Article 41 does not specify the Net Annual Base Rent, the Landlord's Electricity Notice containing its election to provide electricity on a rent inclusion basis shall specify the initial Base Electricity Charge; and the Net Annual Base Rent shall be the Annual Base Rent as previously set forth in this lease. If Tenant disputes the initial Base Electricity Charge specified in Landlord's Electricity Notice, Landlord shall have such initial Base Electricity Charge determined by the Consultant under paragraph (2) of this Section.

### SECTION III - SUBMETERING

Landlord shall furnish electric current for Tenant's use in the demised premises on a so-called "submetering" basis. Tenant's consumption of electrical current in the demised premises shall be measured by submeters installed and hooked up by Landlord. All work relating to such submeters, including, but not limited to, the furnishing, installation, repair, maintenance, replacement and recalibration thereof, shall be performed by Landlord at Tenant's expense. Tenant shall purchase such electric current from Landlord or Landlord's designated agent at charges, terms and rates set, from time to time during the Term, by Landlord, but not more than those specified in the service classification in effect on January 1, 1970 pursuant to which Landlord then purchased electric current from the Utility Company, as revised by Landlord in order to maintain the return to Landlord, and, from time to time thereafter during the Term, whenever any governmental authority having jurisdiction approves changes in applicable service classification, terms, rates or charges (including, without limitation, by virtue of fuel or other adjustments). Where more than one meter measures Tenant's consumption of electricity, the service rendered through each meter may be computed and billed separately in accordance with the revisions hereof. Bills therefor shall be rendered at such times as Landlord may elect and shall be payable on demand. In the event that such bills are not paid within thirty (30) days after the same are rendered, Landlord may, without further notice, discontinue the service of electric current to the demised premises without relieving Tenant from any liability under this Lease and without Landlord or Landlord's agent incurring any liability for any damage or loss sustained by Tenant by such discontinuance of service.

### SECTION IV - DIRECT ELECTRIC

Tenant shall arrange to obtain all electric current for the demised premises directly from the Utility Company. Tenant shall pay all bills rendered by the Utility Company for such electric current. Such electric current may be provided to Tenant by means of the then existing Building feeders, risers and other installations, to the extent that the same are available, suitable and safe for such purposes. All meters and additional panel boards, switches, feeders, risers, wiring and other conductors and equipment which are necessary to obtain electric current directly from the Utility Company shall be furnished, installed, maintained and repaired by Tenant, at its expense subject to Landlord's prior written consent. If more than ninety percent (90%) of the occupied space in the Building receive electric service directly from the Utility Company, Tenant shall pay Landlord the Tenant's Percentage of all costs incurred by Landlord to provide electricity for the Building within ten (10) days after being billed. A copy of Landlord's electricity bills for the Building from the Utility Company shall be sufficient evidence of Landlord's costs therefor. Tenant shall pay Landlord the Tenant's Percentage of Landlord's costs to increase the electrical capacity of the Building, or, if Tenant will have access to a percentage of such additional capacity greater than the Tenant's Percentage set forth in Article 41, Tenant shall pay Landlord the percentage that reflects Tenant's proportionate share. Such payments shall be made within ten (10) days after being billed.

PLEASE INITIAL HERE: _____

November 13, 2013

Rider attached to and made a part of lease dated November 13, 2013 by and between Gold Street Properties, LP as Landlord, and Affina Nail Salon, LLC as Tenant, for 88 Fulton Street aka 33 Gold Street, NY NY 10038

41. FIXED RENT ...................................................................................1
42. COMMENCEMENT AND EXPIRATION OF TERM ......................2
43. RIDER PROVISIONS PREVAIL ..................................................2
44. ADDITIONAL RENT AND MISCELLANEOUS DEFINITIONS ...................2
45. TAXES ON TENANT'S PROPERTY OR IMPROVEMENTS ..........................4
46. ADDITIONAL RENT FOR REAL ESTATE TAXES.........................................4
47. ADDITIONAL ASSIGNMENT AND SUBLETTING PROVISIONS ................6
48. END OF TERM ................................................................................8
49. UTILITIES.........................................................................................9
50. CONDITION OF DEMISED PREMISES ......................................11
51. TENANT'S CHANGES ....................................................................11
52. TENANT'S WORK AND INSTALLATION.......................................13
53. MECHANICS LIENS ......................................................................15
54. ESTOPPEL CERTIFICATES BY TENANT .....................................16
55. INDEMNIFICATION OF OWNER .................................................16
56. LIABILITY OF OWNER .................................................................16
57. INSURANCE ...................................................................................16
58. SUBORDINATION, ATTORNMENT, NOTICE TO LESSORS AND MORTGAGEE     18
59. MAINTENANCE OF FIXTURES AND EQUIPMENT.....................................19
60. COMPLIANCE WITH LAWS.........................................................20
61. RENT CONTROL AND/OR COMMERCIAL RENT STABILIZATION .........22
62. CONSENTS .....................................................................................22
63. BINDING EFFECT .........................................................................22
64. LATE CHARGES ............................................................................22
65. ADDITIONAL SECURITY..............................................................22
66. QUALIFICATIONS AS TO USE .....................................................23
67. BROKERAGE .................................................................................24
68. CORPORATE OR PARTNERSHIP TENANT .................................24
69. SIGNS, AWNINGS AND GATES.....................................................24
70. FORCE MAJEURE .........................................................................25
71. MISCELLANEOUS.........................................................................25
72. HAZARDOUS MATERIALS ...........................................................26
73. CONDITIONAL LIMITATION .......................................................27
74. TENANT'S SOCIAL SECURITY NUMBER OR EMPLOYER ID NUMBER....28
75. AIR COOLING................................................................................28
76. OVERLEASE ..................................................................................28
77. SECURITY .....................................................................................28
EXHIBIT "A" (DIAGRAM OF THE DEMISED PREMISES} ................30
EXHIBIT "B" "LANDLORD WORK" ................................................31
EXHIBIT "C" TENANT WORK.........................................................32
EXHIBIT "D" LIMITED PERSONAL GUARANTY...............................33



November 13,
2013
Rider attached to and made a part of lease dated November 13, 2013 by and between Gold Street Properties, LP as Landlord, and
Affina Nail Salon, LLC as Tenant, for 88 Fulton Street aka 33 Gold Street, NY NY 10038

## 41. FIXED RENT

A.  The "Fixed Rent", which Tenant covenants and agrees to pay without any prior demand, offset or deduction
whatsoever, in equal monthly advance installments on the first day of each and every calendar month during the
term of the Lease shall be paid at the rates described in Chart "A" below

Chart "A"

| "Lease Year" (defined below) | Annual Fixed Rent | Monthly Fixed Rent |
|---|---|---|
| *11/15/13 – 11/14/14 | $180,000.00 | $15,000.00 |
| 11/15/14 – 11/14/15 | $185,400.00 | $15,450.00 |
| 11/15/15 – 11/14/16 | $190,962.00 | $15,913.50 |
| 11/15/16 – 11/14/17 | $196,690.92 | $16,390.91 |
| 11/15/17 – 11/14/18 | $202,591.68 | $16,882.64 |
| 11/15/18 – 11/14/19 | $208,669.44 | $17,389.12 |
| 11/15/19 – 11/14/20 | $214,929.48 | $17,910.79 |
| 11/15/20 – 11/14/21 | $221,377.32 | $18,448.11 |
| 11/15/21 – 11/14/22 | $228,018.60 | $19,001.55 |
| 11/15/22 – 11/14/23 | $234,859.20 | $19,571.60 |
| *Concession for the | period 11/15/13 – 3/14/14 | 3/15/14 – 5/14/14 @ 1/2 rent |

B.  If Tenant is not in default under this lease and it remains in effect, the Fixed Rent shall abate in the interval
from the "Commencement Date" (defined below) to the "Rent Date" (defined below"), and the first advance
monthly installment of the Fixed Rent, which is to be paid upon execution and delivery of this lease, shall be
applied as the monthly installment of the Fixed Rent due and payable on the Rent Date.

C.  "Electrical Section" in Article 40 shall mean Section IV ("Direct Electric") of
Article 40.

D.  "Tenant's Percentage" shall mean three percent (3%).

E.  "Agreed Factor" means (2100)

F.  "Base Tax Year" means July 1, 2013 to June 30, 2014.

G.  "Rent Date" means March 15, 2014

H.  The "Broker" means (NA) Thurcon Properties, Ltd

1

2013                                                                                November 13,

Rider attached to and made a part of lease dated November 13, 2013 by and between Gold Street Properties, LP as Landlord, and Affina Nail Salon, LLC as Tenant, for 88 Fulton Street aka 33 Gold Street, NY NY 10038

I.      The Term shall expire, unless sooner terminated as herein provided **November 14, 2023** (the "Expiration Date") that is the last day of the tenth *(10th)* "Lease Year" (as defined below).

J.      The term "Tenants Proportion" shall mean 4% of the entire building in which the demised store is located.

## 42. COMMENCEMENT AND EXPIRATION OF TERM

The term of this lease shall commence on **November 15, 2013** (Commencement Date") on which this lease is signed and delivered by Landlord and Tenant.  As used herein, Lease Year" means successive periods of twelve (12) calendar months, with the first (1st) Lease Year to commence on the first day of the month which follows the Commencement Date, except if the Commencement Date is the first day of the month, in which event the first (1st) Lease Year shall begin on the Commencement Date and each Lease Year thereafter shall begin on an anniversary of the Commencement Date.  The Term shall expire, unless sooner terminated as herein provided, on the date **November 14, 2023** (the "Expiration Date") that is the last day of the tenth (10th) Lease Year.  Promptly after the Commencement Date and the Expiration Date are known, Tenant and Landlord shall execute a memorandum confirming the same, but the failure or refusal of either or both of them to do so shall not change the Commencement Date or the Expiration Date.

## 43. RIDER PROVISIONS PREVAIL

If and to the extent that any of the provisions of this Rider conflict or are otherwise inconsistent with any of the preceding printed provisions of this lease, or of the Rules and Regulations attached to this lease, whether or not such inconsistency is expressly noted in this Rider, the provisions of this Rider shall prevail, and in case of inconsistency with said Rules and Regulations, shall be deemed a waiver of such Rules and Regulations with respect to Tenant to the extent of such inconsistency.

## 44. ADDITIONAL RENT AND MISCELLANEOUS DEFINITIONS

a.  All payments other than Fixed Rent required to be made by Tenant pursuant to this lease (including, but not limited to, escalation charges, and any and all damages, interest, costs, fees and expenses caused by Tenant's default) shall be deemed additional rent and, in the event of any nonpayment thereof, Owner shall have all rights and remedies provided for herein and by law for nonpayment of Fixed Rent in addition to whatever other remedies may be available to Owner.

b.  Unless expressly provided otherwise in this lease, the amount shown as due to Owner (or Owner's agent) in all bills, invoices and statements to Tenant shall be due and payable by Tenant upon receipt without further demand.  Any delay or failure of Owner or its agent to prepare and deliver any bill, statement or invoice shall not constitute a waiver of the right to collect any payment that may have become due during the term of this lease, including, without limitation, retroactive payments for any and all amounts unbilled.  Tenant shall perform such acts, execute such documents and furnish such information as Owner may reasonably require from time to time to substantiate Tenant's compliance with the provisions of this lease on demand, and such obligations shall survive the expiration or sooner termination of this lease.

c.  All payments of Fixed Rent and additional rent pursuant to this lease shall be made by Tenant with checks drawn upon a New York City bank that is a member of the New York Clearing House Association or any successor thereto.  If Owner receives from Tenant any payment less than the full amount of the Fixed Rent and additional rent then due and owing, Tenant hereby waives its right, if any, to designate the items to which such payment shall be applied and agrees that Owner, in its sole discretion, may apply such payment in whole or in part to any Fixed Rent, any additional rent or to any combination thereof then due and payable hereunder.

2

2013                                                                                November 13,

Rider attached to and made a part of lease dated November 13, 2013 by and between Gold Street Properties, LP as Landlord, and Affina Nail Salon, LLC as Tenant, for 88 Fulton Street aka 33 Gold Street, NY NY 10038

d.  If Owner prevails on any cause of action or defense it asserts in any action or proceeding between Owner and Tenant, Tenant shall pay the attorneys' fees, costs and disbursements of Owner for such action or proceeding on demand.  If a default of Tenant causes Owner to prosecute or defend an action or proceeding, Tenant shall pay the attorneys' fees, costs and disbursements of Owner for such action or proceeding on demand.  If Owner suffers, pays or incurs any damages, losses, fees or expenses (including, without limitation, reasonable attorneys' fees and disbursements) due to a default, act, omission or request of Tenant, Tenant shall pay the total amount thereof to Owner on demand.

e.  If all rent is not paid in full within ten (10) days after it is due and payable hereunder, Tenant shall pay Owner interest on late payments that shall accrue daily from the date payment was due to the date Owner collects payment in full.  The rate of interest on late payments shall be equal to an annual rate which shall be four percentage points higher than the highest rate of interest then required to be paid on judgments for sums of money recovered in actions in the Supreme Court of the State of New York, but in no event higher than the highest rate of interest which at such time shall be permitted under the laws of the State of New York.  However, if the collection of interest at the rate specified herein would be usurious or otherwise unenforceable, interest on late payments shall accrue at the highest enforceable rate.  Any rent payments more than ten (10) days past due shall also require Tenant to pay an administrative fee of $250.00 as additional rent.

f.  Unless Owner shall otherwise expressly agree in writing, acceptance of rent from anyone other than Tenant named herein shall not relieve Tenant of any of its obligations under this lease (including, but not limited to, the obligation to pay Fixed Rent and additional rent). Acceptance of rent from anyone other than Tenant shall not be deemed to constitute a consent to assignment of this lease or a subletting or other occupancy of the demised premises (in whole or in part) by anyone other than Tenant or a waiver of any of Owner's rights or Tenant's obligations.   A transfer of control, or a transfer of an interest equal to, or greater than a fifty percent (50%) beneficial interest in Tenant, whether such transfer occurs at one time, or in a series of transactions, and whether of stock, partnership interest or otherwise, by any party in interest shall be deemed an assignment of this lease requiring Owner's prior written consent.

g.  References in this lease to "rent", "Rent", "rents" "Rents", "rental", "Rental","rentals" and "Rentals" shall mean and include Fixed Rent and additional rent.  The Fixed Rent is the minimum rental due and payable without prior demand, offset or deduction.  No decrease in any additional rent for any period shall yield an offset or deduction in any other rental or for any other period.  References in  to Tenant being "in default" and/or "Tenant's breach" or "default" shall mean and include each and every default, breach, misfeasance, nonfeasance, nonpayment, or any other failure of Tenant to perform any of its obligations hereunder.  If Owner gives notice of default and Tenant seeks declaratory relief and Tenant's time to cure is extended pending the outcome of such declaratory judgment action, Tenant shall be deemed to be "in default" under this lease during the pendency of such action for the purposes of those rights that are exercisable by Tenant only if it is not "in default".  All of Tenant's obligations to pay rent, to indemnify Owner and to obtain insurance shall survive the expiration of the term or sooner termination of this lease.

h.  Owner's managing agent may give notices, demands, invoices, statements and/or bills to Tenant in Owner's behalf; any such notice, statement, invoice, demand or bill shall be deemed to have been given by Owner.  Owner's current managing agent is Thurcon Properties, Ltd., Suite GLC, 254 Park Avenue South, New York, NY  10010, until further notice advising Tenant of a change.  Tenant agrees that all of the representations, warranties, covenants, waivers and indemnities made in this lease by Tenant for the benefit of Owner shall also be deemed to inure to and be for the benefit of Owner's agent, and its and/or Owner's, partners, shareholders, directors, officers, employees, agents, attorneys and independent contractors.  References to "Owner's agent" shall include, but not be limited to, Owner's managing agent.

