UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------X
 DINO ANTOLINI,

                              Plaintiff,                    Case No.:1:19-cv-9674-JMF

            -against-

HAROLD THURMAN, BRAD THURMAN,
and 33 BRE INC.,

                              Defendants.
---------------------------------------------X



------------------------------------------------------------------------------------------

    BRIEF IN SUPPORT OF SUMMARY JUDGMENT AND PRECLUSION


------------------------------------------------------------------------------------------



                                        Silversmith & Associates
                                        Law Firm, PLLC
                                        Attorneys for Defendants
                                        39 Broadway, Room 910
                                        New York, NY 10006
                                        (212) 922-9300

# Table of Contents

Preliminary Statement ................................................................................................. 1

Background ................................................................................................................. 1

A brief description of the case, including the factual and legal bases for the  claim(s) and defense(s) ................................................................................................................. 1

B.   The Building ......................................................................................................... 1

C.   The Permits and Approvals Necessary to Build a Handicapped Ramp or Lift ................................. 2

ARGUMENT ..........................................................................................................

DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW DISMISSING THE COMPLAINT.

Summary Judgment  Standard ..................................................................................... 5

    A.    Plaintiff Cannot Establish Readily Achievable ........................................................ 5

       Remediation as to Exterioy Access ...................................................................... 5

       1    Legal Framework And Standards.................................................................... 6

       a.  Statute And Regulations ............................................................................. 6

    B.   Burden-Shifting  Framework ................................................................................. 8

    C.   Plaintiff has failed to propose a Readily ................................................................

       Achievable Barrier Proposa ............................................................................... 9

    D.  Plaintiff Has Not Proffered A Plausible handicapped Lift, And In Any Event The Landlord Has Shown That Such Is Not Readily Achievable

    E.  Plaintiff has conceded many of the interior of the stores are ADA compliant and has failed to provide a remediation proposal as to those interiors he claims to be non-compliant ......................... 13

POINT 2 ..............................................................................................................

   Plaintiff Has Not Made Out A Prima Facie Case Of Discrimination .......................................

   Under The New York State And City Disability Statutes, ..................................................

   Or If He Has, The Landlord Has Rebutted It .......................................................... 14

Point 3 ..............................................................................................................

   Service of process upon 33 Bre Inc. was improper ...................................................... 16

Point 4 ..............................................................................................................

   The claims against Defendant Brad Thurman should Be Dismissed .......................................... 19

Point 5

   The Complaint Should be Dismissed Because of the .........................................................

   Plaintiff's Failure to Name and Serve Certain Necessary Parties .......................................... 20

Point 6

   Should this Court deny Defendants' summary judgment, Defendants request an order precluding Plaintiff's expert From testifying at trial or otherwise filing affidavits or an expert report in this case .................................................................................................................. 21

CONCLUSION .......................................................................................................... 25

# TABLE OF AUTHORITIES

### CASES

*Arce v. Sybron Corp.*, 82 A.D. 2d 308 (App Div. 2d Dept.)(1981)................................................. 18

*Arnold v. Krause, Inc.,* 232 F.R.D. 58 (United States District Court for the Western District of New York) July 22, 2004; Decided  July 23, 2004.................................................................................................. 23

*Bebry v. Aljack LLC,* 954 F. Supp. 2d 173................................................................................................ 16

*Borkowski v. Valley Central  School  Dist.,* 63  F.3d  131 (2d Cir. 1995)....................................... 8

*Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000)....................................................... 19

*Colorado Cross Disability Coalition v. Hermanson Family Ltd,* 264 F.3d 999 (10th Cir. 2001),.............. 11

*Exxon Corporation v. Halcon Shipping Co., Ltd.,* 156 F.R.D. 589, 591-592 (D.N.J. 1994). .......................... 23

*Gathright-Dietrich  v.  Atlanta  Landmarks, Inc.,* 452 F.3d 1269, 1273 (11th Cir. 2006) ............................. 7

*Giladi v. Strauch,* United States District Court for the Southern District of New York (April 13, 2001, Decided ; April 16, 2002, Filed ; 94 Civ. 3976.)................................................................................ 23

*Green v. DGG Properties Co., Inc.,* 3:11-CV-01989 VLB, 2013 U.S. Dist. LEXIS 13138 2013 WL  395484 (D. Conn. Jan. 31, 2013) ......................................................................................................... 20

*Kemp v. Metro-N. R.R.,* 316 F. App'x 25, 26 (2d Cir. 2009);......................................................... 15

*Kreisler v. Second Ave. Diner Corp.,* No. 10 Civ. 7592 (RJS), 2012 WL 3961304, at *7 (S.D.N.Y. Sept. 11, 2012),.................................................................................................................................. 8

*Kreisler v. Second Avenue Diner Corp.,* 2012 WL 3961304 (S.D.N.Y. Sept. 11, 2012), aff'd, 784 F.3d 184 (2d Cir. 2013) .......................................................................................................................... 10

*Leonard F.* ....................................................................................................................................... 20

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,* 715 F.3d 102, 109 (2d Cir. 2013). ........................ 15

*Norkunas v. Seahorse NB LLC,* 444 Fed.Appx. 412, 415 (11th Cir. 2011)......................................... 7

*Panzica v. Mas-Maz, Inc.,* 2007 WL 1732123, at *5 (E.D.N.Y. June 11, 2007) ................................. 7

Panzica,  2007 WL 1732123, at *5 ................................................................................................... 7

