UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
:
DINO ANTOLINI, :
:
:
Plaintiff, :
: 19-CV-9674 (JMF) (KNF)
-v- :
: OPINION AND ORDER
:
BRAD THURMAN and 33 BRE INC., :
:
Defendants. :
:
---------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Plaintiff Dino Antolini, who requires a wheelchair for mobility, brings claims against Defendants Brad Thurman and 33 BRE Inc. for alleged violations of the Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C Admin. Code § 8-101 *et seq.*[1] In particular, he alleges that a commercial property located at 82-88 Fulton Street in Manhattan ("82-88 Fulton") — allegedly owned, leased, or operated by Defendants — is inaccessible to him and others in wheelchairs. *See* ECF No. 1 ("Compl."), ¶¶ 5-6, 13, 15; ECF No. 114-2 ("Antolini Decl."), ¶ 4. Defendants now move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment. For the reasons that follow, their motion is GRANTED.

---

[1]     A third Defendant, Harold Thurman, passed away on November 3, 2020. *See* ECF No. 112. On March 30, 2021, pursuant to Rule 25(a)(1) of the Federal Rules of Civil Procedure, the Court dismissed all claims against him and all counterclaims brought by him. ECF No. 117.

**APPLICABLE LEGAL STANDARDS**

The Court begins with a summary of the applicable legal standards — under the ADA and with respect to motions for summary judgment.

**A. Title III of the ADA**

Antolini's claims under Title III of the ADA require him to establish that (1) he is disabled within the meaning of the ADA; (2) Defendants own, lease, or operate a place of public accommodation; and (3) Defendants discriminated against him within the meaning of the ADA. *Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 368 (2d Cir. 2008). The relevant standard for the third prong of this analysis depends in the first instance on whether the facility at issue has been "altered in a manner that affects or could affect its usability." *Id.* at 369 (internal quotation marks omitted). That, in turn, requires "a fact-specific inquiry centered on a broad application of the concept of usability." *Rosa v. 600 Broadway Partners, LLC*, 175 F. Supp. 3d 191, 206 (S.D.N.Y. 2016) (internal quotation marks omitted). In particular, the Second Circuit has instructed courts to consider a number of factors, including: (1) the overall cost of the modification relative to the size (physical and financial) of the facility or relevant part thereof; (2) the scope of the modification (including what portion of the facility or relevant part thereof was modified); (3) the reason for the modification (including whether the goal is maintenance or improvement, and whether it is to change the purpose or function of the facility); and (4) whether the modification affects only the facility's surfaces or also structural attachments and fixtures that are part of the realty. *See Roberts*, 542 F.3d at 370. The plaintiff bears an "initial burden of production," which is fulfilled "by identifying a modification to a facility and by making a facially plausible demonstration that the modification is an alteration under the ADA." *Id.* at

371. If a plaintiff meets that burden, "[t]he defendant then bears the burden of persuasion to establish that the modification is in fact not an alteration." *Id.*

In the absence of an "alteration," a defendant still discriminates within the meaning of Title III "if it fails to remove any existing barriers to accessibility where such removal 'is readily achievable,'" *id.* at 369 (quoting 42 U.S.C. § 12182(b)(2)(A)(iv)), *i.e.*, is "easily accomplishable and able to be carried out without much difficulty or expense," 42 U.S.C. § 12181(9). To succeed, a plaintiff must fulfill an initial burden of "articulat[ing] a plausible proposal for barrier removal, the costs of which, facially, do not clearly exceed its benefits." *Roberts*, 542 F.3d at 373 (internal quotation marks omitted). "Neither the [cost-benefit] estimates nor the proposal" submitted by a plaintiff, however, "are required to be exact or detailed." *Id.* Assuming the plaintiff makes this showing, the burden then shifts to the defendant to "establish[] that the costs of a plaintiff's proposal would in fact exceed the benefits." *Id.*