3



November 13,
2013
Rider attached to and made a part of lease dated November 13, 2013 by and between Gold Street Properties, LP as Landlord, and Affina Nail Salon, LLC as Tenant, for 88 Fulton Street aka 33 Gold Street, NY NY 10038

i. "Landlord" and "Owner" shall mean the party that is the lessor under this lease. The term "Impositions" shall mean any taxes, levy, imposition or charge which now or hereafter is assessed, imposed or a lien upon the demised premises or the realty of which they are part pursuant to law, order or regulation made or issued by authorities having jurisdiction.

j. It shall be a default under this lease if Tenant (or any affiliate, subsidiary, successor, shareholder, partner, joint-venturer, parent, guarantor, or any other entity or person legally or contractually related to Tenant ) shall default under any other lease with Landlord for space in the building of which the demised premises forms a part.

k.The provisions of this Article shall supplement (not limit) other provisions of this lease pertaining to the same matters as this Article and related matters.

## 45. TAXES ON TENANT'S PROPERTY OR IMPROVEMENTS

A.  The term "Impositions" shall mean any taxes, levy, imposition or charge which now or hereafter is assessed, imposed or a lien upon the demised premises or the realty of which they are part pursuant to law, order or regulation made or issued by authorities having jurisdiction.  Tenant shall pay to Owner together with each monthly installment of Fixed Rent, an additional amount sufficient to enable Owner to pay, when due, Tenant's Percentage of any Impositions placed upon the demised premises or the realty of which they are part of in accordance to the terms of this lease.  The determination of the amount so payable and of the fractional part thereof to be deposited with  the Owner each month so that the aggregate of such deposits shall be sufficient for this purpose, shall be made by the Owner in its reasonable discretion.  Such amounts shall be held by the Owner in trust and applied to the payment of the Impositions.  If one month prior to the due date of any Impositions the amounts then on deposit with Owner therefore shall be insufficient for the payment of such obligation in full, Tenant within five (5) days after demand, shall deposit the amount of the deficiency with Owner.  Owner shall not be required to segregate the amounts deposited but may commingle same with any other funds held by it. Upon notice to Tenant, Owner shall have the right at any time, and from time to time, to elect not to escrow the Impositions pursuant to the provisions of this Rider. Notwithstanding any such election to discontinue escrowing the Impositions, Owner shall have the right at any time, and from time to time, upon giving notice to Tenant, to resume the payment of the Impositions in accordance with the provisions of this Rider.

B.  Tenant shall pay prior to delinquency all taxes assessed against and levied upon trade fixtures, furnishings, equipment and all other personal property of Tenant contained in or on the demised premises or elsewhere. When possible, Tenant shall cause such trade fixtures, furnishings, equipment and all other personal property to be assessed and billed separately from the Real Property of Landlord. If any of Tenant's personal property shall be assessed with Landlord's Real property, Tenant shall pay Landlord the taxes attributable to Tenant within ten (10) days after receipt of a written statement setting forth the taxes applicable to Tenant's personal property.

## 46. ADDITIONAL RENT FOR REAL ESTATE TAXES

As used herein:

1.   "Real Property" shall mean the land, buildings, appurtenances and improvements of which the demised premises are a part located at **88 Fulton St aka 33 Gold St New York, NY.**

2.  The term "Real Estate Taxes" shall mean 3% (Tenants Proportion) of the total of the increased portion over and above the base years RE taxes of all real property taxes and special or other assessments and/or vault charges levied, assessed or imposed at any time by any governmental authority or against the Real Property, and also any tax or assessment levied, assessed or imposed at any time by any governmental authority in connection with the receipt of income or rents from said Real Property to the extent that same shall be in lieu of all or a

4



2013                                                                November 13,

Rider attached to and made a part of lease dated November 13, 2013 by and between Gold Street Properties, LP as Landlord, and Affina Nail Salon, LLC as Tenant, for 88 Fulton Street aka 33 Gold Street, NY NY 10038

portion of any of the aforesaid taxes or assessments, or additions or increases thereof, upon or against said Real Property and including any Business Improvement District Charges. If, due to a future change in the method of taxation or in the taxing authority, or for any other reason, a franchise, income, transit, profit or other tax or governmental imposition, however designated, shall be levied against Landlord in substitution in whole or in part for the Real Estate Taxes, or in lieu of additions to or increases of said Real Estate Taxes, then such franchise, income, transit, profit or other tax or governmental imposition shall be deemed to be included within the definition of Real Estate Taxes for the purposes hereof. As to special assessments which are payable over a period of time extending beyond the term of this Lease, only a pro rata portion thereof, covering the portion of the term of this Lease unexpired at the time of the imposition of such assessment shall be included in "Real Estate Taxes". If by law, any assessment may be paid in installments, then, for the purposes hereof (a) such assessment shall be deemed to have been payable in the maximum number of installments permitted by law and (b) there shall be included in Real Estate Taxes, for Tax Year in which such installments may be paid, the installments of such assessments so becoming payable during the Tax Year, together with interest payable during such Tax Year. The phrase "Real Estate Taxes payable during the Tax Year" shall mean that amount obtained by multiplying the valuations actually used by the City of New York, of the land and building of the Real Property (whether same be actual or a transitional assessment), for purposes of billing Real Estate Taxes during the Tax Year by the tax rate for each $100.00 for such valuation.

3. "Tax Year" shall mean each period of twelve (12) months, commencing on the first day of July of each period, in which occurs any part of the term of this lease or such other period of 12 months occurring during the term of this lease as hereafter may be duly adopted as the fiscal year for real estate tax purposes of the City of New York.

4. If the amount of the Real Estate Taxes in any Tax Year exceeds the amount of Real Estate Taxes for the "Base Tax Year" (as defined in Article 41), as finally determined, Tenant covenants and agrees that it shall pay as additional rent for each and every such Tax Year the "Tenant's Percentage" (as defined in Article 41) of such difference (which amount is hereinafter called the "Tax Payment"). Should the lease commence or terminate prior to the expiration of a Tax Year, such Tax Payment for the first or last Tax Year, as the case may be, shall be prorated to, and shall be payable on, or as and when ascertained after, the Commencement Date or the Expiration Date as the case may be. Tenant's obligation to pay such additional rent and Owner's obligation to refund overpayments pursuant to this Article, as the case may be, shall survive the expiration or sooner termination of this lease. If the taxes for any Tax Year subsequent to the Base Tax Year, or an installment thereof, shall be reduced before or after such Taxes or such installment shall be paid, Tenant's Percentage of the amount of Owner's reasonable costs and expenses of obtaining such reduction (but not exceeding the amount of such reduction) shall be added to and be deemed part of the Tax Payment for such Tax Year. Payment of additional rent for any Tax Payment due from Tenant shall be made as and subject to the conditions hereinafter provided in this Article.

5. Owner shall be under no obligation to contest the taxes or the assessed valuation of the Real Property for any Tax Year or to refrain from contesting the same, and may settle any such contest on such terms as Owner in its sole judgment considers proper. If Owner shall receive a refund for any Tax Year which a Tax Payment shall have been made by Tenant pursuant to Paragraph A above, Owner shall repay to Tenant, with reasonable promptness, Tenant's Percentage of such refund after deducting from such refund Tenant's Percentage of the costs and expenses (including experts' and attorneys' fees) of obtaining such refund. If the assessment for the Tax Year shall be changed from the amount originally imposed after Owner shall have rendered a comparative statement (as provided in Paragraph C below) to Tenant with respect to a Tax Year, the amount of the Tax Payment shall be adjusted in accordance with such change and Tenant, on Owner's demand, shall pay any increases in additional rent resulting from such adjustment.

5



2013                                                                                          November 13,

Rider attached to and made a part of lease dated November 13, 2013 by and between Gold Street Properties, LP as Landlord, and Affina Nail Salon, LLC as Tenant, for 88 Fulton Street aka 33 Gold Street, NY NY 10038

6. At any time during a Tax Year after the Taxes for such Tax Year became known, Owner may (or else with reasonable promptness after the end of each Tax Year, Owner shall) render to Tenant a comparative statement showing the amount of the Taxes for such Tax Year and the Tax Payment, if any, due from Tenant for such Tax Year, indicating thereon in reasonable detail the computation of such Tax Payment. The Tax Payment shown on such comparative statement may, at Owner's option, be payable in full or in such installments (not more frequent than monthly) as Owner may determine. Tenant shall pay the amount of the Tax Payment shown on such comparative statement (or the balance of a proportionate installment thereof, if only an installment is involved) concurrently with the installment of Fixed Annual Rent then or next due, or if such statement shall be rendered at or after the termination of this lease within 30 days after such rendition.

7. Owner's failure during the lease term to prepare and deliver any notice or statement, or Owner's failure to make a demand, shall not in any way cause Owner to forfeit or surrender Owner's rights to collect any additional rent which may have become due under this Article during the term of this lease and Tenant's liability for the amounts due under this Article shall survive the expiration or termination of this lease. Supplementing the foregoing, Tenant's right to a refund under this Article during the term of this lease, shall survive the expiration or termination of this lease for a period not to exceed one year

## 47. ADDITIONAL ASSIGNMENT AND SUBLETTING PROVISIONS

A. If Tenant shall desire to assign this lease or to sublet the Demised Premises, Tenant shall submit to Owner a written request for Owners consent to such assignment or subletting, which request shall contain or be accompanied by the following information: (i) the name and address of the proposed assignee or sub-tenant; (ii) the terms and conditions of the proposed assignment or subletting; (iii) the nature and character of the business of the proposed assignee or sub-tenant and its purposed use of the Demised Premises; and (iv) banking, financial and other credit information with respect to the proposed assignee or sub-tenant reasonably sufficient to enable Owner to determine the financial responsibility of the proposed assignee or sub-tenant. Owner shall then have the following options, to be exercised by notice ("Exercise Notice") given to Tenant within thirty (30) days after receipt of Tenant's request for consent:

B.     Owner shall, in its sole and absolute discretion, consider it's consent to the proposed assignment or subletting of the entire Demised Premises for the balance of the term of this lease, provided that Tenant is not then in default under this lease and further provided that the following further conditions shall be fulfilled:

C.     "Transaction Expenses", with respect to any assignment or sublease, shall mean the sum of (x) the out-of-pocket brokerage commissions and legal fees paid by Tenant in connection with the negotiation and consummation of the assignment or sublease, (y) the out-of-pocket costs paid by Tenant in order to prepare the Premises (or portion thereof) for the initial occupancy of the assignee or subtenant and (z) any market rent concessions granted to a subtenant or assignee.

1.     If Landlord shall consent to any assignment of this Sublease, then, as consideration therefor, Tenant, within thirty (30) days after the effective date of the assignment, shall (a) deliver to Landlord a written statement, certified by an officer of Tenant, setting forth the Assignment Consideration and the Transaction Expenses with respect to such assignment, and (b) pay to Landlord, as Additional Charges, an amount equal to twenty five (25%) percent of the excess of the Assignment Consideration over the Transaction Expenses.

2.     If Landlord shall consent to any sublease of all or any portion of the Premises, then, as consideration therefor, Tenant, within thirty (30) days after the close of each calendar year during the term of this Sublease in which such sublease is in effect, shall (a) deliver to Landlord a written statement, certified by an officer of Tenant, setting forth the Sublease Consideration for such calendar year and the Transaction Expenses with



November 13,
2013
Rider attached to and made a part of lease dated November 13, 2013 by and between Gold Street Properties, LP as Landlord, and Affina Nail Salon, LLC as Tenant, for 88 Fulton Street aka 33 Gold Street, NY NY 10038

respect to such sublease which have not been applied to offset any Sublease Consideration received in any prior calendar year, and (b) pay to Landlord fifty (50%) percent of the amount by which the Sublease Consideration exceeds such unapplied Transaction Expenses.

3. "Disposition" means an assignment, release or reassignment (in whole or in part) of this lease, a sublease of all or part of the demised premises, or a license, concession or other agreement to permit any or all of the demised premises to be used or occupied by any other party. A sub-sublease, sub-assignment or the cancellation, renewal or other material modification of any Disposition shall be deemed to be a new Disposition. Except if and as provided otherwise in this Article, no Disposition shall be made without Owner's prior written consent. The "Effective Date" of a sublease or assignment means the date on which the sublease term will begin or the assignment will become effective.

4. Every assignment of this lease must provide that the assignee assumes the payment and performance of Tenant's obligations under this lease as if it had executed it as the original Tenant; and that Owner and the assignee may modify this lease in any manner, without notice to the Tenant or Tenant's prior consent, without thereby terminating any assignor's liability under this lease, except that any such modification that, in any way, increases an assignor's liability shall not, to the extent of such increase only, be binding upon the assignor.

5. Every sublease of the demised premises, in whole or in part, shall be subject and subordinate to this lease in all respects and must include the following:

"In the event of a termination of any underlying lease, the subtenant hereunder shall, at the option of the lessor under any such lease ('Underlying Lessor'), attorn to and recognize the Underlying Lessor as sublandlord hereunder and shall, promptly upon the Underlying Lessor's request, execute and deliver all instruments necessary or appropriate to confirm such attornment and recognition. Notwithstanding such attornment and recognition, the Underlying Lessor shall not (i) be liable for any previous act or omission of the sublandlord under this sublease, (ii) be subject to any offset, not expressly provided for in this sublease, which shall have accrued to the subtenant hereunder against said sublandlord, (iii) be bound by any modification of this sublease or by any prepayment of more than one month's rent, unless such modification or prepayment shall have been previously approved in writing by the Underlying Lessor, or (iv) be obligated to afford rights or provide services in excess of or different than those required to be furnished to the sublandlord as the tenant under the Underlying Lease for the space to which this sublease relates. The subtenant hereunder hereby waives all rights under any present or future law to elect, by reason of the termination of such Underlying Lease, to terminate this sublease or surrender possession of the premises demised hereby. This sublease may not be assigned or the premises demised hereunder further sublet, in whole or in part, without the prior written consent of the Underlying Lessor."

6. Tenant cannot seek Owner's consent to any Disposition unless Tenant is not in default and Tenant gives written notice to Owner at least fifteen (15) days, but not more than one hundred twenty (120) days prior to the Effective Date requesting Owner's prior written consent, and such notice is delivered to Owner together with executed duplicate originals of the assignment or sublease and any and all other agreements that will have been made in connection with the Disposition, and the agreements have been signed and delivered subject to receipt of Owner's prior written consent and, Tenant furnishes Owner with such other such other documents and information as Owner may reasonably require to substantiate compliance with the provisions of this lease, to evaluate the financial strength and suitability of the other party to the Disposition, and be fully informed of all relevant facts when it decides whether or not to issue its consent to the Disposition.

7. The foregoing notwithstanding, no Disposition shall be made with any of the following: a prospective tenant (or its designee) who is discussing with Owner (or Owner's agent) its need for space in the Building, or who has

7

November 13,
2013

Rider attached to and made a part of lease dated November 13, 2013 by and between Gold Street Properties, LP as Landlord, and
Affina Nail Salon, LLC as Tenant, for 88 Fulton Street aka 33 Gold Street, NY NY 10038

so negotiated within the previous six (6) months; a current tenant, subtenant or occupant of space in the
Building or the subsidiary, affiliate, parent, or successor thereof, or of any successor or related entity; any
party not financially responsible or unable to adequately evidence financial responsibility to Owner's reasonable
satisfaction; any party that will be engaged in a business or use that is not expressly permitted under this lease,
that will require services from Owner, or place demands on facilities in the Building of a different nature or to a
greater extent than Owner was required to afford before under this lease, that is likely to adversely affect (or
increase burdens on) any operation of Owner or any tenant or occupant of the Building, violate a restrictive
covenant of Owner, change the use of Tenant, contravene any provision of a mortgage, net lease or any other
agreement of Owner or breach this lease.

8.   The foregoing notwithstanding, if a Disposition requires subdividing the demised premises (e.g.,
construction of new demising walls to create a separate independently serviceable unit of space) or other Tenant
Changes, such Disposition and the alterations described therein shall require Owner's prior written consent and
approval.

9.  Except in bulk sale of business, neither Owner's consent to any Disposition, nor any Disposition made at any
time shall release Tenant from its liability for the performance of Tenant's obligations hereunder before, during
or after any such Disposition, or constitute Owner's consent required for any other, or further Disposition, or
Owner's approval of any alterations described therein, or in any other or further Disposition.  Tenant Changes
shall require Owner's separate prior written approval, which will not be unreasonably withheld, as provided
elsewhere in this lease.  Owner may collect payments from an assignee, subtenant or occupant and apply the net
rent received to Tenant's obligations without accepting the payor as a direct tenant of Owner, and without
having such acts constitute Owner's consent to an assignment, subletting or other Disposition, or a release of
Tenant.