*Rivera v. Rochester Genesee Reg'/ Transp. Auth.,* 743 F.3d 11, 19 (2d Cir.  2014)...................... 5

*Roberts*...................................................................................................................................... 7,8

*Roberts v. Royal Atlantic Corp.,* 542 F.3d 363, 368 (2d Cir. 2008)............................................... 6

*Sotomayor y. City of New York,* 862 F. Supp. 2d 226, 257 (E.D.N.Y. 2012) affd, 713 F.3d 163 (2d Cir. 2013).................................................................................................................................... 15

*Speciner v. Nationsbank,* 215 F.Supp.2d at 632-33.................................................................... 11

*Speciner v. Nationsbank, NA.,* 215 F. Supp.2d 622, 627 .............................................................. 8

*Sundaram v. Brook Haven Nat'l Labs,* 424 F. Supp.2d 545, 571 (EDNY 2006). ............................... 16

*Tjeknavorian v. Mardirossian,* No. 14- CV-5723 SAS, 2014 WL 5365994, at *1 (S.D.N.Y. Oct. 22, 2014)... 5

*Trilogy Communications, Inc. v. Times Fiber Communications, Inc.,* 109 F. 3d 739  (Fed. Cir. 1997)....... 23

*Vinokur v. Sovereign Bank,* 701 F. Supp. 2d 276, 290 (E.D.N.Y. 2010). ........................................ 15

*Whethers  v. Nassau  Healthcare  Corp.,* No.  13 Civ. 2991, 2014 WL 4637215,  at *l (2d Cir. Sept. 18, 2014).) ....................................................................................................................................... 5

*Young v. Kali Hospitality Ltd.,* 2010 WL 3037017, ...................................................................... 8

### RULES

Local Civil Rule 56.1........................................................................................................................ 1

# STATUTES

FRCP 37............................................................................................................................................. 1

FRCP 56 (a)...................................................................................................................................... 1

FRCP 4(h)......................................................................................................................................... 17

FRCP 4(e)...................................................................................................................................17

FRCP 19(a)(1) ...........................................................................................................................21

FRCP 4(h)...................................................................................................................................23

## *Preliminary Statement*

Defendants submit this Memorandum of Law in support of Defendants' Motion for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure [Federal Rules of Civil Procedure]; Rule 37 of the Federal Rules of Civil Procedure [hereinafter referred to as Rules]; and Local Civil Rule 56.1; preclusion and for other relief.

## **Background**

### A. A brief description of the case, including the factual and legal bases for the claim(s) and defense(s)

Plaintiff contends that he is disabled and that he was denied access to the Facility due to ADA violations. The Defendants substantially deny each claim of wrongdoing alleged by the Plaintiff against them. Defendants contend that the facility is presently in compliance with its obligations under the statutes at issue and maintain that the premises is grandfathered, that there have been no substantial alterations since the enactment of the various ADA statutes at issue and that the alleged barriers do not give rise to any violation of law. To the extent that barriers to access exist, Defendants contend that the removal of the barriers is not readily achievable.

Proposals for barrier removal that have little or no chance of being approved by the Buildings Department or Landmarks Preservation Commission are not "readily achievable," the legal standard under the ADA for barrier removal in a pre-ADA building. The Landlord is not committing discrimination in failing to undertake them

### B.    The Building

The building at 82-88 Fulton Street was created in 1978 by the joining of two

buildings. Because of the landmark designation for the buildings, all proposals must go through the landmark preservation commission in addition to the Department of Buildings, Department of Transportation and other pertinant agencies and departments. See Kratchman Decl par. 8.

### C.   The Permits and Approvals Necessary to Build a Handicapped Ramp or Lift

Installation of a ramp or lift into the ground floor store at 82-88 Fulton Street requires a permit from DOB, and either project (ramp or lift) must comply with the New York City Building Code, the rules of the Fire Department (if impacting any fire safety elements), the Department of Transportation (if the project involves encroachment onto the public sidewalk). DOB reviews all proposed construction in the City for compliance with the New York City Building Code, Fire Code, DOT rules, and the Americans With Disabilities Act.  See Kracthman Decl. ¶ 19.

To apply for a permit for a project requiring LPC approval, the applicant must first submit an application to DOB for a permit, which includes an architectural drawing of the proposed construction. DOB can either issue an approval or raise objections to aspects of the proposed project that do not comply with the Building Code or the Fire Code, or the disability laws. If DOB has objections to the design, it issues a Notice of Objections (also known as an objection sheet) to the applicant. DOB may, but more often does not, include all of its objections in its first objection sheet. If the objections can be addressed, the applicant may revise their architectural drawings to address the objection, and submit the revised project to DOB. If DOB has additional objections, it issues another objection sheet. This process continues until the

applicant has addressed all of DOB's objections. Once DOB has no more objections, it issues a clean objection sheet. See Kratchman Decl. ¶ 20.

For small projects such as the installation of a ramp or lift, LPC  will  not consider  the project until DOB has issued a clean objection sheet for the project (with the exception of the objection associated with not having obtained a Landmark Permit). In more complex projects, such as new buildings, LPC will consider a proposal with an objection sheet that is cleared of only zoning objections.  Kratchman Decl ¶ 21.  Once the applicant  submits the clean objection sheet to LPC, the project is examined by a staff level reviewer.  If the project involves only minor changes that do not affect the historically significant aspects of the property, the project may be approved at the LPC staff level, without the need for a public hearing. If the project would affect the property's historically significant elements, the project must go to an LPC public hearing.  See Kratchman Decl. par 21.