If alterations *have* been made to the property (after January 26, 1992), the ADA requires more of defendants. In such cases, a defendant discriminates if the altered areas "are not made readily accessible 'to the maximum extent feasible.'" *Id.* at 369 (quoting 42 U.S.C. § 12183(a)(2)); *see also* 28 C.F.R. § 36.402(a)(1) ("Any alteration to a place of public accommodation or a commercial facility, after January 26, 1992, shall be made so as to ensure that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities . . . ."). More specifically, the plaintiff bears an "initial burden of production [to] identify[] some manner in which the alteration could be, or could have been, made 'readily accessible [to] and usable by individuals with disabilities, including individuals who use wheelchairs.'" *Roberts*, 542 F.3d at 372 (quoting 42 U.S.C. § 12183(a)(2)). The burden then shifts to the defendant to "persuad[e] the factfinder that the

plaintiff's proposal would be 'virtually impossible' in light of the 'nature of the facility.'  *Id.* (quoting 28 C.F.R. § 36.402).

## B. Summary Judgment

Summary judgment is appropriate when the record demonstrates that there are no genuine disputes as to any material facts and that one party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party bears the initial burden of informing the Court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, that demonstrate the absence of a genuine dispute regarding any material fact.  *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(c).  In ruling on a motion for summary judgment, all evidence must be viewed in the light most favorable to the non-moving party, *Overton v. N.Y. State Div. of Mil. & Naval Affs.*, 373 F.3d 83, 89 (2d Cir. 2004), and the Court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

## DISCUSSION

82-88 Fulton is a commercial property with a handful of stores that are accessible from the street only by way of stairs.  *See* ECF No. 106-3 ("Pl.'s 56.1 Counter-Stmt."), ¶¶ 17-19; *see also* Compl. ¶¶ 12-16.  Antolini raises two distinct sets of claims with respect to the property. First, in the Complaint and on summary judgment, he alleges that the failure to provide a means of access to the stores other than the stairs violates his rights under the ADA.  *See* Compl. ¶¶ 13,

4

15. Second, in his summary judgment opposition papers, he raises a slew of objections under the ADA to the interior of 82-88 Fulton's retail spaces. *See* ECF No. 106 ("Pl.'s Opp'n), at 14-15; *see also* ECF No. 106-1 ("Chen Interior Report"). The Court will address each set of claims in turn and then briefly address Antolini's claims under the NYSHRL and the NYCHRL.

**A. Antolini's ADA Claim Regarding 82-88 Fulton's Exterior**

With respect to to 82-88 Fulton's exterior, Antolini does not point to any modifications that could qualify as "alterations" for purposes of 42 U.S.C. § 12183.[2]  Accordingly, as noted above, he has a threshold burden under the ADA to "articulate a plausible proposal for barrier removal, the costs of which, facially, do not clearly exceed its benefits." *Roberts*, 542 F.3d at 373 (internal quotation marks omitted). He fails to carry that burden.

Antolini concedes that it is infeasible to provide access to 82-88 Fulton by way of a ramp. *See* ECF No. 106-2 ("Chen Exterior Report"), at 2; *see also* ECF No. 98-5. Instead, relying primarily on a report from his retained expert, Billy Chen, he proposes the installation of two handicap lifts to provide access to the property. *See* Chen Exterior Report 2. But Chen's proposal is shockingly short on details. Indeed, the entirety of his proposal is as follows:

> The best case solution would be to create two different sets of handicap accessible lifts. One for the left side of the building and one for the right side of the building along Fulton Street. The lift could be installed within the building's envelope, taking over some retail space. The amount of space required would be dependent on how the lift is design [sic] and oriented.

---

[2]  Antolini does state in his opposition brief that Defendants performed $84,000 worth of "exterior work" in 2013, but he fails to specify the nature of that work. Pl.'s Opp'n 5. His exhibits — which are unindexed — reveal a project involving "[s]tructural repairs of sidewalk slab" that cost an estimated $84,000, ECF No. 106-4, at 7, but there is no evidence that it or any other modification pertained to the external stairs or other related external areas. Moreover, as Defendants' expert notes, all of the relevant permit applications were for "Type 2" alterations, which are meant for "work *not* affecting use, egress[,] or occupancy." ECF No. 109, ¶ 5 (emphasis added).