10. Tenant shall pay to Owner, promptly upon demand therefor, all costs and expenses (including, but not
limited to, reasonable attorneys' fees and disbursements) incurred by Owner in connection with any Disposition
whether or not Owner consents thereto, which shall not be in excess of $2,000.00 in each instance of
assignment.

11.  If Tenant's interest in this lease is assigned, whether or not in violation of the provisions of this lease,
Owner may: collect rent from the assignee or; if the demised premises or any part thereof are subject to, or
occupied by, or used by, any person other than Tenant, whether or not in violation of this lease, Owner, after
default by Tenant under this lease and expiration and Tenant's time, if any, to cure such default, may collect rent
from the sub-tenant, user or occupant. In either case, Owner shall apply the net amount collected to the rents
reserved in this lease, but neither any such assignment, subletting, occupancy, non use, nor any such collection
or application shall be deemed a waiver of any terms, covenants or conditions of this lease or the acceptance by
Owner of such assignee, sub-tenant, occupant or user as a Tenant, or the consent by Owner to any assignment,
subletting, occupancy or use,  or the listing of any name other than Tenant's (or Tenant's "doing business as"
name) on any door of the demised premises, or on any directory, or on any elevator in the building, or
otherwise, shall not operate to vest in the party so named, any right or interest in this lease or in the demised
premises, or be deemed to constitute, or serve as a substitute, for any prior written consent of Owner required
under this Article, and it is understood that any such listing shall constitute a privilege extended by Owner
which shall be revocable at Owner's will by a notice to Tenant. Tenant agrees to pay to Owner any counsel fees
incurred by Owner in connection with any proposed subletting of the demised premises or any part thereof.
Neither any assignment of Tenant's interest in this lease nor any subletting, occupancy or use of the demised
premises or any part thereof by any person other than Tenant, nor any collection of rent by Owner from any
person other than Tenant as provided in this Paragraph, nor any application of any such rent as aforementioned

8

November 13,
2013

Rider attached to and made a part of lease dated November 13, 2013 by and between Gold Street Properties, LP as Landlord, and
Affina Nail Salon, LLC as Tenant, for 88 Fulton Street aka 33 Gold Street, NY NY 10038

as provided in this Paragraph, shall in any circumstances relieve Tenant of Tenant's obligations fully to observe
and perform the terms, covenants and conditions of this lease on Tenant's part to be observed and performed.

12. Tenant shall not advertise the demised premises for any disposition without Owner's prior written consent
and Tenant shall not permit any advertisement or listing to reveal the rental, nor shall any disposition provide
for an annual rental less than the annual rent then being paid by Tenant for the balance of the Term.  Tenant
shall use the broker designated by Owner as the exclusive agent of Tenant with the exclusive right to effect any
disposition.

## 48. END OF TERM

Tenant acknowledges that possession of the demised premises must be surrendered to Owner at the expiration
or sooner termination of the term of this lease. Tenant agrees to indemnify and save Owner harmless against all
costs, claims, loss or liability resulting from delay by Tenant in so surrendering the demised premises,
including, without limitation, any claims made by any succeeding tenant founded on such delay. The parties
recognize and agree that the damage to Owner resulting from any failure by Tenant to timely surrender
possession of the demised premises as aforesaid will be extremely substantial, will exceed the amount of the
monthly rent and additional rent therefore payable hereunder, and will be impossible to accurately measure,
Tenant therefore agrees that if possession of the demised premises is not surrendered to Owner within 24 hours
after the date of the expiration or sooner termination of the term of this lease, then Tenant shall pay to Owner as
the reasonable value of use and occupancy for each month and for each portion of any month during which
Tenant holds over in the demised premises after expiration or sooner termination of the term of this lease, a sum
equal to two (2) times the aggregate of the annual Fixed Rent and additional rent which was payable under this
lease during the last month of the term hereof. Nothing herein contained shall be deemed to permit Tenant to
retain possession of the demised premises after the expiration or sooner termination of the Term.  In addition,
Tenant shall be liable to Owner for any and all consequential, compensatory and special damages of Owner
arising from or relating to any holding over by Tenant after expiration or sooner termination of the Term.  The
aforesaid provisions of this Article shall survive the expiration or sooner termination of the term of this lease.

## 49. UTILITIES

Supplementing the provisions of Article 12 hereof, Tenant, at its own cost and expense, shall arrange for both
the transmission to the Demised Premises by the utility company servicing the building, of all water, gas and
electricity required by Tenant and the installation of the meters measuring same. Tenant shall pay for all such
water, gas and electricity consumed, as shown on such meters. Tenant shall keep all such meters in good order
and repair during the term hereof. The costs of such meters and service shall be paid by Tenant directly to the
public utility.

A.  As additional rent, Tenant agrees to pay promptly, as and when the same become due and payable, all water
rents, rates and charges, all sewer rents and all charges for electricity, gas, heat, steam, hot, cold and/or chilled
water, air conditioning, ventilating, lighting systems, and other utilities supplied the Demised Premises, whether
prior or during the Term, or subsequent thereto if relating to Tenant's use and/or occupancy of the Demised
Premises. If any such utilities are not separately metered or assessed, Tenant agrees to pay Landlord, as
additional rent, upon submission of a statement for same, the charges for such utilities as determined from time
to time by an independent electrical/utility consultant selected by Landlord and paid for by Tenant, in addition
to Tenant's payments of all separately metered utility charges, which consultant shall determine on the basis of
one hundred twenty five percent of the cost determined under the utility rate schedule(s) (including all
surcharges, demand charges, seasonal rate adjustments, taxes and related  charges) used for the supply of the
utility, at Landlord's option, either (1) to Landlord for the entire Building, as if Landlord were to purchase the

9

2013                                                                November 13,

Rider attached to and made a part of lease dated November 13, 2013 by and between Gold Street Properties, LP as Landlord, and Affina Nail Salon, LLC as Tenant, for 88 Fulton Street aka 33 Gold Street, NY NY 10038

same solely for the demised premises or (2) to Tenant for the demised premises as if Tenant were to purchase solely for the demised premises. Any such utility service supplied by Landlord to the Demised Premises shall be deemed to have been supplied by Landlord as an incidence of the tenancy created by this lease.

B. Cold Water. Landlord shall furnish to the Premises domestic cold water to a point of connection designated by Landlord, which point of connection shall be within or about the Premises. Tenant shall pay monthly to Landlord, as Additional rent hereunder, the amount of Tenant's domestic water usage for the Premises for such month as shown on a submeter with respect to the same, multiplied by the rate that Landlord may, from time to time, charge for furnishing domestic water. Landlord agrees that the rates charged to Tenant will not exceed one hundred twenty five percent (100%) of Landlord's costs of furnishing such services. Tenant, at its sole expense, shall be responsible for distributing water from the aforesaid point of connection.. For any interval during which a water meter is not completely installed, calibrated and operational for all of Tenant's water consumption, Tenant shall pay Landlord, as additional rent, a monthly amount equal to the product of the Agreed Factor times twenty cents ($0.20), subject to a five percent (5%) increase per annum in each successive Lease Year.

C. Hot Water. In addition to subparagraph B of this article, if Landlord shall supply hot water heated to approximately 125 degrees Farenheight to Tenant, Landlord shall do so for Tenant's reasonable use at a point designated by Landlord on or in proximity to the perimeter of the demised premises subject to Tenant's payment for the same as additional rent and Tenant's providing the connections for distribution of the same into the demised premises from Landlord's pipe system. Tenant shall pay Landlord, as additional rent, a monthly amount equal to the product of the "Agreed Factor" times twenty cents ($0.20) if there is no hot water meter (or, if there is a hot water meter, $0.50 per 100 gallons of hot water usage) as the agreed initial rate for the supply of hot water to the demised premises subject to a five percent (5%) increase per annum in each successive Lease Year. Tenant may install at its own expense a hot heater and not be bound by this provision.

D. Limitations. Tenant, at its cost, shall maintain the wires, conduits, fixtures, pipes, valves, ducts and other plumbing connections and other installations which service the Premises. Any utility service shall not exceed the Building's capacity therefor. Tenant shall install and maintain, at Tenant's cost, any meters or submeters. Such meters and other service equipment furnished and installed by Tenant shall, upon installation thereof, become and remain the property of Landlord. In the event that Tenant shall be in default pursuant to the terms of this lease, including specifically the failure to pay for any utilities in accordance with this Article, Landlord may, at its option and in addition to all other rights granted Landlord pursuant to this lease, discontinue the supply and/or service of any or all utilities supplied to Tenant hereunder following ten (10) days notice to Tenant thereof. Tenant's use of any and all utility systems of the Building shall not exceed the capacity of those systems to supply the demised premises and if the nature or capacity of existing utility systems of the Building must be altered or expanded to accommodate Tenant's use in the demised premises, any consent of Landlord thereto shall be conditioned upon Tenant paying Landlord for Landlord to provide, repair, operate, maintain and replace the same from time to time, as additional rent.

E. Interruptions of Service. Landlord shall incur no liability for interruption of the above services regardless of duration, cause or result except to the extent that such interruption shall result from Landlord's negligence or willful misconduct, and, in any event, Landlord shall have no liability for consequential damages.

F. Other Utilities. Tenant shall be solely responsible and shall pay all charges for all utilities furnished to the Premises (in addition to the services to be provided by Landlord under this Article), including, without limitation, telephone, alarm, guard or other security service. The preceding sentence shall not be deemed to constitute Landlord's consent to any such services or the method of furnishing the same. Landlord may, but shall have no obligation to, provide security protection in the Building.



10

2013                                                                      November 13,

Rider attached to and made a part of lease dated November 13, 2013 by and between Gold Street Properties, LP as Landlord, and Affina Nail Salon, LLC as Tenant, for 88 Fulton Street aka 33 Gold Street, NY NY 10038

G. The existing utility lines, wiring, pipes, conduits and the like for the utility services to be made available to Tenant by Landlord subject to the provisions hereof shall be provided, repaired, operated, maintained and replaced as necessary during the Term by Tenant, at its own expense, to the extent, and from the physical point at the perimeter of the demised premises from which, the same serve Tenant exclusively; and the duct, conduit, wiring and any and all other elements of the distribution systems  therefor throughout the demised premises shall be provided, repaired, operated, maintained and replaced as necessary during the Term by Tenant, at its own expense.  Any and all work done by, or for Tenant described in this Article must comply with Laws and the provisions of this lease relating to Tenant's Changes and alterations.

H. Emergency Exits.  Landlord reserves the right at all times to preclude any entrances or exits for ingress or egress between the demised premises and the rest of the Building other than for emergency access as required by Laws.

## 50. CONDITION OF DEMISED PREMISES

A.  Tenant has inspected the demised premises and the Building of which it forms a part, and Tenant shall take possession of the demised premises in its "as is" condition on the Commencement Date.  Owner shall have no obligation to alter, improve, decorate or otherwise prepare the Demised premises for Tenant's occupancy except for the "Landlord's Work" as defined in Exhibit "B", attached hereto and made a part hereof, which Owner shall perform promptly after the Commencement Date, subject only to delays beyond Owner's reasonable control. The foregoing notwithstanding, if there is no Exhibit "B" attached hereto, or if it is blank, Owner shall not be performing any "Landlord's Work".

B.  Tenant is to accept the demised premises and condition of the Building exclusive of light and air rights, and subject to the following: (i) any state of facts an inspection and an accurate survey may show; (ii) covenants, restrictions, easements, agreements and reservations, if any; (iii) present and future building restrictions and regulations and present and future zoning laws, ordinances, resolutions and regulations of the municipality in which the land lies and all present and future ordinances, laws, regulations and orders of all boards, bureaus, commissions and bodies of any municipal, county, state or federal authority, now or hereafter having jurisdiction; (iv) revocable nature of the right, if any, to maintain vaults, vault spaces, basement and sub-basement spaces, areas, marquees or signs, beyond the building lines; (v)  encumbrances on and conditions of title of the demised premises; (vi) violations of law, ordinances, orders or requirements, whether or not of record; (vii) the condition and state of repair of the premises as the same may be on the "Commencement Date" (defined below); (viii) all taxes, duties, assessments, special assessments, water charges and sewer rents and any other Impositions, as hereinafter defined, accrued or unaccrued, fixed or not fixed; and (ix) such damage or destruction of the premises whether total or partial, as may exist on the Commencement Date resulting from fire or any other occurrence of any kind whatsoever.

## 51. TENANT'S CHANGES

1. Supplementing Article 3, Landlord's consent shall not be required for minor changes to the demised premises such as the installation of furniture, furnishings, cabinets and shelves which are not affixed to the realty.  All other renovations, storefront, signage, decorations, additions, installations, improvements and alterations of any kind or nature in or to the demised premises whether performed by Tenant or by Landlord (collectively, "Tenant Changes") shall require the prior written consent of Landlord which, in the case of a non-structural interior Tenant Changes and the "Tenant's Work" shown in Exhibit "C", if any, Landlord agrees not to unreasonably withhold.  In granting its consent to any Tenant Changes, Landlord may impose such conditions as Landlord may reasonably require. Landlord may require Tenant to provide Landlord, at Tenant's sole cost and expense, with lien, completion and performance bonds from a surety for the amount of the cost of the construction, or an

11



2013                                                                                    November 13,

Rider attached to and made a part of lease dated November 13, 2013 by and between Gold Street Properties, LP as Landlord, and
Affina Nail Salon, LLC as Tenant, for 88 Fulton Street aka 33 Gold Street, NY NY 10038

irrevocable standby letter of credit in an amount equal to one and one-half times the estimated cost of such
improvements, to insure Landlord against any liability for mechanics' and materialmen's liens and to insure
completion of the work. In no event shall Landlord be required to consent to any Tenant Changes that would
affect the structure of the Building, the exterior thereof, any part of the Building outside of the demised
premises or the mechanical, electrical, heating, ventilation, air conditioning, sanitary, plumbing or other service
systems and facilities (including elevators) of the Building.  Tenant Changes shall be performed only by
contractors designated or approved by Landlord in accordance with plans, drawings and specifications prepared
by Tenant at its own expense and submitted to, and approved in writing by Landlord.  In connection with
Landlord's review, modification, approval, supervision and/or coordination of Tenant's Changes, Tenant shall,
promptly upon demand, reimburse Landlord for any reasonable out-of-pocket fees, expenses and other charges
incurred by Landlord or its agent in connection with the review, modification and/or approval of such plans and
specifications by Landlord and other professional consultants of Landlord plus a fee of seven percent (7%)
percent of the cost of each such Tenant Change.  Tenant shall promptly provide any such evidence as Landlord may
request to substantiate any such costs incurred by Tenant.  Tenant shall, at its sole cost and expense, in making
any Tenant Change, comply with all requirements of Local Law 5 of 1973 of The City of New York, as
heretofore and hereafter amended, as well as all other applicable Laws.

2.  Nothing in this lease is intended to constitute a consent by Landlord to the subjection of Landlord's or
Tenant's interest in the Building to any lien or claim by any person that performs and/or  supplies any work,
labor, material, service or equipment to Tenant for any Tenant Change.  Landlord hereby notifies all such
persons of such intent and each such person agrees that by performing any Tenant Changes for Tenant it accepts
that Landlord has not granted such consent and that such person shall not have a right to file any lien or claim
against such interest of Landlord or Tenant in the Building or land upon which it is located.  All materials and
equipment to be incorporated in the demised premises as a result of all Tenant Changes shall be new and first
quality; no such materials or equipment shall be subject to any lien, encumbrance, chattel mortgage, title
retention or security agreement. Tenant shall not, at any time prior to or during the term of this lease, directly or
indirectly employ, or permit the employment of, any contractor, mechanic or laborer in the demised premises,
whether in connection with any Tenant Changes or otherwise, if, in Landlord's sole discretion, such
employment will interfere or cause any conflict with other contractors, mechanics, or laborers engaged in the
construction, maintenance or operation of the Building by Landlord, Tenant or others.  In the event of any such
interference or conflict, Tenant, upon demand of Landlord, shall cause all contractors, mechanics or laborers
causing such interference or conflict to leave the Building immediately.  Nothing contained in this lease and no
consent or approval which may be issued by Landlord at any time with respect to Tenant's Changes or
otherwise shall constitute any express or implied representation by Landlord that the demised premises or the
Building (with or without any Tenant Change) will be suitable, feasible or lawful for any general or specific or
requirement of Tenant. Tenant shall, at its sole cost and expense, and in accordance with provisions of this
lease, make such other alterations, improvements and decorations in the demised premises as Tenant may
consider necessary or desirable to prepare the same for Tenant's occupancy during the term of Tenant's lease.