The LPC approval process associated with a full hearing consists of staff level review, a community board hearing, and finally a hearing before the LPC itself. Initially, the applicant reviews its design with the LPC staff until the assigned staff member believes the design satisfactorily meets the requirements for presentation before the public and the Commission. The applicant must then appear for a public hearing before the New York City Community Board for the area in which the project is located. At that point, the Community Board can either approve or reject the project.   The Community Board's determination is purely advisory to the Commission, but in practice carries significant weight with the commissioners' review of the proposal. The applicant  must then present its proposal at a public hearing before the Commissioners of the LPC, at which members of the public can

also speak. The Community Board's statement is read into the record along with any other city preservation groups, local community groups and/or individuals. The LPC Commissioners review the proposal to determine its effect on the historically significant features of the property, and, for buildings that are within historic districts, its effect on nearby designated properties and/or the character of the district in general. The Commissioners then vote on the proposal and either approve, request specific alterations (to be presented again in a subsequent Public Meeting, or worked out with preservation staff), or reject the project.   See Kratchman Decl. ¶ 22.

The Commission does not normally approve dramatic alterations of historically significant features of landmarked properties that are not appropriate to the character of the building. When applications proposing dramatic alterations of historic features are submitted, there is often significant push back at the staff level, and staff instruct the applicant to revise design so as not to significantly alter the historic features of the property. The LPC will not approve a historically inappropriate project. Kratchman Decl. ¶ 23.

DOT controls the public sidewalks in the City. A project that encroaches onto the public sidewalk beyond the street line (i.e., the property line) must be approved by DOT through its issuance of a revocable consent. One exception is, under the Building Code, a wheelchair ramp may extend up to 44 inches beyond the property line without the owner having to obtain a revocable consent from DOT. Beyond that distance, a revocable consent is required. Under DOT rules, the grant of a revocable consent is conditioned on, among other things, the structure being removable upon instruction from DOT, and as the name suggests, the consent is

revocable by DOT at any time. A revocable consent is also subject to Community Board (and public) review, which again is limited to an advisory statement. Kratchman Decl. ¶ 24.

### ARGUMENT

### DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW

### <u>DISMISSING THE COMPLAINT</u>

### Summary Judgment Standard

"Summary judgment is appropriate [w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Tjeknavorian v. Mardirossian,* No. 14- CV-5723 SAS, 2014 WL 5365994, at *1 (S.D.N.Y. Oct. 22, 2014) (internal quotation  marks omitted) *(citing Whethers  v. Nassau  Healthcare  Corp.,* No. 13 Civ. 2991, 2014 WL 4637215,  at *l (2d Cir. Sept. 18, 2014).) Summary judgment is appropriate "only where, construing all the evidence in the light most favorable to the [non-moving party] and drawing all reasonable inferences in that party's favor, there is no genuine issue as to any material fact and ... the movant is entitled to judgment as a matter of law." *Id.* (Internal quotation marks omitted) *(citing Rivera v. Rochester Genesee Reg'/ Transp. Auth.,* 743 F.3d 11, 19 (2d Cir.  2014).

### A.      Plaintiff Cannot Establish Readily Achievable Remediation as to Exterior Access

Plaintiff cannot prevail on his claim for injunctive relief under the ADA because the undisputed facts make apparent that neither a ramp nor a lift is "readily achievable" within the meaning of the ADA. Indeed, Plaintiff has not met, and cannot meet, even his minimal initial burden of showing any readily achievable proposal prior to the October 30, 2020 end date of disclosure. The October 29, 2020 response to the

Defendants' Interrogatory 12 as ordered by Magistrate Judge Kevin Fox to provide the basis for the contention that accommodation and modification to remove barriers are readily achievable as follows:  "All Defendants have waived any and all objections to the cost of any repairs, modifications and/or repairs which is a major component of the readily achievable standard and is part of the record".  Notably Defendants' had waived only the financial inability to remediate defenses and not the technical, structural or disproportionate cost (monetary and non-monetary) and any other defenses.  See ECF Doc 46.  Even if Plaintiff could be deemed to meet that burden, Defendants have shown that a lift and ramp installations are not readily achievable. Indeed, that they are not achievable because there is no ADA-compliant ramp meeting the requirements of the site, and no lift, that can realistically be approved by the City agencies whose approval is required to build these projects, including, at a minimum, the DOB and DOT and LPC. Plaintiff offered no specific conceptual remediation proposal. Defendants are not engaging in disability discrimination. There are no material facts in dispute and the Court should grant summary judgment.

### 1. *Legal Framework And Standards*

#### a.    *Statute And Regulations*

"Title III of the ADA prohibits discrimination against individuals on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation ....'" *Roberts v. Royal Atlantic Corp.*, 542 F.3d 363, 368 (2d Cir. 2008) (quoting 42 U.S.C. § 12182(a)). To establish a violation of Title III, the plaintiff must "establish that (1) he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that

the defendants discriminated against the plaintiff within the meaning of the ADA."
*Id.*