Chen Exterior Report 2.  Along with Chen's report, Antolini submits a document with ten photographs of *other* buildings with handicap accessible lifts, as well as a list of features of a lift that appears to have been drafted for commercial marketing purposes.  ECF No. 106-6.[3]  Neither he nor Chen provides any architectural renderings of how or where the lifts could be installed at 82-88 Fulton, let alone "how the lift[s]" could be "design[ed]" or "orient[ed]" in a way that would be feasible.  Chen Exterior Report 2.  That is true even though Chen himself acknowledges that his proposal has at least one "drawback" — namely, without conducting an interior survey of one specific storefront, a spa, "there is no way to tell if the lift will be able to provide access to the rest of the [s]pa space."  *Id.*

These submissions, even taken together, do not satisfy Antolini's threshold burden of plausibly stating a remediation proposal "the costs of which, facially, do not clearly exceed its benefits."  *Roberts*, 542 F.3d at 373 (internal quotation marks omitted).  For starters, neither Chen nor Antolini provides any detail on the location of the proposed lifts apart from Chen's perfunctory description that one would be on the "left side" and the other would be on the "right side," within the property's "envelope."  Chen Exterior Report 2.  (Revealingly, Defendants' expert was completely unable to discern the "implied location" of at least one of the proposed lifts.  ECF No. 98-5.)  Nor do Antolini's submissions make clear how much retail space would

---

[3]  The Court granted Antolini leave to file a sur-reply but stressed that it would consider the sur-reply "only to the extent that it responds to arguments made for the first time in Defendants' reply papers."  ECF No. 111.  In conjunction with the sur-reply, Antolini submitted a supplemental declaration from Chen.  *See* ECF No. 114-3 ("Chen Supplemental Decl.").  The Court declines to consider Chen's supplemental declaration in evaluating whether Antolini has satisfied his threshold burden, as Defendants raised his inability to do so in their opening brief, *see* ECF No. 102, at 8, 10-13, and did not raise any new arguments on that score in their reply.  In any event, the two new details in Chen's supplemental declaration — that installing the lifts would cost "in the range of approximately $100,000 to $200,000" (figures for which he provides no basis) and that a specific model of lift would occupy approximately one hundred square feet, *see* Chen Supplemental Decl. ¶¶ 10-14 — would not affect the Court's bottom-line conclusion.

6

be taken up by the lifts, except to say that they would take over "some." Chen Exterior Report 2. And Antolini's "designs"— to the extent they can even be called that, *see* ECF No. 106-6 — are woefully incomplete and provide no indication of how, or even if, such lifts could be installed at 82-88 Fulton, let alone whether they would provide access to all of the retail establishments at the property. *See Range v. 230 W. 41st St. LLC*, No. 17-CV-149 (LAP), 2020 WL 3034800, at *6 (S.D.N.Y. June 5, 2020) (holding that three of the plaintiff's proposals failed to meet his *prima facie* burden of suggesting a plausible plan because he "provide[d] virtually no information regarding" two of the proposals and provided "incomplete" and "in some respects erroneous" architectural designs with respect to the third).

On top of that, Antolini also fails to include any discussion of the costs of the proposed lifts in his initial opposition papers. In response to this objection, he points to case law suggesting that when a proposed "project is a 'plausible, simple' remedy," a plaintiff can meet his or her *prima facie* burden without providing a cost estimate. *Id.* (quoting *Celeste v. E. Meadow Union Free Sch. Dist.*, 373 F. App'x 85, 88 (2d Cir. 2010) (summary order)) (finding that a plaintiff's proposal to reopen a second entrance by removing sheetrock that had been installed to block the entry was enough to withstand defendants' summary judgment motion even though the plaintiff had failed to provide a cost estimate); *see* Pl.'s Opp'n 17-18. Antolini's proposal — installing two potentially customized handicap accessible lifts in unspecified locations and taking up an unspecified amount of retail space — goes beyond the "plausible, simple" kind of remedy for which the cost estimates are not necessarily required. *See Range*, 2020 WL 3034800, at *6 ("Unlike removing sheetrock from a doorway, installing ramps and raising sidewalk are not 'simple,' 'de minimis' solutions that appear facially plausible and cost-effective." (quoting *Celeste*, 373 F. App'x at 88)).