3.  In no event shall Owner be required to consent to any Tenant Change which would physically affect any part
of the building outside the demised premises or would adversely affect the proper functioning  of the
mechanical, electrical, sanitary or other service system of the building. At the time Tenant requests Owner's
written consent to any Tenant's Changes, Tenant shall deliver to Owner detailed plans and specifications
thereof. Tenant shall pay to Owner any reasonable fees or expenses incurred by Owner in connection with
Owner submitting such plans and specifications, if it so chooses, to an architect or engineer selected by Owner
for review or examination. Owner's approval of any plans or specifications does not relieve Tenant from the

12

November 13,
2013
Rider attached to and made a part of lease dated November 13, 2013 by and between Gold Street Properties, LP as Landlord, and Affina Nail Salon, LLC as Tenant, for 88 Fulton Street aka 33 Gold Street, NY NY 10038

responsibility for the legal sufficiency and technical competency thereof. Tenant, before commencement of any Tenant's Changes, shall:

a.    Obtain the necessary consents, authorizations, permits and licenses from all Federal, State and/or Municipal Authorities having jurisdiction over such work.

b.    Furnish to Owner a certificate or certificates of Workmen's Compensation Insurance covering all persons who will perform Tenant's Changes for Tenant or any contractor, subcontractor or other person.

c.    Furnish to Owner an original Policy of Public Liability Insurance covering Owner in limit of not less than Three Million Dollars ($3,000,000.00) dollars for injuries or damages to personal property, in a company approved by Owner. Such policy shall be maintained at all times during the progress of Tenant's Changes and until completion thereof, and shall provide that no cancellation shall be effective unless ten (10) days prior written notice has been given to Owner.

d. Tenant agrees to indemnify and hold Owner harmless from and against any and all bills for labor performed and equipment, fixtures and materials furnished to Tenant and from and against any and all liens, bills or claims therefore or against the demised premises or the Real Property and from and against all losses, damages, costs, expenses, suits and claims whatsoever in connection with Tenant's Changes. The cost of Tenant's Changes shall be paid for in cash or its equivalent, so that the demised premises and the Real Property shall at all times be free of liens for labor and materials supplied or claimed to have been supplied.

e. Tenant, at its own expense, shall cause any Tenant's Changes consented to by Owner to be performed in compliance with all applicable requirements of insurance bodies having jurisdiction and in such manner as not to interfere with, delay or impose any additional expense upon the Owner in the maintenance or operation of the building and so to maintain harmonious labor relations in the building.

f. If the performance of the Tenant's Change shall interfere with the comfort and/or convenience of the other Tenants in the building or shall cause damage to or otherwise interfere with the occupancy of adjacent buildings, Tenant shall, upon Owner's demand, remedy or remove the condition or conditions complained of. Tenant further covenants and agrees to indemnify and hold Owner harmless from and against any and all claims, losses, damages, costs, expenses, suits and demands whatsoever made or asserted against Owner by reason of the foregoing.

## 52. TENANT'S WORK AND INSTALLATION

Tenant covenants and agrees that it shall perform the "Tenant's Work", including, but not limited to, all items of construction as set forth in Exhibit "C", attached hereto and made a part hereof, as well as any and all other or additional work necessary or desirable for Tenant's use of the demised premises, and that Tenant's Work shall be carried out in compliance with Laws and subject to the provisions of this lease. Tenant agrees to commence Tenant's Work within fifteen (15) days after execution of this lease, it being understood that Tenant shall pay the rent as specified in Article 41 and elsewhere in this lease hereof irrespective of whether or not construction has been completed at the demised premises.

A.    Tenant covenants and agrees that all materials, work, labor, fixtures and installations required for completion of the demised premises in accordance with Tenant's business requirements, shall be performed and provided by Tenant, at Tenant's sole cost and expense. All such work and installations of Tenant shall be made in a good workmanlike manner and shall comply with all rules and regulations of governmental authorities having jurisdiction therein and Tenant shall, at its sole cost and expense, procure all necessary and required permits, approvals and licenses in connection with Tenant's work and the operation of Tenant's business.



13

2013                                                                                     November 13,

Rider attached to and made a part of lease dated November 13, 2013 by and between Gold Street Properties, LP as Landlord, and Affina Nail Salon, LLC as Tenant, for 88 Fulton Street aka 33 Gold Street, NY NY 10038

B.      Plans and specification for the interior of the demised premises and installations therein shall be prepared by Tenant, at Tenant's sole cost and expense, and all such plans and specifications shall be subject to the prior written approval of Owner, which prior written approval shall not be unreasonably withheld.

C.      Tenant shall not do any work or request a permit or authorization for any work if same might cause a delay in the issuance of the Certificate of Occupancy for the demised premises if required by law, and in such instance such work and any request for a permit or authorization to do such work shall be deferred until after issuance of the Certificate of Occupancy for the demised premises.

D.      If in the event of performing Tenant's work pursuant to this lease; (i) Tenant shall use only such contractors which Owner shall approve, which approval shall not be unreasonably withheld or delayed; and (ii) Owner will permit the entry of Tenant, its representatives and such contractors into the demised premises for these purposes, prior to the commencement of the term of said Lease, and while the contractors are working at the Premises. This license to enter before commencement of the term is conditioned upon Tenant's workmen, mechanics and contractors working in harmony, and not interfere with the workmen, mechanics and contractors of the Owner. Such entry shall be deemed to be under all terms, covenants, provisions and conditions of the said Lease, except the covenant to pay rent and additional rent. All Tenant's materials, work, installations and decorations of any nature brought upon or installed in the demised premises before the commencement of the term of said Lease shall be at Tenant's risk, and neither Owner nor any party acting on the Owner's behalf shall be responsible for any damage thereto or loss or destruction thereof, except as a result of the negligent acts or omissions of Owner, its agents, servants, contractors or invitees.

E.      Tenant, or any contractor or contractors employed by Tenant, or any other persons who will perform work or install equipment for Tenant, shall first be approved by Owner and shall be fully covered by Workmen's Compensation Insurance. Tenant further covenants, at its sole cost and expense, to obtain and maintain at all times during the progress of such work and until completion thereof, public liability insurance policies covering Owner and having limits of not less than $3,000,000.00 for injury or death for any one person, $3,000,000.00 for injury or death arising out of any one occurrence and $1,000,000.00 with respect to property damage, without any deductible amount. Said policy or policies to be in an insurance company or companies approved by Owner, and the original policies shall be delivered to Owner prior to the commencement of any work hereunder.

F.      Owner may, from time to time during the progress of such work, inspect the demised premises to determine whether or not the work  is being performed satisfactorily and in accordance with the plans and specifications. If Owner notifies Tenant that the work is not being performed satisfactorily and/or in accordance with the plans and specifications, and such deficiencies or deviations from the plans and specifications are specified, the Tenant will promptly take necessary steps to correct the same.

G.      Tenant's contract with its contractors and/or other persons shall provide that such contractors and/or other persons shall look solely to the Tenant for payment and will hold the Owner and the building free from all liens and claims of all persons furnishing labor and materials thereof.

H.      Provided that, in the reasonable opinion of the Owner's architect, it is necessary in order to comply with applicable local, state or federal rules or regulations, then upon the written request of the Owner, Tenant shall obtain and furnish to Owner all appropriate or customary certificates from all authorities having jurisdiction, including, but not limited to the Board of Fire Underwriters, to the effect that such work has, in all respects, been performed and completed in accordance with all laws, rules or regulations of all governmental or quasi-governmental authorities having jurisdiction.

14



2013                                                                                    November 13,

Rider attached to and made a part of lease dated November 13, 2013 by and between Gold Street Properties, LP as Landlord, and
Affina Nail Salon, LLC as Tenant, for 88 Fulton Street aka 33 Gold Street, NY NY 10038

I.      Fixtures, if any, furnished or installed by Tenant, the cost of which is borne by Tenant, shall become the
property of Owner and shall not be removed by Tenant. Anything herein contained to the contrary
notwithstanding, it is understood and agreed that all structural improvements, all plumbing lines and equipment,
all electrical wiring conduit and equipment, all air conditioning, and all heating or ventilating installations made
by Tenant regardless of the contribution for reimbursement by Owner, shall forthwith become part of the
building and the property of the Owner.

J.      All work including, but not limited to, utilities, heating, ventilation and air conditioning, plumbing and
electrical work shall be in accordance with all applicable codes and standards, and shall be in accordance with
specifications and instruction provided by the Owner, or shall be submitted by the Tenant for the Owner's
written approval. Tenant shall pay all expenses incurred by Owner in connection with the review of the
aforesaid plans and specifications, including all fees and expenses payable by Owner to its architects and
engineers, if any.

K.      All interior finish work installed by the Tenant, including but not limited to office layout, and finish
materials, shall be in accordance with all applicable codes and standards, and plans and specifications for such
work shall be submitted by the Tenant for the Owner's written approval. Tenant shall pay all expenses incurred
by Owner in connection with the review of the aforesaid plans and specifications, including all fees and
expenses payable by Owner to its architects, if any.

## 53. MECHANICS LIENS

A.      Tenant shall have neither the power nor the authority to perform any or make any contract which may
create or be the foundation for any lien upon the Real Property of Owner, the demised premises or Owner's
building and improvements, it being  agreed that, should the Tenant cause any alterations, change additional
improvements or repairs to be made to the demised premises, or materials furnished or labor performed therein
or thereon, neither Owner or the demised premises shall, under any circumstances, be liable for the payment of
any expenses incurred or for the value of any such work done or material furnished to the demised premises or
any part thereof, but all such alterations, changes, additions, improvements and repairs and materials and labor
shall be at Tenant's sole expense, and Tenant shall be solely and wholly responsible to contractors, laborers, and
materialmen furnishing labor and material to the demised premises and building or any part thereof, for or on
behalf of Tenant.

B.      Tenant shall not suffer to permit any mechanic's liens to be filed against the fee ownership of the
demised premises nor against the Tenant's leasehold interest in the demised premises, by reason of  work, labor,
service of materials supplied or claimed to have been supplied to Tenant or to any occupant of the demised
premises. If any such mechanic's lien shall at any time be filed against the demised premises or the building and
improvements thereon, Tenant shall, at its own cost and expense, cause the same to be canceled and discharged
of record by surety bond or appropriate cash deposit within 10 days after the date of filing the same and notice
thereof to Tenant, and Tenant shall indemnify  and hold harmless Owner from and against any and all costs,
expenses, claims, losses or damages resulting therefrom or by reasons thereof.

C.      Tenant shall also defend on behalf of Owner, at Tenants sole cost and expense, any action, suit or
proceedings which may be brought thereon or for the enforcement of such liens or orders, and Tenant shall pay
any damages and satisfy and discharge any judgment entered thereon and hold harmless Owner from any claims
or damage resulting therefrom.

D.      If Tenant shall fail to discharge such mechanics lien within such period, then, in addition to any other
right or remedy of Owner, Owner may, but shall not be obligated to, discharge the same either by paying the
amount claimed to be due or by procuring the discharge of such lien by deposit in court or bonding, and in any

15

November 13, 2013

Rider attached to and made a part of lease dated November 13, 2013 by and between Gold Street Properties, LP as Landlord, and Affina Nail Salon, LLC as Tenant, for 88 Fulton Street aka 33 Gold Street, NY NY 10038

such event, Owner shall be entitled, if Owner so elects, to compel the prosecution of an action for the foreclosure of such mechanic's lien by the lien and to pay the amount of the judgment, if any, in favor of the lien or, with interest, costs and allowances.

E.    Any amount paid by Owner for any of the aforesaid charges mentioned above and all legal and other expenses of Owner, including counsel fees, in defending any such action in or about procuring the discharge of said lien, with all necessary disbursements in connection therewith, with interest thereon at the then maximum legal rate of interest from the date of payment, shall be repaid within a period of 20 days after written demand therefore by Owner to Tenant, and may be treated as additional rent payable with the next installment of Fixed Annual Rent.

F.    Prior to the commencement of any work in the demised premises by the general contractor, if any, employed by Tenant or by any sub-contractors employed by such general contractor, if any, or sub-contractors employed by Tenant, Tenant shall:

(i) furnish Owner with Tenant's written statement setting forth the name and business address of the Tenants general contractor, if any, or sub-contractor employed by Tenant.

(ii) obtain and furnish to Owner a written list of all sub-contractors employed or to be employed by Tenant's general contractor, if any, and certified by any such general contractor.

## 54. ESTOPPEL CERTIFICATES BY TENANT

At any time and from time to time, Tenant, for the benefit of Owner and the lessor under any ground lease or underlying lease or the holder of any leasehold mortgage affecting any ground lease or underlying lease, or of any fee mortgage covering the land or the land and building, on at least five (5) days prior written request by Owner, Will deliver to Owner a statement certifying that this lease is not modified and is in full force and effect (or if there shall have been modifications, that same is in full force and effect as modified, and stating the modifications), the Commencement and Expiration Dates hereof, the dates to which the fixed rent, additional rent and other charges have been paid, and whether or not, to the best knowledge of the signer of such statement, there are any then existing defaults on the part of either Owner or Tenant in the performance of the terms, covenants and conditions of this lease, and if so, specifying the defaults of which the signer of such statement has knowledge.

## 55. INDEMNIFICATION OF OWNER

Tenant shall indemnify and save harmless Owner and its agents against and from any and all claims arising from the conduct of business in or management of the demised premises or any work or thing whatsoever done, or any condition created in or about the demised premises during the term of this lease or during the period of time, if any, prior to the Commencement Date that Tenant may have been given access to the demised premises pursuant to this lease, or arising from any negligent or otherwise wrongful act or omission of Owner, Tenant or any of its subtenants or licensees or its or their employees, agents, or contractors, and all costs, expenses and liabilities incurred in or in connection with each claim or action or proceeding brought thereon. In case any action or proceeding be brought against Owner by reason of any such claim, Tenant, upon notice by Owner, shall resist and defend such action or proceeding at Tenant's sole cost and expense by counsel chosen by Tenant who shall be satisfactory to Owner. Tenant or its counsel shall keep Owner fully apprised at all time of the status of such defense.

16

2013                                                                                        November 13,

Rider attached to and made a part of lease dated November 13, 2013 by and between Gold Street Properties, LP as Landlord, and
Affina Nail Salon, LLC as Tenant, for 88 Fulton Street aka 33 Gold Street, NY NY 10038

(e)     Tenant hereby releases Owner with respect to any claim (including a claim for negligence) which it
might otherwise have against the Owner for loss, damage or destruction with respect to its property (including
rental value or business interruption) occurring during the term of this lease.

(f)     The waiver of subrogation or permission for release referred to in sections D and E shall extend to the
agents of Owner and its employees. The release provided for in section D and E shall likewise extend to such
agents, employees and other persons and entities, if and to the extent that such waiver or permission is effective
as to them.

(g)     All policies of insurance provided for herein shall name the Owner and Tenant as the insured's, as their
respective interests may appear, and shall, whenever appropriate, and if requested by the Owner, include the
interest of the holder of any mortgage now or hereafter placed on the fee.

(h)     Each policy or certificate shall contain an agreement by the insurer that such policy shall not be canceled
without written notice at least ten days prior to cancellation date delivered to the Owner and any mortgagee
named therein.