"The degree of accountability for architectural barriers depends on whether the
place of public accommodation was newly constructed and first occupied after January
25, 1993, underwent renovations or alterations that affect usability after that date, or
existed prior to that date." *Panzica v. Mas-Maz, Inc.*, 2007 WL 1732123, at *5
(E.D.N.Y. June 11, 2007) (citing 42 U.S.C. §§ 12182(b)(2)(A)(iv), (v); 12183(a));
*Gathright-Dietrich v. Atlanta Landmarks, Inc.*, 452 F.3d 1269, 1273 (11th Cir. 2006)
("The ADA imposes different requirements on the owners and operators of facilities that
existed prior to its enactment date."). "Buildings that pre-existed the enactment of the
ADA must meet the 'readily achievable' standard, and buildings constructed after the
enactment of the ADA must meet the new construction or alterations standard."
*Norkunas v. Seahorse NB LLC*, 444 Fed.Appx. 412, 415 (11th Cir. 2011) (citing 42
U.S.C. §§ 12182(a), 12182(b)(2)(A)(iv), 12183(a)); see also Panzica, 2007 WL
1732123, at *5 (for building that "existed prior to January 25, 1993, the ADA requires
only that such facilities remove architectural and structural barriers if such removal
is "readily achievable.") (citing 42 U.S.C. § 12182(b)(2)(A) (4) and 28 C.F.R. §
36.304(a)). Thus, discrimination includes "a failure to remove architectural barriers
. . .in existing facilities ... where such removal is readily achievable." 42 U.S.C. §
12182(b)(2)(A)(iv); *see also Roberts*, 542 F.3d at 368-69 (same, quoting statute).

A barrier removal is "readily achievable," in turn, if it is "easily
accomplishable and able to be carried out without much difficulty or expense." 42
U.S.C. § 12181(9). The "readily achievable" standard defines the extent of the
facility's affirmative obligation:

> "A public accommodation shall remove architectural barriers in existing facilities, including communication barriers that are structural in nature, where such removal is readily achievable, *i.e.,* easily accomplishable and able to be carried out without much difficulty or expense."

28 C.F.R. § 36.304(a); *see also Speciner v. Nationsbank, NA.,* 215 F. Supp.2d 622, 627 (D. Md. 2002) ("Under the ADA, the operator of an existing facility must remove 'architectural barriers ... where such removal is readily achievable.'")

### *B. Burden-Shifting Framework*

The Second Circuit evaluates Title III claims under the burden shifting framework articulated for Rehabilitation Act claims in *Borkowski v. Valley Central School Dist.,* 63 F.3d 131 (2d Cir. 1995). See Roberts, 542 F.3d at 373. To meet his initial burden, a plaintiff must "articulate a plausible proposal for barrier removal, 'the costs of which, facially, do not clearly exceed the benefits.'" Id. (quoting Borkowski ). While this standard is less stringent than that employed by other Circuits, "even the minimal burden of Roberts requires that a plaintiff must provide at least some estimate of costs." *Kreisler v. Second Ave. Diner Corp.,* No. 10 Civ. 7592 (RJS), 2012 WL 3961304, at *7 (S.D.N.Y. Sept. 11, 2012), aff'd, 784 F.3d 184 (2d Cir. 2013); see also *Young v. Kali Hospitality Ltd.,* 2010 WL 3037017, at *8 (S.D. Ohio Aug. 2, 2010) ("Under even the test from the Second Circuit, however, a Title III plaintiff needs to provide some cost estimate and a proposal for barrier removal.").

If the plaintiff makes his prima facie showing, "the defendant may counter the plaintiffs showing by meeting its own burden of persuasion and establishing that the costs of plaintiffs proposal would in fact exceed the benefits." *Roberts,* 542 F.3d at 373. The Circuit explained that "[b]ecause the concept of 'readily achievable' is a

broad one, either party may include in its analysis, as costs or benefits, both monetary and non-monetary considerations." *Id. At 373.*

### C. Plaintiff has failed to propose a *Readily Achievable Barrier Proposal*

Plaintiff contends in the Complaint that the absence of a ramp providing wheelchair access to the stores violates the ADA,  but only proposed as follows as his readily achievable and ordered response: "All Defendants have waived any and all objections to the cost of any repairs, modifications and/or repairs which is a major component of the readily achievable standard and is part of the record". See Silv Decl. at page 35, and later conceded a ramp was not feasible.

Plaintiff has conceded that and not met his initial burden to show that a ramp is readily achievable. As a result, the burden did not shift to the Landlord. But even under the assumption, the Landlord has carried its burden of persuasion to demonstrate that a ramp is not readily achievable.

First, the Landlord's expert witness, Steven Kratchman, a registered architect with extensive experience in seeking permits from DOB and LPC has declared that a ramp or lift is highly unlikely to be approved by either DOB or LPC.

Mr. Kratchman is a registered architect who practices extensively before the New York City Landmarks Commission and is knowledgeable about the Commission's functioning, standards, and judgments. He explains that the Commission tends not to approve dramatic alterations of landmarked properties that are not appropriate to the character of the building. Kratchman Decl. ¶ 23.

DOB's most significant objection will be that the ramp extends onto the sidewalk beyond the 44 inch line, in violation of the Building Code. As Mr.

Kratchman explains, this is an objection that cannot be cured with design because of the height of the steps and slope  rules. It is not possible to design an ADA-compliant ramp.