In arguing that his lift proposal is readily achievable, Antolini relies heavily on the fact that Defendants, earlier in the litigation, "waive[d] . . . any and all defenses relating to a financial inability to remediate." ECF No. 46. More specifically, he argues that "finances, no matter any cost of repairs, are not at issue" in this case and, thus, that "a large portion of the 'readily achievable' analysis" is obviated. Pl.'s Opp'n 7-8. But this argument misunderstands the nature and import of Defendants' waiver; there are other factors — including other financial factors — relevant to the "readily achievable" inquiry apart from Defendants' ability to pay. *See Lopez v. Clair*, No. 14-CV-2145 (LAB) (DHB), 2016 WL 4625510, at *3 (S.D. Cal. Sept. 6, 2016) ("[C]ost and burden remain relevant considerations here, even if their impact on the . . . [d]efendants' finances is not."); *Panzica v. Mas-Maz, Inc.*, No. 05-CV-2595 (ARL), 2007 WL 1732123, at *9 (E.D.N.Y. June 11, 2007) ("While the plaintiff correctly contends that the defendants are precluded from asserting cost as a defense, wholly absent from the plaintiff's submission is any analysis of the feasibility or difficulty of the suggested modifications or their impact upon the [facility's] business operation."); *see also* 42 U.S.C. § 12181(9) (listing "the nature and cost of the action" as separate from "the overall financial resources of the covered entity" as factors to be considered in the "readily achievable" analysis). Put differently, Defendants' waiver does not relieve Antolini of *his* threshold burden to articulate a plausible proposal for removing the accessibility barriers concerning 82-88 Fulton's exterior.

In short, Antolini's proposal is "half-baked at best." *Range*, 2020 WL 3034800, at *2. It "provides virtually no information" about the plausibility of the proposal or whether its benefits facially outweigh its costs. *Id.* at *6. At bottom, therefore, "his claim" that the proposal is "readily achievable amounts to . . . 'rank speculation.'" *Id.* (quoting *Kreisler v. Second Ave. Diner Corp.*, No. 10-CV-7592 (RJS), 2012 WL 3961304, at *8 (S.D.N.Y. Sept. 11, 2012)

(Sullivan, J.), *aff'd,* 731 F.3d 184 (2d Cir. 2013) (per curiam)). Accordingly, summary judgment must be and is granted to Defendants on Antolini's ADA claim with respect to the exterior of the property.

### B. Antolini's ADA Claims Regarding the Interior of 82-88 Fulton

The Court turns, then, to Antolini's argument that the stores at 82-88 Fulton contain various accessibility barriers in violation of the ADA. At the outset, Antolini's argument fails for the simple reason that he fails to allege many, if not all, of these barriers in the operative Complaint. The Complaint vaguely references the absence of "informational signage," issues with "[g]round and floor surfaces along accessible routes and in accessible rooms and spaces," and "egress" issues. Compl. ¶ 15. But these alleged defects are unrelated to the objections he raises in his opposition papers. Otherwise, the closest he comes to alleging anything with respect to the interior of the premises is to allege, "[u]pon information and belief," that "there are other current violations of the ADA" at the property that can "be identified" "only upon a full inspection." *Id.* ¶ 16. Yes, the Second Circuit has suggested that a plaintiff may raise claims regarding "subsequently-discovered ADA violations [that] relate to the plaintiff's disability and are located in the subject place of public accommodation." *Kreisler*, 731 F.3d at 188 n.5. But that does not relieve such a plaintiff from the basic requirement to state any and all claims in a proper pleading. Indeed, "it is common in ADA cases for a plaintiff to amend a complaint to add additional barriers that were not mentioned in the initial complaint." *Kreisler v. P.T.Z. Realty, L.L.C.*, 318 F.R.D. 704, 705 n.1 (S.D.N.Y. 2016) (citing cases). Put simply, Antolini "may not use his submission in opposition to summary judgment as a back door means to amend the complaint." *Isaac v. City of New York*, 701 F. Supp. 2d 477, 491 (S.D.N.Y. 2010).