(i)     All policies of insurance that are required to be obtained and maintained as herein provided shall be
delivered to the Owner prior to the commencement of the term of the Lease hereof, and the renewals thereof
shall be delivered to the Owner not less than twenty days prior to the Expiration Date of any such policy with
proof of the premium thereof.

j)      Tenant shall observe and comply with the requirements of all policies of public liability, fire and all
other policies of insurance at any time in force with respect to the premises

(k)     In the event that the insurance premiums for the Building are increased for any reason whatsoever in an
amount greater than the insurance premium in effect on the Commencement Date the Tenant agrees to pay
Tenant's percentage of any such increases as additional rent on the first day of the next ensuing month after
demand. In addition, as an express inducement to Owner to enter into this lease, Tenant agrees that it will pay
all (100%) insurance premium increases for the Building due to the Tenant's use and/or nature of Tenant's
business.

(l)     Tenant agrees to supply Owner with Certificates of Insurance specifically naming Owner and Tenant or
any of their subtenants or licensees or its or their employees, agents, contractors, as protected against any claims
by contractors, sub-contractors, etc.

## 58. SUBORDINATION, ATTORNMENT, NOTICE TO LESSORS AND MORTGAGEE

A.     This lease, and all the rights of Tenant hereunder, are and shall be subject and subordinate in all respects
to all present and future ground leases, over-riding leases and underlying leases and/or grants of term of the
Real Property and/or the Building or the portion thereof in which the demised premises are located in whole or
in part now or hereafter existing and to all mortgages and Building loan agreements, including leasehold
mortgages and Building loan agreements, which may now or hereafter affect the Real Property and/or the
Building and/or of such leases, whether or not such mortgages shall also cover other lands and/or Buildings, to
each and every advance make or hereafter to be made under such mortgages, and to all renewals, modifications,
replacements and extensions of such leases and such mortgages and spreaders, consolidations and correlation's
of such mortgages. This Article shall be self-operative and no further instrument of subordination shall be
required. In confirmation of such subordination, Tenant shall promptly execute and deliver, at its own cost and
expense, any instrument, in recordable form if required, that Owner, the lessor of any such lease or the holder of
any such mortgage or any of their respective successors in interest may request to evidence such subordination,
and Tenant hereby constitutes and appoints Owner attorney-in-fact for Tenant to execute any such instrument



18

November 13,
2013
Rider attached to and made a part of lease dated November 13, 2013 by and between Gold Street Properties, LP as Landlord, and Affina Nail Salon, LLC as Tenant, for 88 Fulton Street aka 33 Gold Street, NY NY 10038

for and on behalf of Tenant. The leases to which this lease is, at the time referred to, subject and subordinate pursuant to this Article are hereinafter sometimes called "superior leases" and the mortgages to which this lease is, at the time referred to. Subject and subordinate are hereinafter sometimes called "superior mortgages" and the lessor of a superior lease or its successor in interest at the time referred to is hereinafter sometimes called a "lessor".

B.     This lease shall not terminate or be terminable by Tenant by reason of any termination of any superior lease, by summary proceedings, or otherwise, unless the lessor under the terminated superior lease shall elect in connection therewith to terminate this lease and the right of Tenant to possession of the demised premises; Tenant agrees without further instruments of attornment in such case, to attorn to such lessor, to waive the provisions of any statue or rule of law now or hereafter in effect which may give or purport to give Tenant any right of election to terminate this lease or to surrender possession of the demised premises in the event such superior lease is terminated, and that unless and until said lessor shall elect to terminate this lease and extinguish the leasehold estate demised hereunder, this lease shall not be affected in any way whatsoever by any such proceeding or termination. Tenant shall take no steps to terminate this lease, whether or not such superior lease be terminated, without giving written notice to such lessor, and a reasonable opportunity to cure (without such lessor being obligated to cure), any default on the part of Owner under this lease.

C.     If the holder of any superior mortgage, or anyone claiming by, through or under such holder, shall become the lessee under the ground lease as a result of foreclosure of the superior mortgage, or by reason of an assignment of the lessee's interest under the ground lease and the giving of a deed to the Building in lieu of foreclosure, there shall be no obligation on the part of such person succeeding to the interest of the lessee under the ground lease to comply with, observe or perform any obligations as sublessee, tenant or landlord under any superior lease.

D.     If, in connection with the procurement, continuation of renewal of any financing for which the Real Property and/of the Building or the interest of the lessee therein under a superior lease represents collateral in whole or in part, an institutional lender shall request reasonable modifications of this lease as a condition of such financing, Tenant will not withhold its consent thereto provided that such modifications do not materially increase the obligations of Tenant under this lease or materially and adversely affect any rights of Tenant under this lease.

## 59. MAINTENANCE OF FIXTURES AND EQUIPMENT

Tenant, at Tenant's sole cost, risk and expense, shall provide, maintain, repair, operate and replace as necessary to keep in good working order and condition any and all heating, ventilating, air conditioning and any and all other electrical and mechanical fixtures, facilities, installations and equipment now or hereafter situated in, or serving the demised premises. Tenant shall be responsible for any damages to said equipment and shall promptly repair or replace same with new comparable equipment. Tenant covenants and represents that it has inspected the demised premises and is fully familiar with the condition of the aforementioned fixtures, facilities, installations and equipment and agrees to accept the same if and as the same now exist in their present, "as is" condition, subject only to "Landlord's Work", if any, set forth in Exhibit "B". Tenant covenants and agrees to do the following at its own expense:

A.     Install a ventilating system which (a) employs "state of the art" charcoal and water purification technology to minimize, to the maximum extent possible, all smoke, odors and fumes and prevent same from emanating from the demised premises and (b) will neither require fresh air and exhaust ducting which will penetrate the facade of the Building nor require the running of a chimney or flue through the Building. Supplementing the foregoing, Owner shall not unreasonably withhold its consent to such Tenant Change if (i)

19



2013
Rider attached to and made a part of lease dated November 13, 2013 by and between Gold Street Properties, LP as Landlord, and Affina Nail Salon, LLC as Tenant, for 88 Fulton Street aka 33 Gold Street, NY NY 10038

Tenant submits to Owner drawings for such Tenant Change, prepared by a duly licensed engineers, and approved by the City of New York and (ii) Tenant otherwise complies with all of the terms and conditions of this lease respecting such Tenant Change.

B.     Maintain, service and repair the ventilating system which services the demised premises and make all replacements thereto during the term, including installation of charcoal filters when required. Without limiting the foregoing, Tenant will maintain such ventilating system and any ducts connecting thereto in such manner so as not to interfere with the Building ventilating system now servicing the lavatories throughout the Building.

C.     When required during the term, provide, to Owner's reasonable satisfaction, chemical treatment for the exhaust system, to minimize to the maximum extent possible, all odors and fumes.

D.     Keep the drain, waste and sewer pipes and connections with mains free from obstruction and, maintain grease traps (to be installed by Tenant at its expense) in the main soil lines of the demised premises for the purpose of preventing accumulation of grease in the Building sump pit.

E.     Keep all refuse, rubbish and garbage in closed plastic containers until removal and provide for the removal in such manner as not to block the sidewalk or Building entrance at any time. No refuse, garbage cans or receptacles shall be allowed outside the demised premises between the hours of 8:00 a.m. and 12:30 a.m. Supplementing the foregoing, the storage and removal of Tenant's refuse, rubbish and garbage shall at all times be conducted in a manner satisfactory to Owner and in coordination and cooperation with Owner's Building maintenance personnel, so as to minimize the annoyance or interference to the Building and its occupants and to the occupants of adjoining Buildings.

F.     Keep no noxious chemicals or inflammable material in the demised premises.

G.     Provide such other exhaust, cleaning or similar systems which shall be necessary for the prevention of any grease, smoke, fumes, odors or other annoying substance from emanating from the demised premises to the annoyance of other occupants of the Building or of adjoining premises.

H.     Cause all deliveries, and all refuse, rubbish and garbage pickups, to be made through the entrance designated therefor on Exhibit "A" attached hereto, or through such other entrance as Owner may designate from time to time. Tenant shall contract and pay for all refuse, rubbish and garbage removal. Supplementing the foregoing, any such contract shall expressly provide that (i) refuse, rubbish and garbage removal shall occur only between the hours of 1:00 a.m. and 8:00 a.m., (ii) such removal shall at all times be in coordination and cooperation with Owner's Building maintenance personnel and (iii) such removal shall be conducted in a manner designated to minimize the annoyance or interference to the Building and its occupants and to the occupants of adjoining Buildings.

I.     Cause the demised premises to be thoroughly exterminated whenever necessary to avoid vermin and to abide by all governmental regulations concerning same. Tenant shall furnish Owner with a copy of its contract for exterminating services, which contract shall be written with a recognized exterminating company.

J.     Take any and all necessary steps to eliminate unreasonable noise, including the sound insulation of ceilings and walls.

K.     Fire proof all draperies and curtains in the demised premises and submit to Owner, upon request, current certificates evidencing such fire proofing.

L.     In the event that any time during the term there shall be any violation of the foregoing covenants of this Article, or that notwithstanding the performance by Tenant of such covenants, additional service, equipment or facilities shall be necessary to accomplish the purposes of this Article, Owner shall have the right upon 15 days'

20



2013
Rider attached to and made a part of lease dated November 13, 2013 by and between Gold Street Properties, LP as Landlord, and
Affina Nail Salon, LLC as Tenant, for 88 Fulton Street aka 33 Gold Street, NY NY 10038

prior written notice to Tenant (except that no prior notice shall be required in cases of emergency) to perform
any of such obligations or to provide any such additional service or equipment to accomplish such purposes and
Tenant shall reimburse Owner for any expenditures made by Owner in connection therewith, within 15 days
after receipt by Tenant of a statement from Owner thereof. Such obligations shall be deemed to be additional
rent hereunder and collectable by Owner as such. All work required to be done by Tenant pursuant to the
provisions of this Article shall be done in strict compliance with the provisions and conditions of this lease and
Laws.

## 60. COMPLIANCE WITH LAWS

A.     As used herein, "Laws" shall mean and include all laws, rules, regulations, ordinances, codes and orders
of all governmental and quasi-governmental authorities, agencies and departments, and the directions,
provisions and requirements thereof and of utility companies, labor agreements and insurance boards, policies,
carriers, underwriters and rating bureaus. Throughout the term of this lease, Tenant, at its sole cost and expense,
shall promptly comply with all present and future Laws, whether foreseen or unforeseen, ordinary as well as
extraordinary, which may be applicable to the demised premises and the sidewalks, alleyways, passageways,
curbs and vaults adjoining the same, or to the use or manner of use of the demised premises or the owners,
tenants or occupants thereof, or to the business conducted therein, whether or not such law, ordinance, order,
rule regulation or requirement shall affect the interior or exterior of the demised premises, necessitate structural
changes or improvements  or interfere with the use and enjoyment  of the demised premises, and whether or not
such compliance is required by reason of any condition, event or circumstance existing prior to or after the
commencement of the term of this lease.

B.   Tenant acknowledges that neither Landlord nor Landlord's agent has made any representation or warranty
as to the suitability of the demised premises for the conduct of Tenant's business. Tenant shall assume all risks
associated with changes in any Laws which changes, affects or restricts Tenant's use of the demised premises.
Nothing contained in this lease and no consent or approval which may be issued by Landlord at any time with
respect to Tenant's alterations or otherwise shall constitute any express or implied representation by Landlord
that the demised premises, in whole or in part, with or without any alteration, will comply with Laws and/or be
suitable, feasible or lawful for any general or specific use, purpose or requirement of Tenant. Tenant shall
repair, replace and maintain any thing altered, provided or damaged by Tenant or its agents, employees,
officers, contractors, licensees and invitees as necessary to keep the same in good working order and condition
at Tenant's expense to Landlord's reasonable satisfaction and in compliance with all Laws and applicable
provisions of this lease.

C. Tenant shall be responsible for securing any and all permits, certificates, licenses and approvals required by
Laws for the conduct of its business. Tenant shall give prompt notice to Owner of any notice it receives of the
violation of any law or requirement of any public authority with respect to the demised premises or the use or
occupancy thereof. Tenant shall promptly comply with all present and future laws, orders and regulations of all
state, federal, municipal and local governments, departments, commissions and boards or any direction of any
public officer pursuant to the law, and all orders, rules and regulations of the New York Board of Fire
Underwriters or any similar body which shall impose any violation, order or duty upon Owner or Tenant with
respect to the demised premises of the Building.

D.  Notwithstanding anything to the contrary set forth in this lease, Tenant, in all events , and at Tenant's sole
cost, risk and expense shall comply with all provisions of the Americans With Disabilities Act hereinafter
referred to as "A.D.A." and any successor law of like import then enforce insofar as it relates to the demised
premises including, but not limited to the performance of all Alterations structural and otherwise, foreseen and
unforeseen in order to so comply.

21

November 13,
2013

Rider attached to and made a part of lease dated November 13, 2013 by and between Gold Street Properties, LP as Landlord, and Affina Nail Salon, LLC as Tenant, for 88 Fulton Street aka 33 Gold Street, NY NY 10038

E.  Tenant shall not do or permit any act or thing to be done in or to the demised premises which is contrary to Laws, or which would invalidate or be in conflict with public liability, fire or other policies of insurance at any time carried by or for the benefit of Owner with respect to the demised premises or the Building of which the demised premises form a part, or which shall or might subject Owner to any liability or responsibility to any person or for the property damage, nor shall Tenant keep anything in the demised premises except as now or hereafter permitted by the Fire Department, Board of Fire Underwriters, Fire Insurance Rating Organization or other authority having jurisdiction and then only in such manner and such quantity so as not to increase the rate of fire insurance applicable to the Building, nor use the demised premises in a manner which will increase the insurance rate for the Building or any property located therein over that in effect prior to the commencement of Tenant's occupancy. Tenant shall pay all costs, expenses, fines, penalties and damages, which may be imposed upon Owner by reason of Tenant's failure to comply with the provisions of this Article and if by reason of such failure, the fire insurance rate shall, at the beginning of this lease or at any time thereafter, be higher than it otherwise would be, then Tenant shall reimburse Owner, as additional rent hereunder, for that portion of all fire insurance premiums thereafter paid by Owner which shall have been charges because of such failure by Tenant, and shall make such reimbursement upon the first day of the month following such outlay by Owner. In any action or proceeding wherein Owner and Tenant are parties, a schedule of "make-up" or rate for the Building or demised premises issued by the New York Fire Insurance Exchange or other body making fire insurance rates applicable to said premises, shall be conclusive evidence of the facts therein stated and of several items and charges in the fire insurance rate then applicable to said premises. Tenant shall not place a load upon any floor of the demised premises exceeding the floor load per square foot area which it was designed to carry and which is allowed by law. Owner reserves the right to prescribe the weight and position of all safes, business machines and mechanical equipment. Such installations shall be placed and maintained by Tenant, at Tenant's expense, in settings sufficient, in Owner's judgment, to absorb and prevent vibration, noise and annoyance.

## 61. RENT CONTROL AND/OR COMMERCIAL RENT STABILIZATION

If at the commencement of, or at any time or times during the term of this lease, the rents reserved in this lease shall not be fully collectible for reason of any Federal, State or City law, proclamation, order or regulation, or direction of a public officer or body pursuant to law, Tenant shall enter into such agreements and take such other steps as Owner may request and, as may be legally permissible to permit Owner to collect the maximum rents which may from time to time during the continuance of such legal rent restriction to be legally permissible (and not in excess of the amounts reserved therefore under this lease). Upon the termination of such legal rent restriction prior to the expiration of the term of this lease; (a) the rents shall become and thereafter be payable hereunder in accordance with the amounts reserved in this lease for the periods following such termination and (b) Tenant shall pay to Owner, if legally possible, an amount equal to (i) the rents which would have been paid pursuant to this lease but for such legal rent restriction  less, (ii) the rents paid by Tenant to Owner during the period or periods such legal rent restriction was in effect.

## 62. CONSENTS

If in this lease it is provided that Owner's consent or approval as to any matter will not be unreasonably withheld, and it is established by a court or body having final jurisdiction thereover that Owner has been unreasonable, the only effect of such finding shall be that Owner shall be deemed to have given its consent or approval; but Owner shall not be liable to Tenant in any respect, including claims for money damages, by reason of the withholding of its consent.