### D. Plaintiff Has Not Proffered A Plausible handicapped Lift, And In Any Event The Landlord Has Shown That Such Is Not Readily Achievable

Plaintiff has likewise failed to make a *prima facie* showing that a lift is a plausible solution, both because he offers no evidence that the necessary permits are likely to be granted and his only statement of readily achievable through October 30, 2020 has been: "All Defendants have waived any and all objections to the cost of any repairs, modifications and/or repairs which is a major component of the readily achievable standard and is part of the record". Plaintiff's expert in his November 16, 2020 report, later submitted, suggests that two lifts, one on the east side and one on the west side of the building may possibly be placed, taking retail space, the amount dependent on the design and to the degree the Plaintiff's expert cannot ascertain; nor whether the lifts will be effective as to the spa.  The Plaintiff's expert acknowledges the building is landmarked and needs NYC compliance, and requiring, drawings, none of which were proffered by Plaintiff's expert.  No basis for the proposal is stated other than his view.  No conceptual drawing were provided. See kratchman Decl Exhibit D. Plaintiff has failed to propose sufficiently as a matter of law to meet a Plaintiff's initial burden.

The facts here are unlike those in *Kreisler v. Second Avenue Diner Corp.*, 2012 WL 3961304 (S.D.N.Y. Sept. 11, 2012), aff'd, 784 F.3d 184 (2d Cir. 2013).  First and foremost, unlike here, "[t]he sidewalk outside of the Diner along Second Avenue could accommodate a permanent ramp that complies with ADA standards." 2012 WL

3961304, at *3. and Plaintiff seemingly offered no expert testimony on the permitting issues. And the restaurant at issue was not landmarked so the  defendants did not have the additional layer of regulatory review by the LPC the Landlord must contend with here. And the step there was eight inches, *much lower than*  the steps in this case.

In *Colorado Cross Disability Coalition v. Hermanson Family Ltd*, 264 F.3d 999 (10th Cir. 2001),: the plaintiff contended that the defendant was required to install wheelchair ramps to historically designated commercial buildings in a Denver historic district. The plaintiffs expert "acknowledged that his sketch was 'conceptual'" and testified that "'[w]hen you start talking about real building design," it would "take a team of collaboration of all the parties  involved with all the different viewpoints and interests to come up with the solutions." *Id.* at 1007. The court held that plaintiff had not satisfied his initial burden because he had offered only "speculative conceptual ideas, rather than a specific design which would be easily accomplishable and able to be carried out without much difficulty or expense." *Id.* at 1009.

In *Speciner v. Nationsbank,* 215 F.Supp.2d at 632-33 (plaintiffs failed to make a prima facie case where "the ramp 'design' was merely conceptual; there were no meaningful cost estimates" and "no effort to see if the obvious problems of interference with utilities (and other matters) under the footprint of the ramp could be overcome"). Similarly, Plaintiff has failed to make a prima facie with respect to the lifts.

Plaintiff in the case at bar failed to even offer a conceptual proposal of the two lifts set forth in the November 16, 2020 Plaintiff's expert's exterior report which

does not allow any assessment of its physical or structural feasibility. It is too uncertain to allow for review by DOB or LPC. Such a conclusory proposal cannot reasonably be understood as a plausible plan for a lift that is readily achievable.

The building was constructed in 1978. The governing standard is removal of a barrier which is readily achievable. And barrier removal is readily achievable when it is "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. Section 12181(9).

The Defendants' architect, Steven Kratchman, explored various ways to achieve barrier removal. The first was the installation of a ramp to provide access.  The second was to install a handicap lift.  Mr. Kratchman found that neither possibility was feasible, which he expressed in his report dated September 29, 2020.  Mr. Kratchman found that the proposed installation of a lift would necessarily lead to the loss  of certain commercial space as well as the loss of space from the residential unit lying above the commercial space.  See Kratchman Decl par 26. And the residential unit is not subsumed under the definition of a public accommodation.

The plan, annexed to to Kratchman Decl **Exhibit "C"** shows how an elevator might be located to serve the various levels.  The following reasons explain why this scheme is not readily achievable: Two of the existing connected spaces would result in a loss of at least 250 square feet of net area from each unit.  Additionally, there are necessarily elevator overruns. That is, the size of the shaft must be provided above and below the elevator's path of travel. This would require an additional loss of approximately 64 square feet of space from the commercial space in the sub-cellar, and from the occupied residential unit above. This depletion of space including residential portions of the building precludes such a significant change to the demised areas.

This scheme requires the use of an elevator with doors on three of the four sides of the cab.   There are no known models available from any reputable manufacturer. Such a unit would be highly customized, and would likely require special engineering and approval from the Board of Standards and Appeals. The process would need to be undertaken by a willing manufacturer, which is outside the Defendants' control.

As such, the barrier removal is not easily accomplishable nor able to be carried out without much difficulty in this building. Plaintiff expert's conclusory statement of two handicapped lifts, one on the east side of the building and one on the west side is devoid of conceptual design or detail so as to be evaluated.   In particular,  the location of the lift, on the west side, is concerning as there appears to be no feasible location and this would require the lift to be placed squarely within the stores and even moreso than on the east side.   There is too great a gap between the Plaintiff's statement which is supported only by the ipse dixit of the expert.   There is no data, methodology, and simply a conclusory statement without adequate support. Such also mandates the exclusion of the Plaintiff's expert's expert report as unreliable. see Amorgianis v Amtrak, 303 F. 3d 256. Rule 702 mandates the exclusion of unreliable evidence.