In any event, any claims that Antolini could be said to bring with respect to the interior of 82-88 Fulton fail for other reasons as well. Once again, he relies on an expert report from Chen, completed after a site visit to the interior of the property's occupied retail spaces. Chen's report lists a slew of alleged ADA accessibility issues, including (as to the occupied retail spaces):

- with respect to "Affina spa": an entry door obstructed by a "temporary entry awning"; a raised platform used for pedicures; the public restroom, including the location of the door and the toilet;

- with respect to a Chinese restaurant: the walkway leading to the front entry door;

- with respect to a Russian bathhouse or spa: movement between different areas within the facility, which is split across different floors and only accessible by stairs;

- with respect to a dry cleaner: the entry door;

- with respect to an Indian restaurant: the entry; the rear of the restaurant; and the restroom.

Chen Interior Report 1-3. Chen asserts that "each" of these spaces "Is [sic] capable of being modify [sic] to accommodate the ADA Issues [sic]. . . . Once Inside [sic] each retail space, there are rooms to accommodate any public restroom and walkway If [sic] required." *Id.* at 4.

Antolini argues that the interior of 82-88 Fulton was "altered" within the meaning of the ADA, thereby triggering the more rigorous requirement that the property be made accessible "to the maximum extent feasible." 42 U.S.C. § 12183(a)(2); Pl.'s Opp'n 4-6.[4] The more rigorous standard, however, is not triggered by *any* alteration to a property writ large; the alteration and

---

[4] Specifically, Antolini points to modifications in 1994-95 and 2013-16, including: work on the "'interior structure' (including sinks) . . . to the tune of tens of thousands of dollars"; various projects including "wall removal," "wall installation," Pl.'s Opp'n 5, the installation of ten new sinks, the installation of new toilets, the installation of ten new pedicure chairs, and the installation of new partition walls in "waxing/ facial" rooms and in the bathrooms, ECF No. 114-1 ("Pl.'s Sur-Reply"), at 5-6; "renovation of existing commercial" space for approximately $56,400, including installation of an "interior partition, flooring, drop ceiling[,] and plumbing fixtures," and "[r]eplac[ing]" one shop's "[s]torefront with existing opening"; and "structural [t]ie backs" costing $40,000, Pl.'s Opp'n 5-6; *see also* ECF No. 106-4, at 28.

the alleged violation must relate to the same "*portions* of the facility." 42 U.S.C. § 12183(a)(2) (emphasis added). And here, many of the alleged modifications had nothing to do with the portions of the property with respect to which Antolini raises accessibility issues. Even where there is a nexus between the alleged modifications and violations (for instance, the restrooms), it is far from clear that Antolini has made a facially plausible demonstration that the modifications amount to ADA alterations. *See Kreisler*, 2012 WL 3961304, at *10 (holding that the plaintiff had failed to establish that a set of interior changes rose to the level of "alterations" because they were "minor and superficial changes").

In any event, even assuming *arguendo* that Antolini is entitled to the more rigorous post-alteration standard, he still fails to meet his burden of "identifying some manner in which the alteration could be, or could have been, made 'readily accessible [to] and usable by individuals with disabilities.'" *Roberts*, 542 F.3d at 3772 (quoting 42 U.S.C. § 12183(a)(2)); *cf. Rosa*, 175 F. Supp. 3d at 208 (finding that the plaintiff met her burden "by suggesting ways in which the[] deficiencies" she had identified "could be modified to permit greater accessibility"). Nowhere in Antolini's papers does he identify any concrete way in which the premises could be made more readily accessible to those in wheelchairs. Although Chen makes the conclusory claim that "each" of the retail spaces at 82-88 Fulton "Is [sic] capable of being modify [sic] to" comply with the ADA, Chen Interior Report 4, even the most charitable reading of his report (which is, to put it mildly, at times difficult to comprehend) reveals only two concrete suggestions: (1) removing a "temporary entry awning" from one store, Chen Interior Report 1; and (2) expanding a walkway "slightly to accommodate a side approach Into [sic] each retail space," *id.* at 4. Neither of these suggestions, however, is described further. Indeed, if Chen's proposal for the

11

lifts could be described as "half-baked at best," it is fair to say that his proposals with respect to the interior of the property did not even make it to the oven. *Range*, 2020 WL 3034800, at *2.