## 63. BINDING EFFECT



22

Case 1:19-cv-09674-JMF-KNF   Document 100-16   Filed 12/02/20   Page 30 of 52

2013                                                                                    November 13,

Rider attached to and made a part of lease dated November 13, 2013 by and between Gold Street Properties, LP as Landlord, and Affina Nail Salon, LLC as Tenant, for 88 Fulton Street aka 33 Gold Street, NY NY 10038

It is specifically understood and agreed that this lease is offered to Tenant for signature by the managing agent of the Building solely in its capacity as such agent and subject to Owner's acceptance and approval, and that Tenant shall have affixed its signature hereto with the understanding that such act shall not, in any way, bind Owner or its agents until such time as this lease shall have been approved and executed by Owner and delivered to Tenant.

## 64. LATE CHARGES

A.     If Tenant shall fail to pay any installment of Fixed Annual Rent or any amount of additional rent for more than 10 days after the same shall have become due and payable, Tenant shall pay Owner a late charge of six cents (6¢) for each dollar of the amount of such Fixed Annual Rent or additional rent as shall not have been paid to Owner within such 10 days after becoming due and payable. Such late charge shall be without prejudice to any of Owner's rights and remedies hereunder or at law or in equity for non-payment or late payment of rent and shall be in addition thereto.

B.     In every case in which Tenant is required by the terms of this lease to pay to Owner a sum of money and payment is not made within 10 days after the same shall become due, interest shall be payable on such sum or so much thereof as shall be unpaid from the date it becomes due until it is paid. Any late charge paid pursuant to Paragraph A of this Article shall be set off against interest accrued hereunder for the same late payment but not in excess of the amount of such accrued interest.

## 65. ADDITIONAL SECURITY

A. In the event Tenant shall fail to pay Owner any rent, additional rent within ten (10) days after the date the same becomes due in two (2) successive months, then Tenant shall, within ten (10) days after demand by Owner, deposit with Owner, the sum of the equivalent of two months rent, which sum shall be held by Owner as additional security deposit in accordance with the provisions of the provisions hereof. The exercise by Owner of its rights under this Article shall not preclude Owner from exercising any other rights or remedies which it may have under this lease by reason of the default of Tenant in paying such rent or additional rent when due.

B. In lieu of a cash security deposit, Landlord reserves the right to have Tenant deposit security in the form of an irrevocable standby letter of credit, automatically renewing at one year intervals, payable at sight upon presentation of Landlord's draft accompanied by a statement that Tenant is in default which shall be drawn on a bank that is a member of the New York Clearinghouse Association.

## 66. QUALIFICATIONS AS TO USE

A. The use of the demised premises for the purpose specified in Article 2 shall not in any event be deemed to include, and Tenant shall not use, or permit the use of, the demised premises or any part thereof for the conduct of any business not engaged in by Tenant at the date of this lease. Tenant covenants and agrees as to Tenant and to any and all of its agents, employees and invitees that: no one shall at any time during the term of this lease use the Demised premises for any dominant or accessory residential use of any type or kind whatsoever; no portion of the sidewalk adjoining the demised premises has been leased to Tenant for any commercial or sales purposes and that no one shall use any portion thereof for any such purposes;

Tenant shall not , at any time, use or suffer or permit anyone to use or occupy, the premises, or do or permit anything to be done in the premises, in violations of the Certificate of Occupancy for the premises and shall comply with all laws, rules and regulations governing the Premises.

23

2013                                                                November 13,

Rider attached to and made a part of lease dated November 13, 2013 by and between Gold Street Properties, LP as Landlord, and
Affina Nail Salon, LLC as Tenant, for 88 Fulton Street aka 33 Gold Street, NY NY 10038

No one shall use the demised premises for; 1. apartment or for dominant or accessory residential use of any type
or kind whatsoever; 2. a personnel, executive search or other form of employment agency; 3. cooking or other
food preparation; the consumption in or about the demised premise of any food or beverage; 4. sale of any beer,
wine liquor, or tobacco products; 5. an obstetrics or gynecology practice, acquired immune deficiency hospice
or abortion clinic; 6. a school of any kind or an employment or placement agency or governmental or quasi-
governmental agency, telephone or secretarial service, labor union, pornographic establishment, restaurant,
delicatessen, confectionery shop; 7. in a manufacturing, printing, photo development, painting or electronic
data processing business in or about the demised premises; 8. no one shall engage in the sale or distribution of
any goods, services or merchandise other than those expressly permitted under this lease in or about the
demised premises.

B. Tenant shall not suffer or permit the demised premises or any part thereof to be used in any manner, or
anything to be done therein, or suffer or permit anything to be brought into or kept therein, which would in any
way (i) violate any of the provisions of any grant, lease or mortgage to which this lease is subordinate (ii)
violate any laws or requirements of public authorities, (iii) make void or voidable any fire or liability insurance
policy then in force with respect to the Building, (iv) make unobtainable from reputable insurance companies
authorized to do business in New York State at standard rates any fire insurance with extended coverage, or
liability, elevator or boiler or other insurance required to be furnished by Owner under the terms of any lease or
mortgage to which this lease is subordinate, (v) cause physical damage to the Building or any part thereof, (vi)
constitute a public or private nuisance, (vii) impair the appearance, character or reputation of the Building,(viii)
Tenant's use of the premises throughout said term will be consistent with the character and dignity of the
Building, and the Building project (ix) the business to be conducted at, through and from the premises will be
first-class quality and reputable in every respect, (x) the sales methods employed in said business, as well as all
other elements of merchandising, display and advertising, will be dignified and in conformity with the highest
standards of practice in Tenant's industry, and (xi) the appearance of the premises (including the lighting and
other appurtenances thereto), the appearance and deportment of all personnel employed therein, and the
appearance, number, location, nature and subject matter of all displays and exhibits placed or installed in or
about the premises will be only such as meet with Landlord's approval, and if at any time disapproved by
Landlord, Tenant shall remove the basis for such in such manner and within such reasonable time as may be
specified by Landlord in a written notice given by it to Tenant for such purposes. (xii) discharge objectionable
fumes, vapors or odors into the Building air conditioning system or into the Building flue or vents not
designated to receive them or otherwise in such manner as may offend other occupants of the Building or the
occupants of adjacent Buildings, (xiii) violate any of Owner's union contracts affecting the demised premises or
the Building, nor create any labor disruption which will interfere with the operation of the Building or any other
Tenant or occupant of the Building, any such violation or interference to be in the sole judgment of Owner, or
(xiv) impair or interfere with any of the Building services or the proper and economic heating, cleaning, air
conditioning or other servicing of the Building or the demised premises or impair or interfere with or intend to
impair or interfere with the use of any of the other areas of the Building by, or occasional discomfort,
annoyance or inconvenience to, Owner or any of the other Tenants or occupants of the Building, any such
impairment or interference to be in the sole judgment of Owner.

## 67. BROKERAGE

Tenant represents and warrants that it has dealt only with Thurcon Properties, Ltd. and the "Broker", if any,
identified in Article 41, in connection with the negotiation and execution of this lease. Tenant covenants and
agrees to indemnify, defend and hold Owner harmless, on demand, from and against any claims of, or liability



24

2013                                                                      November 13,

Rider attached to and made a part of lease dated November 13, 2013 by and between Gold Street Properties, LP as Landlord, and Affina Nail Salon, LLC as Tenant, for 88 Fulton Street aka 33 Gold Street, NY NY 10038

to any broker, agent or finder in connection with the negotiation, execution and/or delivery of this lease other than Thurcon Properties, Ltd. and the Broker, if any, identified in Article 41.

## 68. CORPORATE OR PARTNERSHIP TENANT

A.  If Tenant is a corporation, the person executing this lease on behalf of Tenant hereby covenants, represents and warrants that Tenant is a duly incorporated New York corporation (a copy of evidence thereof to be supplied to Owner upon request); and that the person or persons executing this lease on behalf of Tenant is an officer or are officers of such Tenant, and that they, as such officers are duly authorized to execute, acknowledge and deliver this lease to Owner (a copy of a resolution to that effect to be supplied to Owner upon request).

B.  If Tenant is a partnership, Tenant shall, at the time of execution of this lease, deliver to Landlord a copy of the partnership agreement together with any amendments, establishing the partnership, designating all of the partners therein, evidencing the authority of the partnership to enter into this lease, designating the person or persons authorized to execute this lease on behalf of the partnership, and indicating the persons having effective operating control of the partnership. If at any time during the term of this lease more than 25% of the general partnership interests in Tenant are transferred by sale, assignment, bequest, inheritance, operation of law or other disposition, or if new partners shall be admitted so as to result in a change in the effective operating control of Tenant by the person or persons having such control as of the date of this lease, Tenant shall promptly notify Landlord in writing of such change, and Landlord may terminate this lease within ninety (90) days after receipt of such notice by giving Tenant not less than thirty (30) days prior written notice of such termination. Notwithstanding the foregoing, the sale or transfer by a partner of Tenant of such partner's interest in Tenant to any spouse, parent, or lineal descendant of any such partner, to their respective spouses or lineal descendants or to a trustee for the benefit of the foregoing shall not entitle Landlord to terminate this Lease.

## 69. SIGNS, AWNINGS AND GATES

A.     Tenant shall not place or install any sign on any exterior portion of the Building of which the demised premises are a part without the Owner's prior written consent, which consent shall not be unreasonably withheld. Supplementing the foregoing, Tenant agrees to only propose signs which conform to the architectural scheme of the Building.

B.     Tenant shall not install an awning, canopy or gate on any exterior portion of the Building of which the demised premises are a part without the Owner's prior written consent, which consent shall not be unreasonably withheld. Supplementing the foregoing, Tenant agrees (i) to submit to Owner complete architectural drawings of any proposed awning, canopy or gate (ii) any proposed awning, canopy or gate shall be consistent in style, color and materials as the awning installed by the other commercial occupants of the Building and (iii) Tenant at its sole cost and expense, shall obtain such approvals, governmental or otherwise, as may be required for the installation of any proposed awning, canopy or gate.

## 70. FORCE MAJEURE

Notwithstanding the provisions of Article 26, Owner shall not be deemed in default in the performance of any obligation or undertaking provided herein in the event and/or so long as the performance of such obligation is prevented or delayed, retarded or hindered by Act of God, fire, earthquake, floods, explosion, action of the elements, war, hostilities, invasion, insurrection, riot, mob violence, sabotage, inability to procure or a general shortage of labor, equipment, facilities, materials or supplies in the open market, failure of transportation, strikes, lockouts, action of labor unions, condemnation, requisition, laws, orders of government or civil or



25

2013                                                                November 13,

Rider attached to and made a part of lease dated November 13, 2013 by and between Gold Street Properties, LP as Landlord, and Affina Nail Salon, LLC as Tenant, for 88 Fulton Street aka 33 Gold Street, NY NY 10038

military or naval authorities, or any other cause, whether similar  or dissimilar to the foregoing, not within the reasonable control of Owner

## 71. MISCELLANEOUS

A.      Tenant shall not at any time prior to or during the term hereof, either directly or indirectly, use any contractors and/or labor and/or materials whose use would create or creates any difficulty with other contractors and/or labor employed by Tenant or Owner or others in the construction, maintenance and/or operation of the demised premises or the Building .

B.      If more than one person executes this lease as Tenant, each of them understand and hereby agree that the obligations of each of them under this lease are and shall be joint and several, that the term "Tenant" as used in this lease shall mean and include each of them jointly and severally and that the act of or notice from, or notice or refund to, or the signature of any one of more of them with respect to the tenancy and/or this lease, including, but not limited to, any renewal, extension, expiration, termination or modification of this lease shall be binding upon each and all of the persons executing this lease as Tenant with the same force and effect as if each and all of them had so acted or so given or received such notice or refund or so signed.

C.      In the event of any conflict between any provisions contained in the printed form of this lease and any Rider provision or provisions, the term of this Rider shall be paramount and shall govern.

D.      This lease supersedes all prior leases between Owner and Tenant with respect to any of the space included within the demised premises.

E.      This lease may not be extended, renewed, terminated or otherwise modified except by an instrument in writing, signed by the party against whom enforcement of any such modification is sought.

F.      Without incurring any liability to Tenant, Owner may permit access to the demised premises and open the same, whether or not Tenant shall be present, upon demand of any receiver, trustee or assignee for the benefit of creditors, sheriff, Marshall or court officer legally entitled to such access for the purpose of taking possession of, or removing, Tenant's property or for any other lawful purpose (but this provision and any action by Owner hereunder shall not be deemed a recognition by Owner that the person  or official is entitled to be in or to do anything to the demised premises), or upon demand of any representative of the police, fire, Building, sanitation or other department of the City, State or Federal governments.

G.      No receipt of monies by Owner from Tenant, after any reentry or after the cancellation or termination of this lease in any lawful manner, shall reinstate the Lease and after the service of notice to terminate this lease, or after the commencement of any action, proceeding or other remedy, Owner may demand, receive and collect any monies due, and apply them on account of Tenant's obligations under this lease but without, in any respect affecting such notice, action, proceeding or remedy, except that if a money judgment is being sought in any such action or proceeding, the amount of such judgment shall be reduced by such payment.

H.      If Tenant is in arrears in the payment of Fixed Annual Rent, Tenant waives its right, if any, to designate the items in arrears against which any payments made by Tenant are to be credited and Owner may apply any of such payments to any such items in arrears as Owner, in its sole discretion, shall determine, irrespective of any designation or request by Tenant as to the items against which any such payments shall be credited.

I.      No payment by Tenant nor receipt by Owner of lesser amount than may be required to be paid hereunder shall be deemed to be other than on account of any such payment, nor shall any endorsement or statement on any check or any letter accompanying any check tendered as payment be deemed an accord and satisfaction and



26

2013                                                                        November 13,

Rider attached to and made a part of lease dated November 13, 2013 by and between Gold Street Properties, LP as Landlord, and
Affina Nail Salon, LLC as Tenant, for 88 Fulton Street aka 33 Gold Street, NY NY 10038

Owner may accept such check or payment without prejudice to Owner's right to recover the balance of such
payment due or to pursue any other remedy provided for in this lease.

J.      Owner's failure during the lease term to prepare and deliver any notice or statement, or Owner's failure
to make a demand, shall not in any way cause Owner to forfeit or surrender Owner's rights to collect any
additional rent which may have become due under this lease during the term of this lease and Tenant's liability
for the amounts due under this lease shall survive the expiration or termination of this lease.

K.      This is the final and complete agreement between the parties as to subject matter hereof; it cannot be
altered or waived, in whole or in part, except in writing signed by both parties; it supersedes any other prior
understandings; it shall have no force or effect unless and until it has been signed and delivered by both parties;
it shall be interpreted and construed without any presumption against either party as the drafter.

L.      Governing Law; Forum; Venue.  This lease is executed and delivered in the State of New York, and the
substantive laws of the State of New York (without reference to choice of law principles) shall govern their
interpretation and enforcement.

M.      Landlord shall not be in default unless Landlord fails to perform obligations required by Landlord within
a reasonable time but in no event later than thirty (30) days after written notice by Tenant to Landlord and to the
holder of any first mortgage or deed of trust, if any, covering the demised premises whose name and address
shall have theretofore been furnished to Tenant in writing, specifying wherein Landlord has failed to perform
such obligation; provided, however, that if the nature of Landlord's obligations are such that more than thirty
(30) days are required for performance, then Landlord shall not be in default if Landlord commences
performance within such thirty-day period and thereafter diligently prosecutes the same to completion.

N.      The captions of the Articles, paragraphs, subparagraphs and sections of this lease are for convenience
only and shall not be deemed to be relevant in resolving any question of interpretation or construction of any
Article or Section of this lease.  Exhibits attached to this lease are deemed to constitute part of this lease and are
incorporated herein.