### E.     *Plaintiff has conceded many of the interior of the stores are ADA compliant and has failed to provide a remediation proposal as to those interiors he claims to be non-compliant*

Plaintiff has conceded that four of the stores are vacant and therefore did not require a full inspection to entertain any proferred interior ADA violations as to those stores. With respect to a fifth store, the cleaners, plaintiff conceded the interior of the store was ADA compliant. As provided by the Declaration of Daniel Trophelov par 9 through 17, the ADA violations claimed by Plaintiff's expert did not propose any  readily

achievable remediation solution, was conclusory in nature, lacked conceptual drawings

and   consideration of any impact, cost and non-monetary including as to the store

tenants themselves, and whether the costs outweighed the benefit.   The Plaintiff's

expert in his interior report states that each commercial space may be made ADA

compliant. Defendants expert disagrees with this generalization. The spaces are of

different size, different configurations and different states of occupancy. There are

conditions and circumstances that prevent conformance with ADA requirements within

readily achievable standards, as more fully stated in the Defendants expert interior

report, attached to the Kratchman Declaration as Exhibit G.  For example, as to the spa,

there would be effects on the building's structural system and the spa is considered a

physical culture establishment, the layout, the use and occupancy of which was

approved by the Board of Standards and Appeals, requiring an amended approval from

the Board of Standards and Appeals, a process that is lengthy and expensive. The stores

themselves are not parties to this action and their businesses would be impacted and as

to whether alternatives are already in place. Such Plaintiff's report was proferred on

November 16, 2020, well after the end date of disclosure October 30, 2020.   As with

the exterior, such report lacked detail and mandates the exclusion of the Plaintiff's

expert's interior report as unreliable. see Amorgianis v Amtrak, 303 F. 3d 256. Rule 702

mandates the exclusion of unreliable evidence.


### POINT 2

**Plaintiff Has Not Made Out A Prima Facie Case Of Discrimination
Under The New York State And City Disability Statutes,
Or If He Has, The Landlord Has Rebutted It**

The same undisputed facts make apparent that summary judgment should

14

also be granted dismissing Plaintiff's claims for disability discrimination under the New York State Human Rights Law, Executive Law, Article 15 § 290, et seq. ("NYSHRL"), and the New York City Human Rights Law, Administrative Code§ 8-107(l)(a) ("NYCHRL").

To analyze a claim under the NYSHRL courts "use the same standards that apply to federal civil rights statutes such as Title VII of the Civil Rights Act of 1964 ... and the ADA." *Kemp v. Metro-N. R.R.*, 316 F. App'x 25, 26 (2d Cir. 2009); *see also* *Sotomayor y. City of New York*, 862 F. Supp. 2d 226, 257 (E.D.N.Y. 2012) *affd*, 713 F.3d 163 (2d Cir. 2013) ("Claims under the NYSHRL are analyzed under the same standards as federal discrimination claims."). Thus, for the same reasons Plaintiff cannot establish that the Landlord failed to carry out its barrier removal obligations under the ADA, Plaintiff cannot establish her analogous claim under NYSHRL.

By contrast, "the provisions of New York City's Human Rights Law are to be construed independently from similar or identical provisions of New York state or federal statutes," to effectuate its "uniquely broad and remedial purposes." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,* 715 F.3d 102, 109 (2d Cir. 2013). While this heightened standard might make a difference in some cases, it makes no difference here. Under the NYCHRL, a plaintiff still "has the initial burden of establishing a prima facie case of discrimination." *Vinokur v. Sovereign Bank*, 701 F. Supp. 2d 276, 290 (E.D.N.Y. 2010). Plaintiff has conceded the ramp has no likelihood of being approved by DOB and LPC  and  Plaintiff's lift statement falls short even under the most lenient test. Or even if could be deemed to meet that burden despite the complete absence of evidence, the Landlord has carried its burden of persuasion to establish that

15

it is not committing disability discrimination where plaintiffs proposed lifts are both physically and legally impossible.

In *Bebry v. Aljack LLC*, 954 F. Supp. 2d 173 the court dismissed the complaint where Plaintiff failed to serve notice upon the Attorney General at or before the commencement of an action under N.Y. Civ. Rights Law Sec 40-c. In that case at p. 14 the court stated as follows:

> "However, HN8 Section 40-d of that statute provides that 'at or before the commencement many actions under this section, notice thereof shall be served upon the Attorney General' of the State of New York... The failure to serve the Attorney General at or before the commencement of an action under section 40-c is fatal to the Plaintiff's claim and requires dismissal of those causes of action.' Cave v. East Meadow Union Free School Dist., 480 F. Supp.2d 6N, 642 (EDNY 2007). Claims for violations of Section 40-c of the Capital NYCS CRL must be dismissed when a Plaintiff 'fails to give a necessary notice to the Attorney General ... before making those claims.' *Sundaram v. Brook Haven Nat'l Labs*, 424 F. Supp.2d 545, 571 (EDNY 2006).
>
> Here there is no indication that the Plaintiff served notice of their action on the New York State Attorney General before commencing this action. Thus the court finds that the Plaintiff is barred from proceeding on a claim under section 40-c of the NYS CRL."

### Point 3

### Service of process upon 33 Bre Inc. was improper

33 Bre Inc. (hereinafter "Bre Inc.") is one of the named defendants in this ADA action, and was allegedly properly. 33 Bre Inc's twentieth affirmative defense alleges improper service as to 33 Bre Inc.  see Silv Decl Exhibit B.

FRCP   4(h) provides the method by which service must be made on a corporation, as follows:

"Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation . . . that is subject to a suit under a common name, must be served:

(1)   In a judicial district of the United States:

(A)   In the manner prescribed by Rule 4(e)(1) for serving an individual; or

(B)   By delivering a copy of the summons and the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . . . and if the agent is one authorized by statute and the statue so requires—by also mailing a copy of each to the Defendants'; or

FRCP 4(e)(1) provides as follows:

"(e) serving an individual within a judicial district to the United States.