For similar reasons, even if the Court were to analyze Antolini's objections to the interior of 82-88 Fulton using the standard for areas that have not been altered, as it did with respect to his objections to the property's exterior above, he has failed to meet his threshold burden of articulating a plausible proposal for remediation. Even as to Chen's two concrete suggestions, Antolini provides "virtually no information" about the plausibility of the proposals or whether their benefits facially outweigh their costs. *Id.* at *6. As to the remainder of Chen's proposals (if they can even be called that), Antolini falls even further short. Accordingly, to the extent that Antolini actually alleges any ADA claims with respect to the interior of 82-88 Fulton, the Court once again grants summary judgment to Defendants.

## C. Antolini's Claims Under the NYSHRL and the NYCHRL

Finally, the Court dismisses Antolini's claims pursuant to the NYSHRL and NYCHRL as abandoned. It is well established that, "in the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned." *Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014). That inference is warranted here. First, while Defendants moved for summary judgment on all claims, *see* ECF No. 96 (seeking "dismiss[al] [of] the complaint"), Antolini responded only as to his claims under the ADA, *see generally* Pl.'s Opp'n. Second, on several occasions earlier in the litigation, Antolini made clear that he wished to drop the NYSHRL and NYCHRL claims. *See* ECF No. 91 ("Plaintiff and [counsel] are prepared to stipulate to dismissing all claims that would require a jury trial, including the [NYSHRL and NYCHRL] violation claims . . . ."); ECF No. 94 ("Plaintiff requests that [the Court] allow the embedded [NYCHRL] and [NYSHRL] violations

be dismissed so that this case may proceed to a bench trial."); ECF No. 104-1, ¶ 4 (Antolini declaring that "I want to drop the [NYSHRL and NYCHRL] claims and withdraw our jury request . . . ."); Antolini Decl. ¶ 14 ("I am okay with dropping the city and state claims so that we can have a trial sooner."). Accordingly, the state and local claims are deemed abandoned.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted in full.[5] One housekeeping matter remains: Although not mentioned by either side in the summary judgment papers, Defendants alleged in their responsive pleading a "counterclaim" for attorney's fees pursuant to either or both 28 U.S.C. § 1927 and 42 U.S.C. § 12205. ECF No. 12, ¶ 56.[6] Defendants may seek such an award by motion; it does not require a formal "counterclaim." Given the relevant standards, the Court is skeptical that an award of fees would be appropriate in this case, notwithstanding the failure of Antolini's claims. *See, e.g.*, *Nicholas v. Harder*, 637 F. App'x 51, 52 (2d Cir. 2016) (summary order) (describing the standard for prevailing defendants under 42 U.S.C. § 12205 and noting that "it is very rare that victorious defendants in civil rights cases will recover attorneys' fees" (quoting *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 178 (2d Cir. 2006))); *Konits v. Karahalis*, 409 F. App'x 418, 423 (2d Cir. 2011) (summary order) ("[S]anctions may be imposed pursuant to § 1927 only when there is a finding of conduct constituting or akin to bad faith." (cleaned up)). But the Court will reserve judgment on the matter pending a proper motion. Any such motion shall be filed, only after Defendants have conferred with counsel for Antolini, within **two weeks from the date of this Opinion and Order**, supported by contemporaneous billing records and other appropriate documentation.

---

[5] The Court need not and does not reach Defendants' other arguments for dismissal.

[6] Defendants' pleading misstates the relevant statute as "42 U.S.C. § 12245." *See id.*

Any opposition would be due **within one week of any motion**. No reply may be filed without leave of Court.

The Clerk of Court is directed to terminate ECF No. 96, to enter judgment in favor of Defendants, and to close this case.

SO ORDERED.

Dated: July 21, 2021
New York, New York

JESSE M. FURMAN
United States District Judge