## 72. HAZARDOUS MATERIALS

Tenant shall not cause or permit any Hazardous Materials (as defined below) to be brought upon, transmitted
onto, kept, used or disposed of in, on, or about or from the demised premises without the prior written consent
of Landlord.  If Tenant breaches the obligations stated in the preceding sentence, or if the presence of
Hazardous Materials on the demised premises is caused by Tenant, or Tenant's agents, employees, contractors,
or invitees, and results in contamination of the demised premises, or if contamination of the demised premises
by Hazardous Materials otherwise occurs due to any act, omission or negligence of Tenant or anyone claiming
under or through Tenant, including, but not limited to, Tenant's officers, agents, invitees, employees, vendors or
contractors, or if there is a violation of Laws relating to Hazardous Materials for any other reason, then Tenant
shall pay, indemnify, defend and hold Landlord harmless on demand from any and all claims, judgments,
damages, penalties, fines, costs, liabilities or losses which arise during or after the term of this lease as a result
of such contamination Without limiting the foregoing, if the presence of any Hazardous Materials on the
demised premises by Tenant, or Tenant's officers, agents, employees, contractors, or invitees, results in any
contamination of the demised premises or the Building, Tenant shall promptly take all actions at its sole
expense as are necessary to return the demised premises and the Building to the condition existing prior to the
introduction of any such Hazardous Materials to the demised premises comply with Laws, provided that
Landlord's prior written approval of such actions shall first be obtained.



27

2013                                                                    November 13,

Rider attached to and made a part of lease dated November 13, 2013 by and between Gold Street Properties, LP as Landlord, and
Affina Nail Salon, LLC as Tenant, for 88 Fulton Street aka 33 Gold Street, NY NY 10038

As used in this lease, the term "Hazardous Materials" means any hazardous or toxic substance, material or waste
which is or becomes regulated by any local or county governmental authority, the State of New York or the
United States government, including but not limited to, any federal, state or local statute, ordinance, or



November 13,
2013
Rider attached to and made a part of lease dated November 13, 2013 by and between Gold Street Properties, LP as Landlord, and Affina Nail Salon, LLC as Tenant, for 88 Fulton Street aka 33 Gold Street, NY NY 10038

As used in this lease, the term "Hazardous Materials" means any hazardous or toxic substance, material or waste which is or becomes regulated by any local or county governmental authority, the State of New York or the United States government, including but not limited to, any federal, state or local statute, ordinance, or regulation pertain to health, industrial hygiene, or the environment, including, without limitation, the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601 et seq. ("CERCLA"); the Resource Conservation and Recovery Act of 1976, 42 U.S.C. Section 6901 et seq. ("RCRA"); Federal Water Pollution Control Act, 33 U.S.C. ("FWPCA"), and all rules adopted and guidelines promulgated pursuant to the foregoing (collectively, the "Environmental Laws"). Without limiting the generality of the foregoing, the term "Hazardous Materials" includes, without limitation, the following: (i) those substances included within the definitions of "hazardous substances," "hazardous materials," "toxic substances," or "solid waste" in CERCLA, RCRA, and the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq. and in the resolutions promulgated pursuant thereto; (ii) those substances listed in the United States Department of Transportation Table (49 CFR 172.101) and amendments thereto) or by the Environmental Protection Agency as hazardous substances (40 CFA Part 302 and amendments thereto); and (iii) all other substances, materials and wastes that are, or that become, regulated under, or that are classified as hazardous or toxic under, any Environmental Laws, including, but not limited to, asbestos, PCB, flammable explosives and radio-active substances.

## 73. CONDITIONAL LIMITATION

A. In the event that twice in any twelve (12) month period (A) a non-monetary default of the kind set forth in Article 17(1) shall have occurred or (B) Tenant shall have defaulted in the payment of Annual Fixed Rent or additional rent, or any part of either, and Landlord shall have commenced a summary proceeding to dispossess Tenant in each such instance, then, notwithstanding that such defaults may have been cured at any time after the commencement of such summary proceeding, any further default by Tenant within such twelve (12) month period shall be deemed to be a violation of a substantial obligation of this lease by Tenant and Landlord may serve a written three (3) days' notice of cancellation of this lease upon Tenant and, upon the expiration of said three (3) days, this lease and the term shall end and expire as fully and completely as if the expiration of such three (3) day period were the day herein definitely fixed for the end and expiration of this lease and the term of this lease and Tenant shall then quit and surrender the demised premises to Landlord, but Tenant shall remain liable as elsewhere provided in this lease.

B. In the second and third lines of subdivision (1) of Article 17, the phrase "other than the covenants for the payment of rent or additional rent" is changed to read "including, without limitation, the covenants for the payment of rent or additional rent".

## 74. TENANT'S SOCIAL SECURITY NUMBER OR EMPLOYER ID NUMBER

Tenant states that his or her social security number (if Tenant is an individual) or Tenant's Federal Tax ID Number (if Tenant is not an individual) is ▓▓▓▓▓▓ (the "Number"). From time to time, upon Landlord's request, Tenant shall confirm in writing that the Number provided by Tenant is correct and, if it is missing or incorrect, what the correct number is. Tenant shall indemnify Landlord from and against any and all liability for any claim, fine, penalty, cost or expense (including attorneys' fees) paid, suffered or incurred by reason of Tenant's failure to comply with this Article.

## 75. AIR COOLING

Tenant shall at its own cost and expense, furnish, install, operate, maintain, repair and replace the air conditioning system, equipment and facilities (hereinafter called the "A/C System") to be located in and servicing the demised premises, and provide a repair and maintenance contract in form reasonably satisfactory



28

November 13,
2013
Rider attached to and made a part of lease dated November 13, 2013 by and between Gold Street Properties, LP as Landlord, and
Affina Nail Salon, LLC as Tenant, for 88 Fulton Street aka 33 Gold Street, NY NY 10038

to Landlord with an air conditioning contractor or servicing organization approved by Landlord. The
construction of the A/C System and any additions or other alterations to the A/C System shall require
Landlord's prior written consent, which consent shall not be unreasonably withheld or delayed in accordance
with the applicable provisions of this lease relating to "Tenant Changes". Tenant shall be responsible for
making the A/C system and the heat pump system of Tenant compatible with the building heat pump water loop
system of the Building.

## 76. SECURITY

In amplification of Rider # 31 (Security Deposit), Tenant has deposited with Owner the sum of **$45,000.00** as
security for the faithful performance and observance by Tenant of the terms, provisions and conditions of this
Lease. Such security deposit shall be held by Owner for the full term of this Lease agreement. Tenant must
maintain such security deposit so that no less than the equivalent of "3" months rent is deposited with Owner. It
is agreed that in the event Tenant defaults in respect of any of the terms, provisions and conditions of this Lease,
including, but not limited to, the payment of rent and additional rent, Owner may use, apply or retain the whole
or any part of the security so deposited to the extent required for the payment of any rent or additional rent or
any other sum as to which Tenant is in default or for any sum which Owner may expend or may be required to
expend by reason of Tenant's default in respect of any of the terms, covenants and conditions of this Lease,
including but not limited to, any damages or deficiency in the re-letting of the premises, whether such damages
or deficiency accrued before or after summary proceedings or other re-entry by Owner. In the event that Tenant
shall fully and faithfully comply with all the terms, provisions, covenants and conditions of this Lease, the
security shall be returned to Tenant after the date fixed as the end of the Lease and after delivery of entire
possession of the Demised Premises to Owner. In the event of a sale of the land and building or leasing of the
building, of which the Demised Premises form a part, Owner shall have the right to transfer the security to the
vendee or lessee and Owner shall thereupon be released by Tenant from all liability for the return of such
security; and Tenant agrees to look to the new Owner solely for the return of said security, and it is agreed that
the provisions hereof shall apply to every transfer or assignment made of the security to a new Owner. Tenant
further covenants that it will not assign or encumber or attempt to assign or encumber the monies deposited
herein as security and that neither Owner nor its successors or assigns shall be bound by any such assignment,
encumbrance, attempted assignment or attempted encumbrance.

## 78. LIMITED PERSONAL GUARANTY

If there is Personal Guaranty attached hereto and made a part hereof as Exhibit "D", then Tenant acknowledges
that the execution and delivery of such guaranty by the guarantor identified therein was a material inducement
to Landlord to enter into this agreement; and Tenant covenants and agrees that the guarantor identified in the
guaranty attached hereto and made a part hereof is executing and delivering the same to Landlord upon
execution hereof.



29

November 13,
2013

Rider attached to and made a part of lease dated November 13, 2013 by and between Gold Street Properties, LP as Landlord, and Affina Nail Salon, LLC as Tenant, for 88 Fulton Street aka 33 Gold Street, NY NY 10038

## EXHIBIT "A"  (DIAGRAM OF THE DEMISED PREMISES}

Not to scale; all dimensions are approximate; subject to actual conditions.



2013                                                                          November 13,

Rider attached to and made a part of lease dated November 13, 2013 by and between Gold Street Properties, LP as Landlord, and
Affina Nail Salon, LLC as Tenant, for 88 Fulton Street aka 33 Gold Street, NY NY 10038

## EXHIBIT "B"  "LANDLORD WORK"



SPACE DELIVERED AS IS

November 13,

2013
Rider attached to and made a part of lease dated November 13, 2013 by and between Gold Street Properties, LP as Landlord, and Affina Nail Salon, LLC as Tenant, for 88 Fulton Street aka 33 Gold Street, NY NY 10038

## EXHIBIT "B" "LANDLORD WORK"

SPACE DELIVERED AS IS





31

November 13, 2013

Rider attached to and made a part of lease dated November 13, 2013 by and between Gold Street Properties, LP as Landlord, and Affina Nail Salon, LLC as Tenant, for 88 Fulton Street aka 33 Gold Street, NY NY 10038

**EXHIBIT "C" TENANT WORK**

See TENANT
PLAN TO BE
CREATED POST
LEASE SIGNING.

32

2013                                                                              November 13,

Rider attached to and made a part of lease dated November 13, 2013 by and between Gold Street Properties, LP as Landlord, and Affina Nail Salon, LLC as Tenant, for 88 Fulton Street aka 33 Gold Street, NY NY 10038

## EXHIBIT "D"  LIMITED PERSONAL GUARANTY

The parties to this agreement of the 13th day of November, 2013 are: Ms. Shaoyin Guo, an individual who resides at ████████ rego Park NY 11374 ("Guarantor"); Gold Street Prop, LP, c/o Thurcon Properties Ltd, 2nd floor, 49 West 32nd Street, New York, NY 10001 ("Landlord"); and Affina Nails and Spa, LLC, a New York corporation with offices at 125 Church Street, NY NY ("Tenant")

WHEREAS, Landlord and Tenant are entering into a lease agreement dated the 13 day of November, 2013 which provides, inter alia, for Tenant to rent from Landlord certain premises (the "demised premises") consisting of store space in the building known as and located at 88 Fulton St aka 33 Gold St, in the City, County and State of New York (the "Lease").

WHEREAS, Landlord wants Guarantor to guaranty the obligations of Tenant as hereinafter set forth as a material inducement to Landlord to enter into the Lease, and Tenant and Guarantor desire to have Guarantor guaranty the obligations of Tenant as hereinafter set forth.

NOW, THEREFORE, the parties agree as follows:

1.      The Guarantor unconditionally guarantees to Landlord and the successors and assigns of Landlord the full and punctual payment, performance and observance by Tenant, of all the terms, covenants and conditions in the Lease contained on Tenant's part to be paid, kept, performed and observed. The individual signing this guaranty as the Guarantor shall be jointly, severally and personally liable for the obligations of the Tenant under the Lease. This guaranty shall include any liability of Tenant to Landlord which shall accrue under the Lease at any and all times, except as expressly provided otherwise in paragraph 12 of this agreement.

2.      If, at any time, default shall be made by Tenant in the payment, performance or observance of any of the terms, covenants or conditions in the Lease contained on the Tenant's part to be paid, kept, performed or observed, the Guarantor will pay, keep, perform and observe the same, as the case may be, in place and stead of the Tenant, except as expressly provided otherwise in paragraph 12 of this agreement..

3.      Any act of Landlord, or the successors or assigns of Landlord, consisting of a waiver of any of the terms or conditions of the Lease, or the giving of any consent to any manner or thing relating to the Lease, or the granting of any  indulgences or extensions of time to the Tenant, including, but not limited to, any waiver or modification agreement signed by Landlord and Tenant  after the date hereof,  may be made without notice to the Guarantor and without releasing the obligations of the Guarantor hereunder to Landlord and its successors, and assigns.  Guarantor waives notice of default.

4.      The obligations of the Guarantor hereunder shall not be released by Landlord's receipt, application or release given for the payment, performance and observance of covenants and conditions in the Lease contained on Tenant's part to be paid, performed or observed, nor by any modification of the Lease, but in case of any such modification the liability of the Guarantors shall be deemed modified in accordance with the terms of any such modification of the Lease.  If more than one instrument of guaranty is accepted by Landlord, or if more than one Guarantor signs this instrument, liability shall be personal, joint and several.

5.      The liability of the Guarantor hereunder shall in no way be affected by: (a) the release or discharge of the Tenant in any creditors', receivership, bankruptcy or other proceeding, (b) the impairment, limitation or modification of the liability of the Tenant or the estate of the Tenant in bankruptcy, or of any remedy for the enforcement of the Tenant's liability under the Lease, resulting from the operation of any present or future

33



November 13, 2013

Rider attached to and made a part of lease dated November 13, 2013 by and between Gold Street Properties, LP as Landlord, and Affina Nail Salon, LLC as Tenant, for 88 Fulton Street aka 33 Gold Street, NY NY 10038

provision(s) of the National Bankruptcy Act or other statute(s) or from the decision(s) in any court, (c) the rejection or disaffirmance of the Lease in any such proceeding, (d) the assignment, subletting, or other transfer of the Lease by the Tenant, (e) any disability or other defense of the Tenant, (f) the cessation from any cause whatsoever of the liability of the Tenant, or (g) Landlord having given or the failure of Landlord to give any notice, make any demand, apply or retain any security deposit, commence any action, or obtain any judgment against Tenant (or any other guarantor of Tenant), or anyone else, prior to seeking enforcement of the Guarantor's liability hereunder.  This is an unconditional guaranty of payment.

6.      Until all the terms, covenants and conditions in the Lease on the Tenant's part to be paid, kept, performed and observed are fully paid, kept, performed and observed, the Guarantor: (a) shall have no right of subrogation against the Tenant by reason of any payments or acts of performance by the Guarantor, in compliance with the obligations of the Guarantor hereunder(b) waives any right to enforce any remedy which the Guarantor now or hereafter shall have against the Tenant by reason of any one or more payments or acts of performance in compliance with the obligations of the Guarantor hereunder; and (c) subordinates any liability or indebtedness of the Tenant now or hereafter held by the Guarantor to the obligations of the Tenant to Landlord under the Lease.

7.      The Guarantor warrants and represents that: he or she has the power and authority to enter into this agreement and that his or her obligations as the Guarantor will be enforceable under the laws of the State of New York; he or she is entering into this agreement for a business purpose of, and benefit to the Guarantor; he or she has a legitimate purpose in issuing this guaranty as Tenant is owned and controlled by the Guarantor; or that the Tenant is a validly formed corporation under the laws of the State of New York having full power and authority to enter into the Lease.

8.      If Landlord prevails in any court action against the Guarantor relating to this guaranty, its shall be entitled to receive an award for attorneys' fees, costs and disbursements.  The Guarantor hereby agrees to be subject to in personam jurisdiction in any court of appropriate subject matter jurisdiction located in the City, County and State of New York for any action brought by Landlord against the Guarantor arising out of, or relating to this guaranty, provided that copies of the summons and complaint are sent by certified mail, return receipt requested, to the Guarantor at the address of the Guarantor hereinabove set forth, or at such other address as the Guarantor may designate on ten (10) days prior notice in writing sent by certified mail, return receipt requested, to Landlord. The Guarantor hereby waives trial by jury in any action or proceeding brought by Landlord, or Landlord's successors and assigns, for the enforcement of this agreement of guaranty.

9.      This instrument may not be changed, modified, discharged or terminated orally or in any manner other than by an agreement in writing signed by all of the parties to it.

10.     This Guaranty shall be governed by, and construed in accordance with the laws of the State of New York applicable to agreements made and to be performed in New York without regard to any conflict of laws or other rules which might apply the laws of any other jurisdiction.