Unless Federal Law provides otherwise, an individual-other than a minor, an incompetent person, or a person whose waiver has been filed – may be served in a judicial district of the United States by:

(1) Following State Law for serving a summons in an action brought in courts of general jurisdiction in the state where the District Court is located or where service is made; or

(2) Doing any of the following: or that (c ) or delivering a copy of each to an agent authorized by appointment or by law to receive service of process."

Under New York State Law, CPLR 311 governs service of process upon a corporation as follows:

" (a) Personal service upon a corporation . . . shall be made by delivering the summons as follows:

"upon any domestic or foreign corporation, to an officer, director, managing or general agent, or cashier or assistant

17

cashier or to any other agent authorized by appointment or by law to receive service. A business corporation may also be served pursuant to section three hundred six or three hundred seven of the business corporation law . . .
"

CPLR 308 which governs service upon individuals, sets forth as follows:

" Personal service upon a natural person shall be made by any of the following methods:

"1. by delivering the summons within the state to the person to be served; or

2. by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend 'personal and confidential' . . .

3. by delivering the summons within the state to the agent for service of the person to be served under rule 318 . . . ."

The affidavit of service alleges that service was purportedly effectuated on 33 Bre Inc. by the delivery of process on October 29, 2019, to "Jane Doe," whose position was described in the affidavit of service as "Front Desk Reception-Authorized." There were no mailings of process to the corporate defendant, 33 Bre Inc. There were mailings to the individual defendants, Harold Thurman and Brad Thurman. The declaration of Barbara Powers, sets forth that she was not authorized to accept service of process and she so informed the process server. She was neither then nor is she now an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process. She refused to accept the tendered summons and complaint from the process server. See, *Arce v. Sybron Corp.*, 82 A.D. 2d 308 (App Div. 2d Dept.)(1981).

In determing personal jurisdiction, Federal Courts apply the law of the forum state. See, *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000).

### Point 4

### The claims against Defendant Brad Thurman should Be Dismissed

The claims against the individual defendant Brad Thurman should be dismissed.

The Court was made aware at the November 4, 2020 conference that Harold Thurman died on November 3, 2020.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Producure, Brad Thurman is not a proper party to the action and should not have been named and served.

38.     33 Bre Inc. is the deed owner of the building at issue. The Defendant, Brad Thurman, is not an owner of the building in his own name.  He is not a principal of 33 Bre,Inc. See Shareholder's Agreement annexed to Thurman Declaration as **Exhibit "H".**

In his complaint, Plaintiff, Dino Antolini, makes conclusory allegations about the role purportedly played by the three defendants in the operation of the building. See, the Complaint, Silv Decl Exhiit A, Paragraphs 5 and 6, to wit:

> "Upon information and belief Defendants are authorized to conduct, and is (sic) conducting business within the State of New York and are the owners, lessees' and or operators of the real property . . .
>
> Upon information and belief the defendants maintain, manage and control the Subject Facility, having multiple retail establishments . . . "

The complaint offers "naked assertions devoid of further factual enhancement" such that the court was unable to draw the reasonable inference that the Defendant (was) liable for the misconduct alleged.' (Citing Iqbal, 556 US at 678).

19

In a Rule 12(b)(6) motion, the court willl not consider evidence outside the allegations in the pleading. See, *Leonard F.* 199 F.3d at 107. See, also, *Green v. DGG Properties Co., Inc.,* 3:11-CV-01989 VLB, 2013 U.S. Dist. LEXIS 13138 2013 WL 395484 (D. Conn. Jan. 31, 2013). In Green, infra, the court evaluated a motion to dismiss a Title III claim against a resort. The court determined that while the defendants could "be proper defendants in the action if they exercised the requisite control over the property" the plaintiff had "failed to allege any facts in his complaint that would allow the court to conclude that the individual defendants exercised such control over the functioning or affairs of the resort, were in such positions of authority, or had such power or discretion to perform potentially discriminatory acts that they own, lease or operate a place of public accommodation under Title III." 2013 U.S. Dist. LEXIS 13138, [WL] at 13-14.

### Point 5

*The Complaint Should be Dismissed Because of the Plaintiff's Failure to Name and Serve* **Certain Necessary Parties**

FRCP 19 governs the required joinder of parties to any proceeding. FRCP 19(a)(1), which is denominated Persons  Required to be Joined if Feasible, provides as follows: "(1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

    (A)    in that person's absence, the court cannot accord complete relief among existing parties; or

    (B)    that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

      (i)      as a practical matter impair or impede the person's ability to protect the interest; or

      (ii)     leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest . . . ."

At present, this Court lacks in personam jurisdiction over the net lessee commercial premises, Gold Street Properties, L.P. and the store tenants, as well as any impacted residential tenants. The store leases paragraph 13 provides for the store tenants cooperation for access. See Thurman Decl. Exhibits I to P.

These necessary but un-named parties to this action have an interest in the subject matter of this action, to wit, the integrity of the facility and the several commercial spaces, which interest clearly may be impaired should this matter proceed in their absence. See Thurman Declaration par. 5.

The transcript of the initial conference ECF Document 42, p. 18, 46 indicated Plaintiff's intention to possibly serve an amended complaint. Plaintiff's counsel stated "I don't think it would be too onerous to amend the complaint to add the stores".