11.     The Guarantor hereby acknowledges receipt of a copy of the Lease.  The Lease may be modified, amended, extended or waived, in whole or in part, by written agreement of Landlord and Tenant, without impairing the remedies and rights of Landlord against the Guarantor hereunder and no such subsequent agreement shall release the Guarantor.

12.     Anything contained herein to the contrary notwithstanding, this guaranty shall only apply to any claim by Landlord against Tenant that arises under the Lease for rents or additional rents that became due and/or other damages that were suffered or incurred due to events that occurred on or before the "Surrender Date" (as defined below).  The "Surrender Date" means the date on which Tenant surrenders keys to, and possession of



34

Rider attached to and made a part of lease dated November 13, 2013 by and between Gold Street Properties, LP as Landlord, and Affina Nail Salon, LLC as Tenant, for 88 Fulton Street aka 33 Gold Street, NY NY 10038

the demised premises to Landlord broom clean and free of all liens, claims, damages, occupants and personal property, and Tenant has delivered to Landlord an instrument of surrender signed by Tenant giving up all right, title and interest of Tenant in and to the Lease and the demised premises in form reasonably satisfactory to Landlord's counsel, without prejudice to Landlord's claims against Tenant for breach of the Lease, subject the understanding that the liability of Tenant under the Lease shall survive the Surrender Date and nothing contained herein shall affect Tenant's liability to Landlord for any breach of the Lease at any time, including, but not limited to, liability for rent, additional rent and damages arising under the Lease before and after the Surrender Date. This agreement may be enforced by Landlord against the Guarantor before or after the Surrender Date for any rent claims that arose, and any damages suffered or incurred due to events that occurred, on or before the Surrender Date. Tenant's failure to surrender the premises in the condition required under this agreement or the Lease shall give rise to a liability of the Guarantor to Landlord for a claim for damages that arose due to an event that occurred on or before the Surrender Date.

IN WITNESS WHEREOF, the parties hereto have signed and sealed and executed this agreement on the date first above written.

_____ (Landlord)

Gold Street Properties, LP
By: _____

Brad Thurman, VP

_____ (Tenant)

Affina Nail Salon, LLC

By: _____

_____ (Guarantor)

Shaoyin Guo

State of New York)

County of New York) ss.:

On this ___ day of _____, 2013 before me personally came _____, to me known and known by me to be the individual described in and who executed the foregoing instrument and duly acknowledged to me that he executed the same as the Guarantor.

_____

Notary Public



35

## ASSIGNMENT AND ASSUMPTION OF LEASE

Dated:          September 8 , 2015

Assignor:       AFFINA NAIL SALON, LLC.

Assignee:       88 FULTON LUCK INC.

Lease Date:     November 13, 2013

Between:        GOLD STREET PROPERTIES, LP as Landlord and
                AFFINA NAIL SALON, LLC as Tenant

Premises:       88 Fulton Street, aka, 33 Gold Street, New York, NY

Assignor has received ten ($10.00) dollars and other good and valuable consideration for this Assignment.

Assignor assigns to Assignee all the Assignor's right, title and interest in the Lease and the Security Deposit, in the amount of $45,000.00, as stated in the Lease.

Assignee agrees to pay the rent promptly and perform all the terms of the Lease as of the date of this Assignment. Assignee assumes full responsibility for the Lease as if Assignee signed the Lease originally as Tenant.

Assignee agrees to indemnify and hold Assignor harmless from any legal actions, damages and expenses, including legal fees that the Assignor may incur arising out of the lease.

Assignee agrees that the obligations assumed shall benefit the Landlord name in the Lease as well as the Assignor.

Assignor states that Assignor has the right to assign this Lease and that the Premises are free and clear of any judgment, executions, liens, taxes and assessments.

Assignee states that Assignee has read the Lease and has received the original or an exact copy of the Lease.

Assignor by virtue of this assignment hereby surrenders the Premises to Landlord and Assignee and surrenders all rights to possession of the Premises or return of security, if any.

This assignment is binding on all parties who lawfully succeed to the rights or take the place of Assignor and Assignee.

1

The Assignor and Assignee have signed this Agreement as of the date shown above.

Assignor:                                          Assignee:
Affina Nail Salon, LLC                             88 Fulton Luck Inc.

By: Shaoyin Guo, Member                            By: Linto Meity            , President

*State of New York, County of* New York *, ss.:*

On this 8th day of September, 2015 before me, the undersigned, personally appeared _Shaoyin_ _Guo_, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity as a member of Affina Nail Salon, LLC, and that by her signature on the instrument, the individual or the person behalf of which the individual acted, executed the instrument.

                                    *Notary Public*
                                                    YI LIN
                                    Notary Public, State of New York
                                    No. 02LI5030084
                                    Qualified in New York County
                                    Commission Expires 10/31/2018

*State of New York, County of* New York *, ss.:*

On this 8th day of September, 2015 before me, the undersigned, personally appeared Meity; Linta, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity as president of 88 Fulton Luck Inc., and that by his/her signature on the instrument, the individual or the person behalf of which the individual acted, executed the instrument.

                                    *Notary Public*
                                                    YI LIN
                                    Notary Public, State of New York
                                    No. 02LI5030084
                                    Qualified in New York County
                                    Commission Expires 10/31/2018

## LANDLORD'S CONSENT TO ASSIGNMENT OF LEASE

Landlord hereby consents to the assignment of Lease from Affina Nail Salon, LLC, Assignor, to 88 Fulton Luck Inc., Assignee. Landlord further consents to the assignment of the Security Deposit in the sum of $45,000.00 by Assignor to Assignee.

Landlord represents that (1) the Lease is in full force and effect as of the date hereof; (2) all rent and additional rent, including without limitation to real estate taxes, water and sewer charges are paid up to date and that Assignor does not owe any payment to the Landlord.

Landlord:

Gold Street Properties, LP

By:

2

# LAW OFFICES OF YI LIN

86 Bowery, 2nd Floor
New York, New York 10013

Tel: (212) 964-5339
Fax: (212) 964-5342

February 2, 2016

<u>Via Priority Mail</u>
Donald DeSimone, Esq.
49 West 32nd Street, 2nd Floor
New York, NY 10001

**Re: Owner:  Gold Street Properties, LP**
**Tenant:  88 Fulton Luck, Inc**

Dear Mr. DeSimone,

Enclosed please find duplicate original of Limited Guaranty of Sublease in connection with above referenced matter.

Thank you.  Should you have any questions, please feel free to contact the office of undersigned.

Sincerely,

Yi Lin

Enclosure

### LIMITED GUARANTY OF SUBLEASE

The undersigned, **Rinta Meity**, residing at ~~108-25  12-th Ave~~ Apt 1 e, Forest Hills, NY 11375 ("Guarantor"), in order to induce **Gold Street Properties, LP** ("Owner") to enter into the Sublease (the "Sublease") dated on or about the date hereof with **88 Fulton Luck, Inc,** ("Tenant") for [DEMISED PREMISES] at 125 Church Street, New York, New York, does hereby unconditionally and irrevocably guarantee the full and prompt payment by Tenant of all amounts due under such Sublease as the same may be renewed, extended, amended or modified and the observance and performance by Tenant of any and all covenants and obligations contained in the Sublease. This Guaranty shall be a continuing guaranty, and liability hereunder shall in no way be affected or diminished by any renewal, extension, amendment or modification of the Sublease or any waiver of any notice of default under the Sublease. Owner may exercise any remedy under this Guaranty without first resorting to any security or any other remedies to enforce Tenant's obligations under the Sublease. The Guarantor agrees to pay to Owner any costs and expenses, including without limitation reasonable attorney's fees, incurred in connection with the collection of any amount due or the enforcement of any right under this Guaranty. Guarantor waives its right to jury trial and the right to interpose any counterclaim or consolidate any other action with an action on this Guaranty. This Guaranty shall be binding upon and shall inure to the benefit of the successors and assigns of the Guarantor and Owner. This Guaranty may not be changed, terminated, modified, or waived, orally, but only in writing signed by Owner and the Guarantor. If this guaranty is signed by more than one person the obligations hereunder shall be joint and several. This Guaranty shall remain and continue in full force and effect notwithstanding, and the liability of Guarantor hereunder shall in no way be affected, modified or diminished by reason of (x) any bankruptcy, insolvency, reorganization, arrangement, assignment for the benefit of creditors, receivership or trusteeship or other similar action or proceeding affecting Tenant whether or not similar notice of any of the foregoing is given to Guarantor; or (y) Tenant no longer being owned by Guarantor.. Guarantor shall be relieved of his liability hereunder in the event of a permitted assignment of the Sublease in compliance with all of the terms and conditions set forth in Article 19 thereof. No payment by Guarantor hereunder shall entitle Guarantor to be subrogated to any right of Owner. Guarantor is a principal of Tenant and will receive a direct economic benefit by virtue of the business which Tenant will conduct at the Demised Premises and Guarantor has entered into this Guaranty for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged. This Guaranty shall be deemed to have been made in the State of New York and the rights and liabilities of Owner and Guarantor shall be determined in accordance with the laws of the State of New York. Guarantor hereby consents to the jurisdiction of the courts of the State of New York located in the City and County of New York, in connection with any action on this Guaranty; and Guarantor agrees that the Guarantor consents to service of process upon it by registered or certified mail addressed to Guarantor at the address set forth above. Terms defined in the Sublease and not otherwise defined herein shall have the same meaning where used herein.

This Guaranty shall be limited in the following respects:

(i) Guarantor shall have no liability or obligations under this Guaranty unless and until there is a monetary default under the Sublease or a material non-monetary default and in either case such default has continued after the giving of any required notice to Tenant and beyond applicable grace periods (such default being hereinafter referred to as the "triggering default").

(ii) This Guaranty is a guaranty of the full prompt payment of all amounts due under the Sublease and the observance and performance by Tenant of all covenants and obligations in the Sublease which accrue from and after the date the defaulted payment, covenant or obligation

which gives rise to the triggering default was due or required to be performed until such date as Tenant vacates the Demised Premises in accordance with subparagraph (iii) below; provided, however, that Guarantor shall not be obligated hereunder with respect to any rent which is due solely by reason of Owner's election to accelerate the rental obligation for the balance of the term of the Sublease.

(iii) This Guaranty shall terminate and be of no further force and effect as to all matters accruing after the date Tenant vacates and surrenders the Demised Premises to Owner, provided that (a) Tenant shall give to Owner not less than sixty (60) days' prior written notice of its intention to vacate the Demised Premises on a date certain (the "Possession Date"), (b) that on the Possession Date the Demised Premises are in the condition which they were required to be in under the Sublease as though the term had expired on the date fixed therein, (c) all unpaid Rent and Real Estate Taxes (as defined in the Sublease), shall be paid up to and including the Possession Date and (d) Tenant shall deliver to Owner on or before the Possession Date all keys to the Demised Premises and a duly executed and acknowledged Surrender Declaration in the form annexed hereto as Exhibit I. In the event that Tenant shall not have complied with any of the foregoing provisions, this subparagraph (iii) shall be deemed deleted from this Guaranty as of the Possession Date and this Guaranty shall continue in full force and effect.

IN WITNESS WHEREOF, the undersigned has executed this Guaranty.

Dated: _February 2_ , 2015

Social Security # ████████

## LIMITED GUARANTY OF SUBLEASE

The undersigned, **Rinta Meity**, residing at _708-2F / 2nd Ave, Apt 1F, Forest Hills NY 11375_ ("Guarantor"), in order to induce **Gold Street Properties, LP** ("Owner") to enter into the Sublease (the "Sublease") dated on or about the date hereof with **88 Fulton Luck, Inc,** ("Tenant") for [DEMISED PREMISES] at 125 Church Street, New York, New York, does hereby unconditionally and irrevocably guarantee the full and prompt payment by Tenant of all amounts due under such Sublease as the same may be renewed, extended, amended or modified and the observance and performance by Tenant of any and all covenants and obligations contained in the Sublease. This Guaranty shall be a continuing guaranty, and liability hereunder shall in no way be affected or diminished by any renewal, extension, amendment or modification of the Sublease or any waiver of any notice of default under the Sublease. Owner may exercise any remedy under this Guaranty without first resorting to any security or any other remedies to enforce Tenant's obligations under the Sublease. The Guarantor agrees to pay to Owner any costs and expenses, including without limitation reasonable attorney's fees, incurred in connection with the collection of any amount due or the enforcement of any right under this Guaranty. Guarantor waives its right to jury trial and the right to interpose any counterclaim or consolidate any other action with an action on this Guaranty. This Guaranty shall be binding upon and shall inure to the benefit of the successors and assigns of the Guarantor and Owner. This Guaranty may not be changed, terminated, modified, or waived, orally, but only in writing signed by Owner and the Guarantor. If this guaranty is signed by more than one person the obligations hereunder shall be joint and several. This Guaranty shall remain and continue in full force and effect notwithstanding, and the liability of Guarantor hereunder shall in no way be affected, modified or diminished by reason of (x) any bankruptcy, insolvency, reorganization, arrangement, assignment for the benefit of creditors, receivership or trusteeship or other similar action or proceeding affecting Tenant whether or not similar notice of any of the foregoing is given to Guarantor; or (y) Tenant no longer being owned by Guarantor.. Guarantor shall be relieved of his liability hereunder in the event of a permitted assignment of the Sublease in compliance with all of the terms and conditions set forth in Article 19 thereof. No payment by Guarantor hereunder shall entitle Guarantor to be subrogated to any right of Owner. Guarantor is a principal of Tenant and will receive a direct economic benefit by virtue of the business which Tenant will conduct at the Demised Premises and Guarantor has entered into this Guaranty for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged. This Guaranty shall be deemed to have been made in the State of New York and the rights and liabilities of Owner and Guarantor shall be determined in accordance with the laws of the State of New York. Guarantor hereby consents to the jurisdiction of the courts of the State of New York located in the City and County of New York, in connection with any action on this Guaranty; and Guarantor agrees that the Guarantor consents to service of process upon it by registered or certified mail addressed to Guarantor at the address set forth above. Terms defined in the Sublease and not otherwise defined herein shall have the same meaning where used herein.

This Guaranty shall be limited in the following respects:

(i)  Guarantor shall have no liability or obligations under this Guaranty unless and until there is a monetary default under the Sublease or a material non-monetary default and in either case such default has continued after the giving of any required notice to Tenant and beyond applicable grace periods (such default being hereinafter referred to as the "triggering default").

(ii)  This Guaranty is a guaranty of the full prompt payment of all amounts due under the Sublease and the observance and performance by Tenant of all covenants and obligations in the Sublease which accrue from and after the date the defaulted payment, covenant or obligation

which gives rise to the triggering default was due or required to be performed until such date as Tenant vacates the Demised Premises in accordance with subparagraph (iii) below; provided, however, that Guarantor shall not be obligated hereunder with respect to any rent which is due solely by reason of Owner's election to accelerate the rental obligation for the balance of the term of the Sublease.

(iii)  This Guaranty shall terminate and be of no further force and effect as to all matters accruing after the date Tenant vacates and surrenders the Demised Premises to Owner, provided that (a) Tenant shall give to Owner not less than sixty (60) days' prior written notice of its intention to vacate the Demised Premises on a date certain (the "Possession Date"), (b) that on the Possession Date the Demised Premises are in the condition which they were required to be in under the Sublease as though the term had expired on the date fixed therein, (c) all unpaid Rent and Real Estate Taxes (as defined in the Sublease), shall be paid up to and including the Possession Date and (d) Tenant shall deliver to Owner on or before the Possession Date all keys to the Demised Premises and a duly executed and acknowledged Surrender Declaration in the form annexed hereto as Exhibit I.  In the event that Tenant shall not have complied with any of the foregoing provisions, this subparagraph (iii) shall be deemed deleted from this Guaranty as of the Possession Date and this Guaranty shall continue in full force and effect.

IN WITNESS WHEREOF, the undersigned has executed this Guaranty.

Dated: February 2 , 2015

Social Security # [redacted]

AFFINA NAIL SALON,,LLC

EXIT

EXIT

GOLD STREET

FLOOR PLAN

FULTON