### *Point 6*

### *Should this Court deny Defendants' summary judgment, Defendants request an order precluding Plaintiff's expert From testifying at trial or otherwise filing affidavits or an expert report in this case*

Should the Court deny the entry of summary judgment to Defendants named herein, Defendants herewith request an order precluding the Plaintiff's expert, Billy Chen, Plaintiff's architect, from testifying, submitting affidavits or otherwise offering an opinion or report.

Until October 21, 2020 the Plaintiff through counsel had continuously denied that Plaintiff had in fact yet retained the services of an expert, and would not do so until the site inspection. In December 2019, almost one year ago, the Defendants' law firm

21

served on the Plaintiff's law firm expert interrogatories and expert document production.  See Silv Decl **Exhibits "E and F".** Plaintiff's counsel repeatedly asserted that an expert had not yet been retained but one would be retained at the time of the site inspection. Plaintiff asserted in opposition to Defendants' August 2020 motion to compel responses to interrogatories 20 and 21, relating to expert information and opinions and the like, that no expert had yet been retained.  Magistrate Judge Kevin Fox on October 13, 2020 denied Defendants' motion to compel because Plaintiff had asserted that he had not retained an expert and that Plaintiff Dino Antolini would be his only witness. See Silv Decl. par. 24.

　　　　FRCP 26 (a) provides that:

　　　　　　　　"Disclosure of Expert Testimony.

　　　　　　(A)　　In General. In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rules of Evidence 702,703, or 705.

　　　　　　(B)　　Witnesses Who Must Provide a Written Report. Unless otherwise stipulated or ordered by the court, this  disclosure must be accompanied by a written report- prepared and signed by the witness . . . ."

　　　　The Civil Case Management Plan and Scheduling Order signed by Judge Furman annexed to (see, ECF Doc. 41m par.8 (c) ) states that "The parties agree that there is need for expert discovery . . . and (d) All expert discovery, including reports, production of underlying documents, and depositions shall be completed no later than September 29, 2020 . . ." The end date of discovery was extended by the court to October 30, 2020. ECF Doc 83.

　　　　The Plaintiff has offered no excuse for his failure to comply with the discovery

rules.  Said failure normally merits an order of preclusion. See, <u>Giladi v. Strauch</u>, United States District Court for the Southern District of New York (April 13, 2001, Decided ; April 16, 2002, Filed ; 94 Civ. 3976.). See, also, <u>Arnold v. Krause, Inc.,</u> 232 F.R.D. 58 (United States District Court for the Western District of New York) July 22, 2004; Decided   July 23, 2004;  and  <u>Trilogy Communications, Inc. v. Times Fiber Communications, Inc., 109 F. 3d 739</u>  (Fed. Cir. 1997) (exclusion justified where party fails to provide adequate explanation for failure to timely provide expert disclosure in accordance with scheduling order).

Nor did Plaintiff request an extension of time to comply by supplementing his discovery responses or to submit his expert report, after October 30, 2020.  Courts have held that where a party fails, to comply with a prior scheduling order and amended scheduling orders extending the period for expert disclosure, preclusion is properly ordered. <u>Exxon Corporation v. Halcon Shipping Co., Ltd.,</u> 156 F.R.D. 589, 591-592 (D.N.J. 1994).

In <u>Arnold v. Krause,</u> supra, the court granted Defendants' motion to preclude Plaintiff's expert. In deciding to do so, the court took into consideration several factors (232 F.R.D. 58, 68), including "(1) the reason for the failure to timely disclose, (2) the importance of the testimony, (3) potential prejudice in allowing the testimony, and (4) the availability of a continuance to cure such prejudice." The court paid particular attention to and stressed the plaintiff's failure to offer a valid reason for its failure to timely disclose.

At the conference, Silv. Decl. Exhibit B1, page 11 at the November 4, 2020 conference, Hon. Jessie Furman stated: "...And if you think there's a basis to exclude a witness because of something that did or didn't happen during discovery, then you can

23

make that motion by that same deadline".

Most telling is that the proffer of two expert Plaintiff reports on November 18, 2020 shows a unilateral inspection by Plaintiff's expert on July 28, 2020, with instructions from Plaintiff's attorney to not inspect the interior. See Kratchman Decl. Exhibit D.  Plaintiff neither served a report nor disclosed the fact of the inspection and retention of the expert through the date of the decision by Magistrate Judge Fox on October 13, 2020.  Plaintiff represented to this court in September, 2020 that he did not need to respond to Interrogatories about his expert because none had yet been retained.  This led to the order denying the motion to compel by Magistrate Judge Fox on October 13, 2020 because no expert had been retained and that Dino Antolini would be the only fact witness.

Additionally Plaintiff's expert reports lack conceptual drawings and detail and state only conclusory opinions and should also be excluded under the Daubert line of cases and under Federal Rule of Evidence 702.

In light of the foregoing, the Defendants respectfully submit that the Court issue and order of preclusion against the Plaintiff's expert.

## *CONCLUSION*

*WHEREFORE*, Defendants respectfully request summary judgment and other relief be granted, together with other and further relief as may be deemed just and proper.

Dated: New York, NY
      December 2, 2020

**ROBERT SILVERSMITH, ESQ.**
**JASON GARBER, ESQ.**
On the Brief

                                        Respectfully submitted,


                                        _____
                                        Robert Silversmith, Esquire
                                        SILVERSMITH & ASSOCIATES
                                        LAW FIRM PLLC
                                        39 Broadway, Suite 910
                                        New York, New 10006
                                        (212) 922-9300
                                        rsilversmith@silversmithassociates.com